UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - -x

                           :

INTELLIVISION, a Joint Venture,        :       Civil Action No. 07 CV 4079 (JGK)

                           :

                Plaintiff,     :

                           :       NOTICE OF FILING

        - against -              :       <u>NOTICE OF REMOVAL</u>

                           :

                           :

MICROSOFT CORPORATION,         :

                           :

              Defendant.   :

- - - - - - - - - - - - - - - - - - - - - -x

         Please take notice that a Notice of Removal of the above-entitled action

from the Supreme Court of the State of New York, New York County, to the United

States District Court for the Southern District of New York was filed on May 24, 2007 in

the Office of the Clerk of the United States District Court for the Southern District of

New York by defendant Microsoft Corporation.  A copy of the Notice of Removal is

annexed hereto.

You are also advised that defendant, upon the filing of said Notice of

Removal, filed a copy of said Notice with the Clerk of the Supreme Court of the State of

New York, New York County, in accordance with 28 U.S.C. § 1446(d), thereby effecting

removal.

Dated: New York, New York
      May 25, 2007

Respectfully submitted,

SULLIVAN & CROMWELL LLP
Steven L. Holley (SH2485)
Robert S. Landy (RL9873)
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Microsoft Corporation*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - x

INTELLIVISION, a Joint Venture,         :         Civil Action No. 07 CV 4079 (JGK)

                    Plaintiff,         :

      - against -         :         NOTICE OF REMOVAL

                         :

MICROSOFT CORPORATION,         :

               Defendant.         :

- - - - - - - - - - - - - - - - - - - - - - - x

          Pursuant to 28 U.S.C. § 1446, defendant Microsoft Corporation

("Microsoft") hereby gives notice of the removal of this action to this Court from the

Supreme Court of the State of New York, New York County, where it is pending as Case

No. 100614/07. Because the federal courts have original jurisdiction over this action

under 28 U.S.C. § 1332, and because the other prerequisites for removal are met, this

action is removable pursuant to 28 U.S.C. § 1441. The specific grounds for removal are

as follows:

          1.  This action is pending in the Supreme Court of the State of New York,

New York County, having been commenced by service of a summons and complaint

upon PTSGE Corporation, Microsoft's agent for service of process in New York, on or

about May 14, 2007. This Notice of Removal is filed within 30 days after receipt by

Microsoft of the summons and complaint, in compliance with 28 U.S.C. § 1446(b). A

copy of the summons and complaint is annexed hereto as Exhibit A. On information and

belief, no other pleadings have been served and no orders have been entered in the action.

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. The amount in controversy in this action, exclusive of costs, appears to be in excess of the sum or value of $75,000. Intellivision, the plaintiff in this action, seeks rescission of a 2001 agreement under which it received $1,000,000 from Microsoft. In addition, Intellivision seeks compensatory and punitive damages in amounts to be determined by the Court.

3. Microsoft is a Washington corporation with its principal place of business located in Redmond, Washington. Under 28 U.S.C. § 1332(c)(1), Microsoft is a citizen of the State of Washington. The above-referenced complaint states that Intellivision is a joint venture formed in New York between three individuals, Bruce Adams, Paul Hoffman and John Daniels. On information and belief, Intellivision's principal place of business is Seymour, Connecticut. On information and belief, Intellivision is a citizen of the States of Connecticut and/or New York and thus there appears to be diversity jurisdiction in this matter.

4. This action may be removed to this Court pursuant to 28 U.S.C. § 1441. Microsoft, the sole defendant in this action, is not a citizen of New York State.

5. Pursuant to 28 U.S.C. § 1446(d), Microsoft will file a copy of this Notice of Removal with the clerk of the Supreme Court of the State of New York, New York County, and will serve copies of the Notice on counsel for Intellivision.

WHEREFORE Microsoft prays that this action be removed from the Supreme Court of the State of New York, New York County, to the United States District Court for the Southern District of New York as provided by law.

