UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - -x

|  |  |  |
|---|---|---|
| INTELLIVISION, a Joint Venture, | : | Civil Action No. 07 CV 4079 (JGK) |
|  | : | ECF Case |
| Plaintiff, | : |  |
|  | : |  |
| - against - | : |  |
|  | : |  |
|  | : |  |
| MICROSOFT CORPORATION, | : |  |
|  | : |  |
| Defendant. | : |  |

- - - - - - - - - - - - - - - - - - - - -x


# MEMORANDUM OF MICROSOFT CORPORATION
# IN SUPPORT OF ITS MOTION TO DISMISS


SULLIVAN & CROMWELL LLP
Steven L. Holley (SH2485)
Robert S. Landy (RL9873)
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Microsoft Corporation*


June 15, 2007

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND .......................................................................................................... 3

ARGUMENT ............................................................................................................... 7

I.      Intellivision's Fraudulent Inducement Claim Should Be Dismissed. .......... 8

      A.    As a Matter of Law, Intellivision Cannot Reasonably Have
            Relied on Representations that Are Absent from the
            Agreement. ................................................................................... 8

      B.    The Merger Clause Is Fatal to Intellivision's Fraudulent
            Inducement Claim. ........................................................................ 9

      C.    The Broad Release in the Agreement Is Also Fatal to
            Intellivision's Fraudulent Inducement Claim. .............................. 11

      D.    The Express Disclaimer of Liability in the Agreement Is
            Also Fatal to Intellivision's Fraudulent Inducement Claim. .......... 12

      E.    Having Ratified the Agreement, Intellivision May Not Now
            Assert a Fraudulent Inducement Claim. ....................................... 13

      F.    The Fraudulent Inducement Claim Is Barred by the Statute
            of Limitations. .............................................................................. 14

            1.    The Fraudulent Inducement Claim Is Time-
                 Barred under Connecticut Law ......................................... 14

            2.    The Fraudulent Inducement Claim Is Also
                 Time-Barred under New York Law. ................................... 15

                 a.    Intellivision Was Not a Resident of New
                     York at the Relevant Time. ................................... 15

                 b.    The Fraudulent Inducement Claim Is
                     Untimely in Any Event. ........................................ 16

II.    Intellivision's Claim for "Mistake" Should Be Dismissed. .....................17

    A.    Unilateral Mistake...........................................................................17

    B.    Mutual Mistake ...............................................................................18

    C.    No Action for Rescission Based on Mistake Is Permissible Because Intellivision Ratified the Agreement. .............................19

    D.    Intellivision's "Mistake" Claim Is Barred by the Statute of Limitations. ......................................................................................19

III.    Intellivision's Claim for Waste Should Be Dismissed. ...........................20

    A.    Intellivision's Waste Claim Is Not Viable Under New York Law. ..................................................................................................20

    B.    Intellivision's Waste Claim Is Barred by the Three-Year Statute of Limitations...................................................................21

CONCLUSION.....................................................................................................22

## TABLE OF AUTHORITIES

Page

### CASES

*2 Broadway LLC* v. *Credit Suisse First Boston Mortgage Capital LLC.*,
   No. 00 Civ. 5773, 2001 U.S. Dist. LEXIS 4875 (S.D.N.Y. Apr. 20, 2001) ......... 11

*Allen* v. *WestPoint-Pepperell, Inc.*,
   945 F.2d 40 (2d Cir. 1991) ............................................................... 18

*Antone* v. *General Motors Corp.*,
   64 N.Y.2d 20, 473 N.E.2d 742 (1984) .......................................... 15, 16

*Bell Atlantic Corp.* v. *Twombly*,
   No. 05-1126, 127 S. Ct. 1955 (May 21, 2007) ..................................... 8

*Bobal* v. *Rensselaer Polytechnic Institute*,
   916 F.2d 759 (2d Cir. 1990) ............................................................ 20

*Bremen* v. *Zapata Offshore Co.*,
   407 U.S. 1 (1972) ........................................................................... 10

*Buckeye Check Cashing Inc.* v. *Cardegna*,
   546 U.S. 440 (2006) ....................................................................... 10

*Creative Waste Management* v. *Capitol Environmental Services*,
   429 F. Supp. 2d 582 (S.D.N.Y. 2006) ............................................. 17

*Danann Realty Corp.* v. *Harris*,
   5 N.Y.2d 317, 157 N.E.2d 597 (1959) ........................................... 9, 10

*Dutton* v. *Glass*,
   No. 04 CV 3496, 2005 U.S. Dist. LEXIS 868
   (S.D.N.Y. 2005 Jan. 20, 2005) ....................................................... 14

*FDIC* v. *Five Star Management, Inc.*,
   692 N.Y.S.2d 69 (1st Dep't 1999) ................................................... 19

*First National Bank* v. *Volpe*,
   629 N.Y.S.2d 906 (4th Dep't 1995) ................................................. 19

*Global Network Committee, Inc.* v. *City of New York*,
   458 F.3d 150 (2d Cir. 2006) ............................................................. 8

*Gross* v. *Diversified Mortg. Investors*,
   438 F. Supp. 190 (S.D.N.Y. 1977) .................................................. 15

-iii-

**TABLE OF AUTHORITIES**
**(Continued)**

Page

*Grumman* v. *Allied Industries*,
    748 F.2d 729 (2d Cir. 1984)...................................................................... 9