Dated: New York, New York
       May 24, 2007

Respectfully submitted,

SULLIVAN & CROMWELL LLP
Steven L. Holley (SH2485)
Robert S. Landy (RL9873)
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Microsoft Corporation*

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|                                         |   |
|-----------------------------------------|---|
| INTELLIVISION, a Joint Venture,         | x )
|                              Plaintiff, | )
|                                         | )
|                 -against-               | )
|                                         | )
| MICROSOFT CORPORATION,                  | )
|                                         | )
|                              Defendant. | )
|                                         | x |

Plaintiff designates NEW YORK
County as the
place of trial

The basis of Venue is plaintiff's
residence

**S U M M O N S**

Index No.:

Date Filed

Plaintiff resides at
375 South End Avenue, 34P
New York, New York 10280

RECEIVED

PTSGEOCORP.

BY:

Dorothy A. Nelson, Vice President

To the above-named Defendant:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney within twenty (20) days after service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:     New York, New York
           January 12, 2007

BRUCE D. KATZ
Attorney for Plaintiff
225 BROADWAY, 37TH FLOOR
New York, New York 10007
212) 233-3434

To     MICROSOFT CORPORATION
       1290 Avenue of the Americas
       New York, NY 10104

NEW YORK
COUNTY CLERK'S OFFICE

JAN 1 2 2007

NOT COMPARED
WITH COPY FILE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| INTELLIVISION, a Joint Venture, ) | |
| ) | |
| ) | **VERIFIED** |
| Plaintiff, ) | **COMPLAINT** |
| ) | |
| v. ) | Index No. |
| ) | 100614/07 |
| MICROSOFT CORPORATION, ) | |
| ) | |
| ) | |
| Defendant. ) | |

As and for its Complaint herein, plaintiff, Intellivision, by its undersigned

counsel, hereby alleges as follows:

## THE PARTIES

1. Plaintiff, Intellivision, is a joint venture formed in New York by its principals

Bruce Adams, Paul Hoffman and John Daniels, and at all relevant times herein had

offices at 375 South End Avenue, 34P, New York, New York, 10280 and 156 Roosevelt

Drive, Unit A, Seymour Connecticut, 06483.

2. At all relevant times herein, Bruce Adams has been a resident of the state of

New Jersey, Paul Hoffman has been a resident of the state of New York and John

Daniels has been a resident of the state of Connecticut.

3. On information and belief, defendant Microsoft Corporation ("Microsoft") is a

corporation organized and existing under the laws of the state of Washington and

having a principal place of business at One Microsoft Way, Redmond, Washington

98052.

## JURISDICTION AND VENUE

4.  The Court has jurisdiction over this matter pursuant to CPLR §§ 301 and 302 because, upon information and belief, plaintiff has a principal place of business in the state and county of New York and maintains a substantial presence in the state and county of New York. Specifically, on information and belief, Defendant has offices in the state of New York, is qualified and licensed to do business in the state of New York, does business in the State of New York, contracts to supply goods and services within the state and city of New York, regularly does and solicits business in the state and city of New York, engages in persistent sales of goods and services and solicitation therefor, and derives substantial revenue from goods used or consumed or services rendered in the state and city of New York, and owns and possesses real property situated within the state of New York.

5.  Venue is proper based upon CPLR §503.

## BACKGROUND FACTS

### A. Intellivision and its Pioneering Technology

6.  Plaintiff Intellivision was a joint venture formed by the aforementioned individuals, Daniels, Adams and Hoffman. Among other things, Intellivision was formed for the purpose of creating, developing, patenting, commercializing and/or licensing interactive television and related technologies and developments including but not limited to the inventions and developments disclosed in nearly two-dozen pending U.S. patent applications.