*Grymes* v. *Sanders*,
    93 U.S. 55 (1867).................................................................................... 13

*Harris* v. *Halberg*,
    Slip op. 00604, 828 N.Y.S.2d 579 (2d Dep't 2007) .............................. 8

*Harsco Corp.* v. *Segui*,
    91 F.3d 337 (2d Cir. 1996)...................................................................... 10

*Jaghory* v. *New York State Department of Education*,
    131 F.3d 326 (2d Cir. 1997)...................................................................... 7

*Mills* v. *Everest Reinsurance Co.*,
    410 F. Supp. 2d 243 (S.D.N.Y. 2006)..................................................... 19

*Oko* v. *Walsh*,
    814 N.Y.S.2d 655 (2d Dep't 2006)......................................................... 8

*In re Ply\*Gem of Laurel, Inc.*,
    456 N.Y.S.2d 382 (1st Dep't 1982) ....................................................... 16

*RBS Holdings, Inc.* v. *Wells Fargo Century, Inc.*, No. 06 Civ. 6036,
    2007 U.S. Dist. LEXIS 31687, (S.D.N.Y. Apr. 27, 2007) ................... 11

*Sack* v. *Low*,
    478 F.2d 360 (2d Cir. 1973)...................................................................... 15

*Schenck* v. *State Line Telephone Co.*,
    238 N.Y. 308,  144 N.E. 592 (1924)....................................................... 13

*Shults* v. *Geary*,
    660 N.Y.S.2d 497 (3d Dep't 1997)......................................................... 18

*Stauss* v. *Title Guarantee & Trust Co.*,
    284 N.Y. 41, 29 N.E.2d 462 (1940)........................................................ 13

*Stuart Silver Assoc.* v. *Baco Dev. Corp.*,
    665 N.Y.S.2d 415 (1st Dep't 1997) ....................................................... 8

*Travelers Insurance Co.* v. *633 Third Associates*,
    14 F.3d 114 (2d Cir. 1994)...................................................................... 20

**TABLE OF AUTHORITIES**
**(Continued)**

Page

*Wells Fargo Bank Northwest* v. *Taca International Airlines*,
    247 F. Supp. 2d 352 (S.D.N.Y. 2002) ................................................................. 10

*Wholesale Service Supply Corp.* v. *State*,
    103 N.Y.S.2d 820 (N.Y. Ct. Cl. 1951) ................................................................ 13


**STATUTES AND RULES**

C.P.L.R. § 202 ........................................................................................... 14, 15, 16

C.P.L.R. § 213 ................................................................................................. 16, 19

C.P.L.R. § 214 ........................................................................................................ 21

C.P.L.R. § 3016 ..................................................................................................... 18

CONN. GEN. STAT. ANN. § 52-563 ....................................................................... 20

CONN. GEN. STAT. ANN. § 52-577 .............................................................. 15, 16, 21

FED. R. CIV. P. 9(b) ......................................................................................... 17, 18

FED. R. CIV. P. 12(b)(6) ...................................................................................... 7, 8

FED. R. CIV. P. 56(a) .............................................................................................. 8

WASH. REV. CODE ANN. § 4.16.080(1) ................................................................ 21

WASH. REV. CODE ANN. § 4.24.630(1) ................................................................ 20


**OTHER SOURCES**

RESTATEMENT (SECOND) OF CONTRACTS § 380 (1981) ....................................... 13

RESTATEMENT (SECOND) OF CONTRACTS § 381 (1981) ....................................... 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - -x
                                        :
INTELLIVISION, a Joint Venture,         :    Civil Action No. 07 CV 4079 (JGK)
                                        :    ECF Case
                    Plaintiff,          :
                                        :
          - against -                   :
                                        :
                                        :
MICROSOFT CORPORATION,                  :
                                        :
                    Defendant.          :
- - - - - - - - - - - - - - - - - - - - -x


## MEMORANDUM OF MICROSOFT CORPORATION
## IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Microsoft Corporation ("Microsoft") submits this

memorandum of law in support of its motion to dismiss the Complaint filed by plaintiff

Intellivision in the above-captioned action on January 12, 2007.

## PRELIMINARY STATEMENT

Intellivision's three causes of action are all predicated on a contract that it

entered into with Microsoft in January 2001 (the "Agreement").[1] Pursuant to that

Agreement, Intellivision assigned to Microsoft "all of its rights, title and interest in" all of

Intellivision's intellectual property relating to interactive television.  More than six years

after the fact, Intellivision now claims: (i) that it was fraudulently induced to enter into

the Agreement; (ii) that the Agreement "was the result of both mutual and unilateral

---

[1]    A copy of the Agreement is annexed to the June 15, 2007 Declaration of Robert
S. Landy ("Landy Decl.") which is submitted herewith.

mistake"; and (iii) that Microsoft has "materially and substantially wasted" certain intellectual property rights that Intellivision assigned to Microsoft under the Agreement.

In asserting these claims, Intellivision studiously avoids any reference to the terms of the Agreement and fails to attach a copy of the Agreement to the Complaint. This is not the product of inadvertence. Intellivision ignores the Agreement because it is fatal to each and every one of Intellivision's claims.