7.  In addition to developing technology, Intellivision was engaged in the commercial exploitation of certain "core inventions" relating to pioneering advancements in interactive television and television set-top-box technology. These "core inventions" include:

(1)  Providing television viewers the ability to manipulate live television with VCR-like controls such as "pause," "rewind" and "fast forward." Specifically, this core technology relates to enabling the manipulation of multiple live television broadcasts that are being simultaneously recorded;

(2)  Enhanced, interactive on-screen programming guides. This core technology relates to intuitive on-screen programming guides that are searchable (such as by genre, actor/actress, director, date, etc.) and allow the simplified control of a large number of viewing options and the direct control of an associated set-top-box;

(3)  Use of embedded "links" contained in a video broadcast that, when "selected" cause an operation to be performed, such as the setting of a record date and time, the display of additional information, etc.;

(4)  Simplified "one-click" recording of a wide variety of viewing options;

(5)  The creation of a "viewer profile" that causes the set top box to automatically record programs that are deemed to be consistent with a particular viewer's interests;

(6)  Remote programming of the set top box over a network (such as the internet);

(7)  Interactive TV applications (such as viewer participation television

-3-

programs);

(8)  Video-on-demand applications that can be implemented with minimal investment in head-end capital equipment;

(9)  Exploiting largely unused broadcast media and unused portions of broadcast bandwidth for use in transmitting "bits" of video content to set-top-boxes to enable enhanced programming, real-time video-on-demand and near video-on-demand programming;

(10)  Supplementing video programming produced and broadcast by others with additional content;

(11)  Networking applications including the concept of a "home gateway"; and

(12)  Enhancements to the aforesaid technologies including remote programming capabilities, networking capabilities and online capabilities enabling the switching between live television and broadband content.

8.  The technology developed by Intellivision and its founder is of enormous commercial value and much of said technology is already being exploited by others to the detriment of the plaintiff herein.

9.  The above-mentioned "core inventions" were developed by Intellivision's founder at a tremendous personal and professional cost and sacrifice and constitute more than seven years of exhaustive work conducted under severely adverse conditions.  Much of this work was conducted after hours in a makeshift laboratory located, at various times in a barn, a garage and attic located in the personal residence of Intellivision's founder.

–4–

10.  Much of the technology developed by Intellivision has already been incorporated into many commercially successful consumer electronics products.  These products include, among others, the Digital Video Recorder (DVR) (such as Tivo®, Replay TV® and UltimateTV®) and Microsoft's Windows® Media Center™ and Windows Vista™ operating systems.

11.  The above-mentioned "core inventions" mentioned above are disclosed in numerous patent applications filed over the past fourteen years by members of Intellivision and its founder.  These patent applications include, but are not limited to,

(1)     U.S. Patent Application Serial No. 11/250,807;
(2)     U.S. Patent Application Serial No. 11/097,807;
(3)     U.S. Patent Application Serial No. 10/970,294;
(4)     U.S. Patent Application Serial No. 10/970,440;
(5)     U.S. Patent Application Serial No. 10/970,439;
(6)     U.S. Patent Application Serial No. 10/970,512;
(7)     U.S. Patent Application Serial No. 10/970,492;
(8)     U.S. Patent Application Serial No. 10/094,167;
(9)     U.S. Patent Application Serial No. 09/993,780;
(10)    U.S. Patent Application Serial No. 09/992,190;
(11)    U.S. Patent Application Serial No. 09/952,582;
(12)    U.S. Patent Application Serial No. 09/993,814;
(13)    U.S. Patent Application Serial No. 09/447,629;
(14)    U.S. Patent Application Serial No. 08/900,417;
(15)    U.S. Patent Application Serial No. 08/848,895;
(16)    U.S. Patent Application Serial No. 08/641,517;
(17)    U.S. Patent Application Serial No. 08/306,642;
(18)    U.S. Patent Application Serial No. 08/038,240.

12.  In addition, some of Intellivision's "core inventions" are covered in U.S. Provisional Patent Application Serial Nos. 60/114,668 and 60/014,959; Japan Patent Application No. 10-2259225; Australian Patent Application No. 148995/97; and International (PCT) Patent Application No. PCT/US97/18372.