- The Agreement was signed by Intellivision: (i) before Microsoft made the alleged misrepresentations that purportedly induced Intellivision to enter into the Agreement and (ii) more than six years before the Complaint was filed.

- The Agreement contains an explicit merger clause providing that the Agreement is "the complete and exclusive statement of the terms and conditions" of parties' contract and supersedes "any and all prior correspondence, conversations, negotiations, agreements or understandings."

- The Agreement contains a broad release in favor of Microsoft from any and all claims "relating to the general subject matter described in" the patent applications that were assigned by Intellivision to Microsoft.

- The agreement contains an express disclaimer of liability providing that "neither party shall be liable to the other party" for "damages of any kind or nature arising from this agreement."

Taking proper account of the terms of the Agreement, which the Court is entitled to do on this motion to dismiss, it is apparent that none of Intellivision's claims is sustainable. Accordingly, all three causes of action alleged in the Complaint should be dismissed.

## BACKGROUND

The following are the relevant facts for the purposes of this motion to dismiss:

Intellivision is a joint venture formed by Bruce L. Adams, Paul R. Hoffman and John J. Daniels—residents of New Jersey, New York and Connecticut, respectively. (Complaint ¶ 2.) Intellivision developed "interactive television and related technologies" and, prior to execution of the Agreement, had filed multiple U.S. patent applications covering those technologies. (Complaint ¶¶ 6, 11-12.) The Complaint alleges that the technologies assigned to Microsoft in the Agreement were created by Intellivision's founder over the course of seven years, with much of the work performed in "a makeshift laboratory located, at various times, in a barn, a garage and an attic located in the personal residence of Intellivision's founder." (Complaint ¶ 9.) Although the Complaint does not identify which of Intellivision's three principals is the "founder", the first paragraph of the Agreement states that Intellivision's "principal place of business" is located in Seymour, Connecticut, and John S. Daniels is identified in that same paragraph as residing in Seymour, Connecticut. (Landy Decl. Ex. 1 at 1.) From this, it can be deduced that Mr. Daniels is Intellivision's founder. Under Paragraph 9.4 of the Agreement, all required notices are to be sent to Intellivision at its Seymour, Connecticut address. (Landy Decl. Ex. 1 at 5.)

The Complaint alleges that Intellivision now has a second principal place of business located in lower Manhattan at 375 South End Avenue. That is where Paul R. Hoffman, another Intellivision principal, resides, but the Complaint contains no allegations regarding any business conducted by Intellivision at that location. (*See* Complaint ¶¶ 1, 6.)

The Complaint alleges that in 1999, representatives of Intellivision met with John Colombo, a Microsoft employee, at a trade show in New York. (Complaint ¶ 16.) As a result of this meeting and ensuing conversations initiated by Intellivision, Microsoft invited representatives of Intellivision to the Mountain View, California offices of Microsoft's WebTV division to discuss the possibility of acquiring Intellivision's "intellectual property portfolio," including its patent applications. (Complaint ¶ 19.) Intellivision further alleges that Anthony Faustini, a Microsoft representative, told Intellivision that: (i) "Microsoft had not developed and was not engaged in the development of a television set-top box product or associated software that incorporates any of the core inventions developed by Intellivision and covered by Intellivision's patent applications," and (ii) Microsoft's interest in acquiring Intellivision's intellectual property was exclusively for "defensive" purposes, meaning that Microsoft had no intention of using the technology it was about to purchase in any product or service. (Complaint ¶¶ 18-19.)

At some point thereafter, Microsoft in-house counsel Ronald Zink contacted Intellivision with an offer to purchase its intellectual property. (Complaint ¶ 20.) Intellivision rejected that initial offer and responded with a counter offer that would have required Microsoft to pay per-unit royalties for any Microsoft products

-4-

incorporating the technologies described in Intellivision's patent applications. (Complaint ¶ 21.)  Microsoft rejected Intellivision's counter offer because:  (i) none of Intellivision's patent applications had yet resulted in issued patents, and (ii) it would have been very difficult to determine, *ab initio*, which future Microsoft products or services might give rise to royalty obligations and what the required royalty payments would be in each instance.  (Complaint ¶ 22.)

Intellivision alleges that, on January 15, 2001, "one day before formal execution by Intellivision of the parties' written agreement," Mr. Zink verbally assured Intellivision that Microsoft had not developed, and had no present intention of developing, any product "embodying the core technologies" that would be assigned to Microsoft in the Agreement.  (Complaint ¶ 27.)[2/]  Yet, as is apparent from the signature page of the Agreement, the three principals of Intellivision all signed the Agreement on January 11, 2001, four days before the alleged misrepresentation was made.  (Landy Decl. Ex. 1 at 8.)

Intellivision assigned to Microsoft "all of its rights, title and interest in and to the inventions described and disclosed in" the patent applications listed in Attachment A to the Agreement, as well as any patents that might issue as a result of those patent applications.  (Landy Decl. Ex. 1 at 2.)  The Agreement contained no provision imposing any obligation on Microsoft to use or refrain from using the assigned technologies.  The Agreement also contained no provision imposing any obligation on Microsoft to prose-

---

[2/]    This allegation is baseless, as Microsoft can prove easily if the Court denies this motion to dismiss.  Microsoft publicly announced the first version of Ultimate TV service incorporating what Intellivision refers to as its "core technologies" in October 2000, two months before the Agreement was executed.  *See* http://www.microsoft.com/presspass/press/2000/Oct00/PricingPR.mspx

cute the patent applications following their assignment by Intellivision to Microsoft. The

Agreement provided for Microsoft to pay Intellivision the sum of $1,000,000 within

30 days of execution by all parties and an additional $850,000 within 30 days of the

issuance of any letters patent to Microsoft resulting from the patent applications assigned

to Microsoft by Intellivision. (Landy Decl. Ex. 1 at 3.) There is no allegation in the

Complaint that any monies owed by Microsoft to Intellivision under the terms of the

Agreement have not been paid.