13. Further, U.S. Patent No. 6,973,669 has been issued by the U.S. Patent and Trademark Office based on one of Intellivision's patent applications.

## B. Microsoft and the Parties' Agreement

14. Defendant, Microsoft Corporation is, on information and belief, one of the world's largest companies and the world's largest producer of software for personal computers. Microsoft's products include the Windows® operating system and the Microsoft Office® suite of software products. On information and belief, more than 95% of all personal computers in the world run on Microsoft's Windows® operating system.

15. On information and belief, it has become well known that Microsoft has long engaged in predatory business tactics and anticompetitive conspiracies and has been repeatedly held liable for these activities in numerous jurisdictions throughout this country and Europe. On information and belief, these activities have resulted in billions of dollars in damage to many of Microsoft's competitors, such as Netscape, Sun Microsystems, Real Networks, Symantec, and others, and to members of the public at large. On information and belief, Microsoft has paid billions of dollars in damages in judgments and settlements based on its illicit activities.

16. In 1999, Intellivision representatives attended an interactive television trade show in New York City organized by Kagan Research. While there, Intellivision discussed its core technology with John Colombo, a business development manager employed by Microsoft at its Web TV campus in Mountain View, California.

-6-

17. Shortly thereafter, Intellivision contacted Mr. Columbo to follow up on their discussion and to further discuss Intellivision's core technology.

18. The discussion with Mr. Colombo led Microsoft to invite representatives of Intellivision to visit Microsoft's Web TV campus in Mountain View, California in 2000. While there, Microsoft executives provided Intellivision with an overview of Microsoft's Web TV structure and its activities and developments in the area of television. In response to questioning from Intellivision representatives, Microsoft executives, including Anthony Faustini, explicitly stated Microsoft had not developed and was not engaged in the development of a television set-top box product or associated software that incorporates any of the core inventions developed by Intellivision and covered by Intellivision's patent applications.

19. During and after the aforementioned visit to Microsoft, Mr. Faustini explained to Intellivision representatives that Microsoft had an interest in purchasing Intellivision's intellectual property portfolio for "defensive" purposes. As explained to Intellivision, Microsoft had not theretofore dedicated substantial efforts to the protection of its intellectual property and had been increasingly facing claims of infringement by various third parties, including consumer electronics manufacturers. It was explained to Intellivision that Microsoft's interest in Intellivision's intellectual property portfolio was based on Microsoft's desire to build a portfolio of valuable patents to utilize for defensive purposes when challenged by others asserting claims of patent infringement.

20. Thereafter, Microsoft attorney Ronald Zink communicated with Intellivision representatives and made a verbal offer to purchase Intellivision's intellectual property

21. After discussing Microsoft's offer, Intellivision representatives contacted Mr. Zink to reject the offer and make a counteroffer seeking additional money for its intellectual property in the form of an up front cash payment and a per unit royalty on products that are within the scope of Intellivision's patent applications.

22. In response to Intellivision's counteroffer, Microsoft attorney Zink advised Intellivision representatives that a royalty payment would be unworkable. Mr. Zink pointed out that none of Intellivision's patent applications had yet issued as patents, thus making it difficult (but not impossible) to determine the amount of such payment, the patent claims which would trigger the payment, and what (if any) products would require payment of a royalty. Mr. Zink advised Intellivision that Microsoft needed to be able to determine at the outset the cost of the acquisition of Intellivision's technology. According to Mr. Zink, Microsoft could not determine at that point the cost of a royalty payment over the lifetime of a certain product based on the fact that none of Intellivision's patent applications had yet matured into issued patents. Mr. Zink was advised that this could be done and that Intellivision would insist on payment of a royalty in the event Microsoft planned on introducing any products falling within the scope of its patent applications.