The Agreement contains the following key provisions not mentioned by

Intellivision in the Complaint:

"5.    Release: Upon payment of the [$1,000,000] sum set forth in Section 3(A),
[Intellivision] . . . absolutely and forever releases and discharges MICROSOFT
. . . from any and all claims, rights, demands, covenants, agreements, contracts,
obligations, responsibilities, representations, warranties, promises, liens, accounts,
debts, liabilities, damages, expenses, attorney's fees, costs, and causes of action
which they may have as of the Effective Date of the Agreement, relating to the
general subject matter described in the Patent Applications or to any other pause
technology or system, whether known or unknown . . . except for and provided
that there is no release or discharge in connection with the parties' respective
rights and obligations as provided in this Agreement. (Landy Decl. Ex. 1 at 3.)

"6.6    NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR
ANY LOST PROFITS OR ANY INDIRECT, INCIDENTAL,
CONSEQUENTIAL, EXEMPLARY OR SPECIAL DAMAGES OF ANY KIND
OR NATURE ARISING FROM THIS AGREEMENT, EVEN IF EITHER
PARTY HAS WARNED OR BEEN WARNED OF THE POSSIBILITY OF
SUCH LOSS OR DAMAGE. (Landy Decl. Ex. 1 at 4 (emphasis in original).)

"9.7.    Entire Agreement: This Agreement, including Attachments A-C, which
are incorporated by reference herein, is intended by the parties to be the final
expression of their agreement and constitutes and embodies the entire agreement
and understanding between the parties hereto and constitutes a complete and
excusive statement of the terms and conditions thereof, and will supersede any
and all prior correspondence, conversations, negotiations, agreements and
understandings relating to the same subject matter." (Landy Decl. Ex. 1 at 3.)

The Complaint alleges that "approximately one week after Intellivision assigned to Microsoft all of its intellectual property rights covering the concept of a television set-top box that allows viewers to manipulate the viewing of live television, Microsoft introduced a product which allowed viewers to manipulate the viewing of live television." The Complaint further alleges that this Microsoft product, called UltimateTV, "incorporate[d] the core technologies embodied in Intellivision's patent applications." (Complaint ¶ 28.)

On January 12, 2007—six years and one day after Intellivision signed the Agreement—Intellivision filed the present action in the Supreme Court of the State of New York for the County of New York. The central allegation of the Complaint is that Microsoft fraudulently induced Intellivision to assign its intellectual property to Microsoft "under terms that were significantly less advantageous to Intellivision than they would have been" had Intellivision been told that Microsoft had already developed a product "embodying the core technologies" assigned by Intellivision to Microsoft in the Agreement. (Complaint ¶¶ 32, 23.) On May 14, 2007, the last day on which service was permissible under the C.P.L.R., Intellivision served the Complaint on Microsoft's registered agent for service of process in New York. On May 25, 2007, Microsoft removed the action to this Court.

## ARGUMENT

In deciding a motion under Rule 12(b)(6) of the Federal Rules of Civil procedure, a court must take the facts alleged in the complaint as true. *Jaghory* v. *New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). Where a complaint fails to

incorporate a contract that is integral to the complaint, the court may consider that

contract on a motion under Rule 12(b)(6) without converting the motion into one for

summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure. *See Global*

*Network Comm., Inc.* v. *City of New York*, 458 F.3d 150, 156-57 (2d Cir. 2006). To

survive a motion to dismiss, a complaint must contain allegations that present not only a

possibility that that defendant is liable, but which demonstrate the "plausibility of entitle-

ment to relief." *Bell Atlantic Corp.* v. *Twombly*, No. 05-1126, 127 S.Ct. 1955, 1966

(May 21, 2007).

I.      **Intellivision's Fraudulent Inducement Claim Should Be Dismissed.**

        A.      **As a Matter of Law, Intellivision Cannot Reasonably Have
                Relied on Representations that Are Absent from the Agreement.**

                Under New York law, a complaint alleging fraud "must contain allega-

tions of a representation of material fact, falsity, scienter, reliance and injury. Moreover,

the plaintiff must show not only that he actually relied on the misrepresentation, but also

that such reliance was reasonable." *Oko* v. *Walsh*, 814 N.Y.S.2d 655, 656 (2d Dep't

2006) (internal citations omitted) *citing Stuart Silver Assoc.* v. *Baco Dev. Corp.*, 665

N.Y.S.2d 415 (1st Dep't 1997). New York courts have held that a sophisticated party

may not reasonably rely on oral statements made prior to execution of a written

agreement when such statements are omitted from or contradicted by the written

agreement. For example, in *Harris* v. *Halberg*, Slip op. 00604, 828 N.Y.S.2d 579 (2d

Dep't 2007), the court affirmed the dismissal of a fraudulent inducement claim because

the plaintiffs' alleged reliance on oral statements by the defendants that were contradicted

by a subsequent written agreement was unreasonable as a matter of law.