23. In response, Mr. Zink assured Intellivision representatives on January 15, 2001 that Microsoft had not developed and did not presently intend to develop or

-8-

introduce a product incorporating Intellivision's core inventions. Mr. Zink specifically assured Intellivision representatives that Microsoft had no intention of offering a product with "Tivo-like" functionality. These verbal representations were made by Mr. Zink in January 2001.

24. In reliance on Mr. Zink's representations and assurances made on January 15, 2001, Intellivision was reasonably led to believe and reasonably did believe that Microsoft had not developed, was not developing, and had no present intention of developing or introducing a product which incorporated Intellivision's core inventions.

25. In reliance on Mr. Zink's representations, Intellivision decided to forego its demand for a per unit royalty based on sales of products that encompassed Intellivision's core inventions. This decision was based upon Mr. Zink's representations in January 2001 that Microsoft had not developed, was not developing, and had no present intention of developing a product which incorporated Intellivision's core inventions.

26. On or about January 16, 2001, Intellivision entered in to a confidential written Agreement with Microsoft by which Intellivision assigned to Microsoft the novel technology it developed along with its patent applications.

27. On January 15, 2001, one day before formal execution by Intellivision of the parties' written Agreement, Mr. Zink affirmed that Microsoft had not developed and had no present intention of developing a product embodying the core technologies. This was an important consideration to Intellivision and was the main factor that persuaded Intellivision to forego the requirement for royalty payments based on the

sale of products incorporating Intellivision's technology.  If Intellivision believed that Microsoft had developed such a product and was planning to introduce that product, it would not have executed the parties' Agreement.

28.  Despite Mr. Zink's representations, on information and belief, approximately one week after the parties' Agreement was fully executed, Microsoft launched a national advertising campaign for its "Ultimate TV" product.  Ultimate TV was a television set-top box that incorporates the core technologies embodied in Intellivision's patent applications and described above.

29.  Stated otherwise, approximately one week after Intellivision assigned to Microsoft all of its intellectual property rights covering the concept of a television set-top box that allows viewers to manipulate the viewing of live television, Microsoft introduced a product which allows viewers to manipulate the viewing of live television in precisely the manner described by Intellivision's patent applications.

30.  Thus, Microsoft misrepresented critical facts that were material to the parties' Agreement, as to its development activities and intentions, and thereby fraudulently induced Intellivision into signing the parties' Agreement under terms that were materially worse than terms that Intellivision would have agreed to had Mr. Zink truthfully represented the facts.

## COUNT I
## FRAUD IN THE INDUCEMENT

31.  Intellivision repeats and realleges all of the statements set forth in Paragraphs 1-30 above as if more fully set forth herein.

32.  The specific acts of Microsoft alleged above, including the misrepresentations

-10-

of material facts on January 15, 2001, that Microsoft had not developed, was not developing, and had no present intention of developing a product which incorporated Intellivision's core inventions, were fraudulent acts designed to induce Intellivision into assigning to Microsoft all of Intellivision's intellectual property under terms that were significantly less advantageous to Intellivision than they would have been had Microsoft not misrepresented the facts to Intellivision.

33. In reliance on the aforementioned misrepresentations made on January 15, 2001, Intellivision was induced to execute the Agreement and assign all rights in its intellectual property to Microsoft under terms that were significantly less advantageous to Intellivision than the would have been had Microsoft not misrepresented the facts to Intellivision.

34. Accordingly, Intellivision has been damaged by the loss of revenue in the form of royalties, lost opportunities with third parties, lost opportunity in expediting the examination of its patent applications and enforcing its patent rights against others, and lost opportunity in exploiting its own developments.

35. For instance, in reliance on the aforementioned misrepresentations made by Microsoft, Intellivision executed the parties' Agreement assigning all of its intellectual property rights to Microsoft and terminated its discussions with various third parties, including General Instrument, Replay TV, Tivo, and Gemstar, all to Intellivision's financial detriment.