-8-

The same result should obtain here. There is nothing in the Agreement that limits Microsoft's use of the technologies assigned by Intellivision or makes any representations as to Microsoft's plans regarding interactive television. To the contrary, the Agreement assigns all of Intellivision's rights, title and interest in those technologies to Microsoft to do with as it pleases. Notably, while Intellivision made a number of representations, warranties and covenants in the Agreement, Microsoft made none whatsoever. Thus—even ignoring the merger clause, the release and the disclaimer of liability in the Agreement—Intellivision's alleged reliance on statements purportedly made by Microsoft before the agreement was executed is unreasonable as a matter of law.

The fact that the statements Intellivision claims it relied upon are not in the Agreement is dispositive, but the Agreement provides other bases for dismissing the fraudulent inducement claim.

### B.     The Merger Clause Is Fatal to Intellivision's Fraudulent Inducement Claim.

In *Grumman* v. *Allied Industries*, 748 F.2d 729, 734 (2d Cir. 1984), the Second Circuit embraced the rule of *Danann Realty Corp.* v. *Harris*, 5 N.Y.2d 317, 157 N.E.2d 597 (1959), in which "the New York Court of Appeals held that where a party specifically disclaims reliance upon a representation in a contract, that party cannot, in a subsequent action for fraud, assert it was fraudulently induced to enter into the contract by the very representation it has disclaimed." *Danann* involved a situation in which a "plaintiff ha[d] in the plainest language announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded." *Danann Realty*, 5 N.Y.2d at 320-21, 157 N.E.2d at 599. The New York Court of Appeals

held that "[s]uch a specific disclaimer destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon these contrary oral representations." *Id.* *See also Wells Fargo Bank Northwest* v. *Taca Int'l Airlines*, 247 F.Supp 2d 352, 368 (S.D.N.Y. 2002) (noting that "courts should consider the text of the agreement compared to the representations claimed to be fraudulent or negligent, while also considering the arm's-length nature of the negotiation and the sophistication of the parties, in order to determine whether reliance was reasonable") citing *Harsco Corp.* v. *Segui*, 91 F.3d 337, 345 (2d Cir. 1996).

The *Danann* rule is precisely on point here. Intellivision claims that had it known of the existence of a Microsoft product "with Tivo-like functionality," it would have demanded a higher price for its interactive television technologies and therefore the Agreement was fraudulently induced. (Complaint ¶¶ 23, 30.) What Intellivision ignores is Paragraph 9.7 of the Agreement, which unambiguously states that the terms of the Agreement "supersede any and all prior correspondence, *conversations, negotiations, agreements and understandings* relating to the same subject matter." (Landy Decl. Ex. 1 at 6 (emphasis added).) Intellivision does not allege that it was fraudulently induced to agree to this standard merger clause and thus should not be excused from its effect. Even in the face of a fraudulent inducement claim, courts enforce specific provisions of an agreement where, as here, there is no allegation that those provisions were themselves fraudulently induced. *See Buckeye Check Cashing Inc.* v. *Cardegna*, 546 U.S. 440, 445-46 (2006) (enforcing a contractual agreement to arbitrate in an action where plaintiffs claimed the entire agreement was illegal but did not specifically challenge the agreement to arbitrate); *Bremen* v. *Zapata Offshore Co.*, 407 U.S. 1, 9-15 (1972) (same). The

-10-

merger clause, standing alone, is a sufficient basis for dismissing Intellivision's fraudulent inducement claim.

C.    **The Broad Release in the Agreement Is Also Fatal to Intellivision's Fraudulent Inducement Claim.**

In Paragraph 5 of the Agreement, Intellivision (and anyone acting on its behalf) agreed to release Microsoft from "any and all *claims*, rights, demands, covenants, agreements, contracts, *obligations*, responsibilities, *representations*, . . . *causes of action* which they may have as of the Effective Date of the Agreement, relating to the general subject matter described in the Patent Applications . . . whether known or unknown." (Landy Decl. Ex. 1 at 3 (emphasis added).)  There is no allegation in the Complaint that this broad release was itself fraudulently induced.  Instead, Intellivision says only that it would have demanded more money for the technologies it assigned to Microsoft had Microsoft accurately represented its plans with regard to interactive television.  That, however, is a claim that falls squarely within the scope of the release.  Accordingly, the release is another independent basis for dismissing Intellivision's fraudulent inducement claim. *See RBS Holdings, Inc.* v. *Wells Fargo Century, Inc.*, No. 06 Civ. 6036, 2007 U.S. Dist. LEXIS 31687, at *18 (S.D.N.Y. Apr. 27, 2007) (granting defendant's motion to dismiss, despite allegations of fraud, because plaintiff did "not allege that [defendant] fraudulently induced [plaintiff] to execute the Release").   "It is appropriate to grant a motion to dismiss on the basis of a binding release agreement where, as here, the terms of the agreement are clear and unambiguous." *2 Broadway LLC* v. *Credit Suisse First Boston Mortgage Capital LLC.* No. 00 Civ. 5773, 2001 U.S. Dist. LEXIS 4875, at *18 (S.D.N.Y. Apr. 20, 2001).