## COUNT II
## MISTAKE

36. Intellivision repeats and realleges all of the statements set forth in

-11-

Paragraphs 1-35 above as if more fully set forth herein.

37.  In reliance on material facts that were misrepresentations made to it by Microsoft on January 15, 2001, Intellivision executed the parties' Agreement assigning all rights in its intellectual property to Microsoft.  The terms of such Agreement were significantly less advantageous to Intellivision than would have been had Microsoft not misrepresented the material facts.

38.  Accordingly, the parties did not reach a meeting of the minds and their Agreement was the result of both mutual and unilateral mistake.

## COUNT III
## WASTE

39.  Intellivision repeats and realleges all of the statements set forth in Paragraphs 1-38 above as if more fully set forth herein.

40.  On information and belief, Microsoft has not aggressively prosecuted the Intellivision patent applications and has materially and substantially wasted the valuable property rights contained therein, to the detriment of Intellivision.

41.  Specifically, on information and belief, the patent prosecution activities undertaken by Microsoft have damaged Intellivision's intellectual property such that when such intellectual property is reassigned to Intellivision, the value of such assets has been severely diminished.

WHEREFORE, Intellivision prays for an Order as follows:

1.  Finding that Intellivision was fraudulently induced by Microsoft to execute the parties' confidential Agreement;

2.  Finding that Intellivision was defrauded by Microsoft and was damaged by

-12-

such fraud;

3.  Rescinding the Agreement between Intellivision and Microsoft;

4.  Ordering Microsoft to assign all Intellivision patents and patent applications to Intellivision;

5.  Ordering that Microsoft has no rights in any of the developments of Intellivision;

6.  Awarding Intellivision its damages, including an Order for all compensatory damages, consequential, incidental and punitive damages, together with interest, reasonable attorney's fees, costs and disbursements of this action as permitted by law; and

7.  Such other and further relief as to this Court seems just and proper.

Dated: January 12, 2006

By:  Bruce D. Katz, Esq.
     Bruce D. Katz & Associates
     225 Broadway – 37th Floor.
     New York, NY 10007
     (212)233-3434

     *Attorney for Plaintiff*
     *Intellivision, a Joint Venture*

–13–

## VERIFICATION

STATE OF NEW YORK
COUNTY OF NEW YORK          SS.:

Paul Hoffman being duly sworn deposes and says:

I Paul Hoffman am a member of Intellivision, the plaintiff herein; I have read the annexed verified complaint and know the contents thereof and the same are true to my knowledge, except for those matters therein which are stated to be alleged on information and belief and as to those matters, I believe them to be true.

x _____
                          Paul Hoffman

Sworn to before me this
___ day of June 2007

_____
        Notary Public

BRUCE D. KATZ
Notary Public, State of New York
No. 02KA6023739
Qualified in New York County
Commission Expires April 26, 200_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - x

INTELLIVISION, a Joint Venture,                    :          Civil Action No.  07 CV 4079 (JGK)

                              Plaintiff,      :

            - against -                                   :          <u>AFFIDAVIT OF SERVICE</u>

                                  :

MICROSOFT CORPORATION,                          :

                       Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK   )

COUNTY OF NEW YORK)

        ROBERT S. LANDY,  being duly sworn, deposes and says that he is over 18 and not a party to this action and that on this 25th day of May, 2007, he caused to be served by hand a true copy of the Notice of Filing Notice of Removal in the above-captioned action with attachments and the Rule 7.1 Certificate upon Bruce D. Katz, Esq., 225 Broadway,  New York, New York 10007 and on the 25th day of May, 2007, he also caused to be filed by hand with the New York County Clerk's Office a true copy of the Notice of Filing Notice of Removal with attachments.

Sworn to before me this
25th day of May, 2007

Notary Public

ARLENE SCHAFFNER
Notary Public, State of New York
No. 4644282
Qualified in New York County
Commission Expires Aug. 31, 2009