-11-

**D.    The Express Disclaimer of Liability in the Agreement Is
Also Fatal to Intellivision's Fraudulent Inducement Claim.**

Intellivision alleges that it "has been damaged by the loss of revenue in the

form of royalties, lost opportunities with third parties, lost opportunity in expediting the

examination of its patent applications and enforcing its patent rights against others, and

lost opportunity in exploiting its own developments." (Complaint ¶ 34.)  Intellivision

goes on to allege that after executing the Agreement with Microsoft, Intellivision

"terminated its discussions with various third parties . . . to Intellivision's financial

detriment." (Complaint ¶ 35.)  The problem with this claim is that Paragraph 6.6 of the

Agreement states, in all capital letters, that neither party shall be liable to the other "FOR

… DAMAGES OF ANY KIND OR NATURE ARISING FROM THIS AGREEMENT."

(Landy Decl. Ex. 1 at 4.)

Again, there is no allegation in the Complaint that this sweeping

disclaimer of liability was itself fraudulently induced.  Instead, together with the merger

clause and the release, it reflects a desire by the parties to the Agreement to prevent

precisely the sort of belated challenge to the parties' basic bargain that Intellivision seeks

to mount.  The disclaimer of liability is yet another ground for dismissing Intellivision's

fraudulent inducement claim.[3/]

---

[3/]    Under Paragraphs 9.1 (Survival) and 9.5 (Severability), both the release and the
disclaimer of liability are severable from the remainder of the Agreement.  (*See*
Landy Decl. Ex. 1 at 5, 6.)

### E.    Having Ratified the Agreement, Intellivision May Not Now Assert a Fraudulent Inducement Claim.

Assuming, *arguendo*, that Intellivision could validly assert that it was fraudulently induced to enter into the Agreement, it ratified the Agreement by accepting and retaining its benefits—namely, the $1,000,000 paid by Microsoft—for more than six years before filing the Complaint. It is well-established that "'one may confirm a transaction voidable for fraud . . . by exercising dominion over the subject-matter of a sale, or even by silence and inaction with knowledge of one's rights.'" *Stauss* v. *Title Guarantee & Trust Co.*, 284 N.Y. 41, 45, 29 N.E.2d 462, 464 (1940) quoting *Schenck* v. *State Line Telephone Co.*, 238 N.Y. 308, 313, 144 N.E. 592, 593 (1924). A plaintiff who sits on his hands cannot assert a fraudulent inducement claim years after accepting the benefits of a contract. "Where a party desires to rescind a contract upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose, and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted." *Wholesale Service Supply Corp.* v. *State*, 103 N.Y.S.2d 820, 828 (N.Y. Ct. Cl. 1951) *quoting Grymes* v. *Sanders* 93 U.S. 55, 62 (1867). *See also* RESTATEMENT (SECOND) OF CONTRACTS § 380 (1981) (affirmance of contract can forfeit right to void it); RESTATEMENT (SECOND) OF CONTRACTS § 381 (1981) (unreasonable delay can result in loss of right to void contract).

*Stauss* should be controlling here. Intellivision assigned all of its interactive television technology to Microsoft in January 2001 in exchange for $1,000,000,

-13-

receipt of which is not denied.  (Complaint ¶ 26; Landy Decl. Ex. 1 at 3.)  Intellivision

alleges that it became aware of Microsoft's UltimateTV product within a few weeks of

executing the Agreement.  (*See* Complaint ¶¶ 28-29, Landy Decl. Ex. 1 at 8.)  If, as

Intellivision now contends, its discovery of the Ultimate TV product showed that

Microsoft had misrepresented its plans regarding interactive television, then Intellivision

should have done something about that at the time.  Having treated the $1,000,000 it got

from Microsoft as it own for that last six years, Intellivision has ratified the Agreement

and forfeited any claim it might have had to void the Agreement by making a fraudulent

inducement claim.

> **F.     The Fraudulent Inducement Claim Is Barred by the
>          Statute of Limitations.**

Under C.P.L.R § 202, where a cause of action accrues outside the State of

New York, a court should apply either the statute of limitations of the state where the

cause of action accrued or of New York, whichever is shorter.  Intellivision's cause of

action was filed more than three years too late under Connecticut law, which is where the

cause of action accrued.  There is no basis for applying the New York statute of limita-

tions to Intellivision's fraudulent inducement claim, but even if there were, the claim

would still be untimely.

> **1.     The Fraudulent Inducement Claim Is
>          Time-Barred under Connecticut Law.**

New York law provides that a fraud is deemed to have occurred where the

harm from the fraud was felt.  *Dutton* v. *Glass*, No. 04 CV 3496, 2005 U.S. Dist. LEXIS

868 at *9 (S.D.N.Y. 2005 Jan. 20, 2005) (holding that "even if the fraud occurred in New

York … it is governed by the law where plaintiffs suffered their injury which generally is

the place where plaintiffs resided and sustained the economic impact of their loss"). *See also Sack* v. *Low*, 478 F.2d 360, 365-66 (2d Cir. 1973); *Gross* v. *Diversified Mortg. Investors*, 438 F. Supp. 190, 198 (S.D.N.Y. 1977). At the time it entered into the Agreement with Microsoft, Intellivision's principal place of business was in Connecticut. Moreover, the interactive television technologies assigned by Intellivision to Microsoft were almost certainly developed in Connecticut.[4/] And Intellivision's founder resided in Connecticut at the time the Agreement was executed and he still does. (Complaint ¶ 2.)

It is clear from the foregoing that the locus of the alleged harm to Intellivision—the only plaintiff in this action—is Connecticut, which means that the fraudulent inducement claim accrued in Connecticut. The statute of limitations for fraud claims in Connecticut is three years. CONN. GEN. STAT. ANN. § 52-577 (West 2007). Thus, Intellivision's fraudulent inducement claim was asserted three years too late.

> **2.    The Fraudulent Inducement Claim Is Also
> Time-Barred under New York Law.**
>
> **a.    Intellivision Was Not a Resident of New
> York at the Relevant Time.**

Intellivision seeks to benefit from the six-year statute of limitations for fraud claims in New York by alleging that it is now a resident of New York, but Intellivision does not have the "significant connection with some locality in the State" that is required to be a New York resident under C.P.L.R. § 202. *See Antone* v. *General Motors Corp.*, 64 N.Y.2d 20, 30, 473 N.E.2d 742, 746 (1984). C.P.L.R. § 202 is

---

[4/]    The Complaint does not explicitly state that the "barn, garage and attic" in which Intellivision's technologies were allegedly developed were located in Connecticut, but it is safe to assume that they were not located in an apartment in Battery Park City.

designed to prevent precisely the sort of forum shopping in which Intellivision is

engaged. The statute prevents a non-resident plaintiff from bringing an action in New

York that would be time-barred in the plaintiff's home jurisdiction.

For the purposes of C.P.L.R. § 202, what matters is where Intellivision

was resident at the time the cause of action accrued, not where it presently resides.

*Antone*, 64 N.Y.2d at 27, 473 N.E.2d at 745. It is crystal clear in the Agreement that

Intellivision's principal place of business in January 2001, when the claim accrued, was

in Seymour, Connecticut. Consequently, Intellivision has no ability to escape

Connecticut's three-year statute of limitations for fraud claims, which has long since

expired. CONN. GEN. STAT. ANN. § 52-577 (West 2007).

### b.    The Fraudulent Inducement Claim Is Untimely in Any Event.

In New York, a fraudulent inducement claim like the one asserted by

Intellivision must be commenced within six years of the date on which the claim accrued.

C.P.L.R. § 213(6),(8). A "cause of action for fraud in the inducement of a contract (and

therefore the commencement of the running of the Statute of Limitations) accrues at the

time of the execution of the contract." *In re Ply\*Gem of Laurel, Inc.*, 456 N.Y.S.2d 382,

383 (1st Dep't 1982). The Complaint specifically alleges that Microsoft made a

misrepresentation about its plans for interactive television on January 15, 2001, and that

Intellivision relied on that misrepresentation in deciding to execute the Agreement the

next day, *i.e.*, on January 16, 2001. (Complaint ¶¶ 23, 26-27.) The Agreement was

signed by Intellivision's three principals twice, once individually and once on behalf of

the joint venture. (Landy Decl. Ex. 1 at 8.) Each of those six signatures is dated

-16-

January 11, 2001. (*Id.*) Thus, either Microsoft's alleged misrepresentation was made on January 10, 2001—*i.e.*, the day before Intellivision signed the Agreement as alleged in Paragraph 27 of the Complaint—or that misrepresentation was not made until after four days after Intellivision signed the Agreement.

In either case, the fraudulent inducement claim must be dismissed. If the alleged misrepresentation occurred before Intellivision signed the Agreement, then the cause of action is time-barred because it was filed one day after the New York statute of limitation expired. If the alleged misrepresentations occurred after Intellivision signed the Agreement on January 11, 2001, then the fraudulent inducement claim is nonsensical because Intellivision cannot have been fraudulently induced to enter into the Agreement by a statement Microsoft made *after* Intellivision signed the Agreement.

## II.    Intellivision's Claim for "Mistake" Should Be Dismissed.

Count II of the Complaint asserts that the "Agreement was the result of both mutual and unilateral mistake." (Complaint ¶ 38.) The elements of a claim for rescission based on unilateral or mutual mistake are different. Both must be plead with particularity under FED. R. CIV. P. 9(b). Intellivision has failed to state a claim of either type.

### A.    Unilateral Mistake

Under New York law, a party may sue to rescind a contract on grounds of unilateral mistake only where it can allege some fraud committed by the other party. *See Creative Waste Mgmt.* v. *Capitol Envtl. Servs.*, 429 F. Supp. 2d 582, 607 (S.D.N.Y. 2006). As noted above, Intellivision cannot show that it reasonably relied on statements purportedly made by Microsoft about its plans for interactive television prior to execution

-17-

of the Agreement.  Therefore, because Intellivision's fraudulent inducement claim is

deficient as a matter of law, Intellivision cannot seek to rescind the Agreement based on

unilateral mistake.

### B.  Mutual Mistake

A court may reform or rescind a contract which, "by mistake, does not

reflect the agreement reached between the parties; however, the burden is on the party

seeking relief to establish cause for reformation of the instrument by clear and convincing

evidence." *Shults* v. *Geary*, 660 N.Y.S.2d 497, 499 (3d Dep't 1997) (internal citations

omitted).  It was therefore incumbent upon Intellivision to allege some respect in which a

mutual mistake prevented the requisite meeting of the minds between the parties.

Under Rule 9(b) of the Federal Rules of Civil Procedure, claims based

upon mistake must be pled with particularity.[5/]  Yet, there is no allegation in the

Complaint that Intellivision and Microsoft "shared the same erroneous belief as to a

material fact." *Allen* v. *WestPoint-Pepperell, Inc.*, 945 F.2d 40, 46 (2d Cir. 1991).  To

the contrary, Intellivision alleges that Microsoft was aware that it would utilize

Intellivision's technologies in Microsoft's UltimateTV product but failed to inform

Intellivision of the existence of that product.  There is nothing in the Complaint to

suggest that a mistake prevented the Agreement from accomplishing a goal mutually

intended by the parties.  As a result, Intellivision cannot seek to reform or rescind the

Agreement based on mutual mistake.

---

[5/]    C.P.L.R. § 3016(b) contains the same heightened pleading requirement for causes
of action based on fraud and mistake as does FED. R. CIV. P. 9(b).

**C.     No Action for Rescission Based on Mistake Is Permissible Because Intellivision Ratified the Agreement.**

As with Intellivision's fraudulent inducement claim, no action for rescission based on mistake can be asserted by Intellivision because it ratified the Agreement by accepting the $1,000,000 it was paid by Microsoft and retaining that money for six years.  (*See* Section I(E) *supra*.)

**D.     Intellivision's "Mistake" Claim Is Barred by the Statute of Limitations.**

Intellivision's "mistake" claim is untimely regardless of whether it is based unilateral or mutual mistake.  Under C.P.L.R. § 213(6), a cause of action based on mistake must be brought within six years of its accrual.  A claim of rescission based upon a unilateral mistake accompanied by fraud, or of reformation or rescission based upon mutual mistake, accrues on the date the mistake occurred.  *See First Nat'l Bank* v. *Volpe*, 629 N.Y.S.2d 906, 907 (4th Dep't 1995); *FDIC* v. *Five Star Management, Inc.*, 692 N.Y.S.2d 69, 72 (1st Dep't 1999); *Mills* v. *Everest Reinsurance Co.*, 410 F. Supp. 2d 243, 249 (S.D.N.Y. 2006).  Under either type of claim, Intellivision waited too long to bring suit.

Neither a unilateral nor mutual mistake of legal significance could have occurred after the final version of the Agreement was signed by Intellivision on January 11, 2001.  Therefore, any claim for reformation or rescission of the Agreement based on mistake is barred by C.P.L.R. § 213 because it accrued more than six years before the Complaint was filed.

### III.     Intellivision's Claim for Waste Should Be Dismissed.

Intellivision's claim for waste of the intellectual property it assigned to Microsoft is both legally deficient and untimely.

#### A.     Intellivision's Waste Claim Is Not Viable Under New York Law.

In New York, an action for waste may only be brought in one of two circumstances. First, "New York courts recognize a substantive cause of action for waste against one in control of real property who does no more than allow the property to deteriorate and decrease in value. . . . Second, New York courts recognize a cause of action for waste by a mortgagee against a mortgagor who impairs the mortgage." *Travelers Ins. Co.* v. *633 Third Associates*, 14 F.3d 114, 120 (2d Cir. 1994). In either case, the action must involve an interest in real property and the plaintiff must have some remaining interest in the property that was allegedly wasted. There is no cause of action for alleged waste of other sorts of property. *Bobal* v. *Rensselaer Polytechnic Inst.*, 916 F.2d 759, 763 (2d Cir. 1990) (holding that the New York common law action for waste is limited to real property, and declining to extend it to personal property).[6] Obviously, the property assigned to Microsoft under the Agreement had nothing to do with real property, and Intellivision did not retain any interest in the intellectual property that was assigned to Microsoft. Thus, Intellivision's waste claim cannot stand.

---

[6]     The same rules apply in Connecticut and Washington, the State whose law was chosen by the parties to govern the Agreement and any alleged breach of the Agreement. *See* CONN. GEN. STAT. ANN. § 52-563; WASH. REV. CODE ANN. § 4.24.630(1) (West 2007).

-20-

**B.     Intellivision's Waste Claim Is Barred by the
Three-Year Statute of Limitations.**

Under C.P.L.R. § 214(4), a cause of action for injury to property (which encompasses any claim for waste) must be brought within three years of when the cause of action accrues.[1/]  The Complaint does not allege any specific act or omission by Microsoft with regard to the allegedly wasted property that took place in the three years before the Complaint was filed.  Therefore, Intellivision's claim for waste—even if it were legally cognizable—is untimely under New York law.

---

[1/]     The statute of limitations for waste claims is also three years in both Connecticut and Washington.  *See* CONN. GEN. STAT. ANN. § 52-577 (West 2007); WASH. REV. CODE ANN. § 4.16.080(1) (West 2007).

-21-

## CONCLUSION

For the foregoing reasons, this action should be dismissed in its entirety

with prejudice.

Dated:   New York, New York
         June 15, 2007

Respectfully submitted,

SULLIVAN & CROMWELL LLP
Steven L. Holley (SH2485)
Robert S. Landy (RL9873)
125 Broad Street
New York, New York  10004
(212) 558-4000

*Attorneys for Microsoft Corporation*

-22-