UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| INTELLIVISION, a Joint Venture, | ) | |
| | ) | ECF CASE |
| | ) | |
| Plaintiff, | ) | **AMENDED** |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | CIVIL ACTION NO. |
| MICROSOFT CORPORATION, | ) | 07-CV-4079(JGK) |
| | ) | |
| | ) | |
| Defendant. | ) | |

_____ )

As and for its Amended Complaint herein, plaintiff, Intellivision, by its undersigned

counsel, hereby alleges as follows:

**<u>THE PARTIES</u>**

1.  Plaintiff, Intellivision, is an unincorporated joint venture formed in New York and

consisting of three individuals, or principals, Bruce Adams, Paul Hoffman and John Daniels. At

all relevant times herein, Intellivision maintained offices in New York City and Connecticut.

Specifically, from its inception in 1999, Intellivision has maintained offices at: (1) 50 Broadway,

31st Floor, New York, New York, 10280 (from 1999 through 2005); (2) 345 South End Avenue,

4M, New York, New York, 10280 (from 1999 through September 2001); (3) 375 South End

Avenue, 34P, New York, New York, 10280 (from September 2001 to present); and (4) 156

Roosevelt Drive, Unit A, Seymour Connecticut, 06483 (from 1999 through February 2001).

2.  At all relevant times herein, Bruce Adams has been a resident of the state of New

Jersey, Paul Hoffman has been a resident of the state of New York and John Daniels has been a

resident of the state of Connecticut.

3.  On information and belief, defendant Microsoft Corporation ("Microsoft") is a corporation organized and existing under the laws of the state of Washington and having a principal place of business at One Microsoft Way, Redmond, Washington 98052.

## JURISDICTION AND VENUE

4.  The Court has jurisdiction over this matter pursuant to Title 28 U.S.C. §1332.  The parties are of diverse citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and 1391(c) as the acts alleged herein have substantially occurred within this District and the claims asserted substantially arise in this District. Additionally, on information and belief, Defendant has offices in the state of New York, is qualified and licensed to do business in the state of New York, does business in the State of New York, contracts to supply goods and services within the state and city of New York, regularly does and solicits business in the state and city of New York, engages in persistent sales of goods and services and solicitation therefor, and derives substantial revenue from goods used or consumed or services rendered in the state and city of New York, and owns and possesses real property situated within the state of New York.

## BACKGROUND FACTS

### A.  Intellivision and its Pioneering Technology

6.  Plaintiff Intellivision is and was a joint venture formed by the aforementioned individuals, Daniels, Adams and Hoffman.  Among other things, Intellivision was formed for the purpose of creating, developing, patenting, commercializing and/or licensing interactive

television and related technologies and developments including but not limited to the inventions and developments disclosed in nearly two-dozen pending U.S. patent applications.

7.  In addition to developing technology, Intellivision was engaged in the commercial exploitation of certain "core inventions" relating to pioneering advancements in interactive television and television set-top-box technology.  These "core inventions" include:

(1)  Providing television viewers the ability to manipulate live television with VCR-like controls such as "pause," "rewind" and "fast forward."  Specifically, this core technology relates to enabling the manipulation of multiple live television broadcasts that are being simultaneously recorded;

(2)  Enhanced, interactive on-screen programming guides.  This core technology relates to intuitive on-screen programming guides that are searchable (such as by genre, actor/actress, director, date, etc.) and allow the simplified control of a large number of viewing options and the direct control of an associated set-top-box;

(3)  Use of embedded "links" contained in a video broadcast that, when "selected" cause an operation to be performed, such as the setting of a record date and time, the display of additional information, etc.;

(4)  Simplified "one-click" recording of a wide variety of viewing options;

(5)  The creation of a "viewer profile" that causes the set top box to automatically record programs that are deemed to be consistent with a particular viewer's interests;

(6)  Remote programming of the set top box over a network (such as the internet);

(7)  Interactive TV applications (such as viewer participation television programs);

-3-

(8)  Video-on-demand applications that can be implemented with minimal investment in head-end capital equipment;

(9)  Exploiting largely unused broadcast media and unused portions of broadcast bandwidth for use in transmitting "bits" of video content to set-top-boxes to enable enhanced programming, real-time video-on-demand and near video-on-demand programming;

(10)  Supplementing video programming produced and broadcast by others with additional content;

(11)  Networking applications including the concept of a "home gateway"; and

(12)  Enhancements to the aforesaid technologies including remote programming capabilities, networking capabilities and online capabilities enabling the switching between live television and broadband content.

8.  The technology developed by Intellivision and its founder is of enormous commercial value and much of said technology is already being exploited by others to the detriment of the plaintiff herein.

9.  The above-mentioned "core inventions" were developed by Intellivision's founder at a tremendous personal and professional cost and sacrifice and constitute more than seven years of exhaustive work conducted under severely adverse conditions.  Much of this work was conducted after hours in a makeshift laboratory located, at various times in a barn, a garage and attic located in the personal residence of Intellivision's founder.

10.  Much of the technology developed by Intellivision has already been incorporated into many commercially successful consumer electronics products.  These products include, among

others, the Digital Video Recorder (DVR) (such as Tivo®, Replay TV® and UltimateTV®) and

Microsoft's Windows® Media Center™ and Windows Vista™ operating systems.

11.  The above-mentioned "core inventions" mentioned above are disclosed in numerous

patent applications prepared, filed and prosecuted over the past fourteen years by members of

Intellivision and its founder.  These patent applications include, but are not limited to,

    (1)    U.S. Patent Application Serial No. 11/250,807;
    (2)    U.S. Patent Application Serial No. 11/097,807;
    (3)    U.S. Patent Application Serial No. 10/970,294;
    (4)    U.S. Patent Application Serial No. 10/970,440;
    (5)    U.S. Patent Application Serial No. 10/970,439;
    (6)    U.S. Patent Application Serial No. 10/970,512;
    (7)    U.S. Patent Application Serial No. 10/970,492;
    (8)    U.S. Patent Application Serial No. 10/094,167;
    (9)    U.S. Patent Application Serial No. 09/993,780;
    (10)    U.S. Patent Application Serial No. 09/992,190;
    (11)    U.S. Patent Application Serial No. 09/952,582;
    (12)    U.S. Patent Application Serial No. 09/993,814;
    (13)    U.S. Patent Application Serial No. 09/447,629;
    (14)    U.S. Patent Application Serial No. 08/900,417;
    (15)    U.S. Patent Application Serial No. 08/848,895;
    (16)    U.S. Patent Application Serial No. 08/641,517;
    (17)    U.S. Patent Application Serial No. 08/306,642;
    (18)    U.S. Patent Application Serial No. 08/038,240.

12.  In addition, some of Intellivision's "core inventions" are covered in U.S. Provisional

Patent Application Serial Nos. 60/114,668 and 60/014,959; Japan Patent Application No. 10-

2259225; Australian Patent Application No. l48995/97; and International (PCT) Patent

Application No. PCT/US97/18372.

13.  Further, U.S. Patent No. 6,973,669 has been issued by the U.S. Patent and

Trademark Office based on one of Intellivision's patent applications.

**B.  Microsoft and the Parties' Agreement**

14.  On information and belief, Defendant, Microsoft, is one of the world's largest companies and the world's largest producer of software for personal computers.  Microsoft's products include the Windows® operating system and the Microsoft Office® suite of software products.  On information and belief, more than 95% of all personal computers in the world run on Microsoft's Windows® operating system.

15.  On information and belief, it has become well known that Microsoft has long engaged in predatory business tactics and anticompetitive conspiracies and has been repeatedly held liable for these activities in numerous jurisdictions throughout this country and Europe.  On information and belief, these activities have resulted in billions of dollars in damage to many of Microsoft's competitors, such as Netscape, Sun Microsystems, Real Networks, Symantec, and others, and to members of the public at large.  On information and belief, Microsoft has paid billions of dollars in damages in judgments and settlements based on its illicit activities.

16.  In 1999, Intellivision representatives attended an interactive television trade show in New York City organized by Kagan Research.  While there, Intellivision discussed its core technology with John Colombo, a business development manager employed by Microsoft at its Web TV campus in Mountain View, California.

17.  Shortly thereafter, Intellivision contacted Mr. Columbo to follow up on their discussion and to further discuss Intellivision's core technology.

18.  The discussion with Mr. Colombo led Microsoft to invite representatives of Intellivision to visit Microsoft's Web TV campus in Mountain View, California in 2000.  While there, Microsoft executives provided Intellivision with an overview of Microsoft's Web TV

structure and its activities and developments in the area of television.   In response to questioning from Intellivision representatives, Microsoft executives, including Anthony Faustini, explicitly stated Microsoft had not developed and was not engaged in the development of a television set-top box product or associated software that incorporates any of the core inventions developed by Intellivision and covered by Intellivision's patent applications.

19.   During and after the aforementioned visit to Microsoft, Mr. Faustini explained to Intellivision representatives that Microsoft had an interest in purchasing Intellivision's intellectual property portfolio for "defensive" purposes.  As explained to Intellivision, Microsoft had not theretofore dedicated substantial efforts to the protection of its intellectual property and had been increasingly facing claims of infringement by various third parties, including consumer electronics manufacturers.   It was explained to Intellivision that Microsoft's interest in Intellivision's intellectual property portfolio was based on Microsoft's desire to build a portfolio of valuable patents to utilize for defensive purposes when challenged by others asserting claims of patent infringement.

20.   Thereafter, Microsoft attorney Ronald Zink communicated with Intellivision representatives and made a verbal offer to purchase Intellivision's intellectual property

21.   After discussing Microsoft's offer, Intellivision representatives contacted Mr. Zink to reject the offer and make a counteroffer seeking additional money for its intellectual property in the form of an up front cash payment and a per unit royalty on products that are within the scope of Intellivision's patent applications.

22.   In response to Intellivision's counteroffer, Microsoft attorney Zink advised Intellivision representatives in discussions that took place in the fall of 2000 that a royalty

payment would be unworkable. Mr. Zink pointed out that none of Intellivision's patent applications had yet issued as patents, thus making it difficult (but not impossible) to determine the amount of such payment, the patent claims which would trigger the payment, and what (if any) products would require payment of a royalty. Mr. Zink advised Intellivision that Microsoft needed to be able to determine, at the outset, the cost of the acquisition of Intellivision's technology. According to Mr. Zink, Microsoft could not determine at that point the cost of a per-unit royalty payment over the lifetime of a certain product based on the fact that none of Intellivision's patent applications had yet matured into issued patents and, because, no such products had been developed or were under current development. Mr. Zink was advised by Intellivision that this could be done and that Intellivision would insist on payment of a royalty in the event Microsoft planned on introducing any products falling within the scope of its patent applications.

23. In response, Mr. Zink reaffirmed the representations earlier made by Microsoft in 2000 by assuring Intellivision representatives in the fall of 2000, and again on January 15, 2001, that Microsoft had not developed, was not developing at the time, and did not presently intend to develop or introduce a product incorporating Intellivision's core inventions. Mr. Zink specifically assured Intellivision representatives that Microsoft had no intention of offering a product with "Tivo-like" functionality. These verbal representations were made by Mr. Zink during discussions that occurred in the fall of 2000 and were confirmed on January 15, 2001.

24. In reliance on the representations and assurances made by Microsoft in 2000 and Mr. Zink's representations and reassurances made to Intellivision on January 15, 2001, Intellivision was reasonably led to believe and reasonably did believe that Microsoft had not already

-8-

developed, was not in the process of developing, and had no present intention of developing or introducing a product which incorporated any of Intellivision's core inventions.

25.  Intellivision's principals did not simply accept Microsoft at its word and conducted independent online searches in 2000 and January 2001 for the purpose of verifying Microsoft's representations.  These searches did not uncover any information that conflicted with Microsoft's representations.

26.  In reliance on Microsoft's representations, including those made in 2000 and confirmed by Mr. Zink prior to and on January 15, 2001, before Intellivision executed and delivered a signed copy of the parties' Agreement to Microsoft, Intellivision decided to forego its demand for a per-unit royalty based on sales of products that encompassed Intellivision's core inventions.  This decision was based upon the above-described representations made by Microsoft before and in January 2001 that Microsoft had not already developed, was not developing, and had no present intention of developing a product which incorporated Intellivision's core inventions.

## C.  Execution of the Parties' Agreement

27.  On or about January 16, 2001, Intellivision entered in to a confidential written Agreement with Microsoft by which Intellivision agreed to assign to Microsoft the novel technology it developed along with its patent applications.  A copy of the parties' Agreement is attached hereto as **Exhibit 1**

28.  Specifically, in or about December 2000, Microsoft forwarded to Intellivision a draft copy of the body of an agreement and assignment forms for assigning Intellivision's patent applications to Microsoft.  The body of the Agreement refers to Attachments A through C which

form a part of the Agreement but which were not completed at that time.  The parties discussed proposed revisions to the body of the Agreement and all necessary revisions were made. Intellivision's principals executed the assignments in December, 2000 and executed the body of the Agreement on January 11, 2001.  However, at that time, the parties had not reached a final agreement as to the terms of Attachment C.

29.  The parties expressly understood and agreed that their written Agreement was not in final form on January 11, 2001 and would not be in final form until they reached a written and signed agreement as the terms of Attachment C.

30.  The body of the parties' Agreement defines, at paragraph 1, the term "Agreement" to mean "this document and attachments thereto."  Thus, by its own terms the Agreement explicitly includes the body of the Agreement and Attachments A through C.

31.  In January 2001, the parties reached an agreement as to the language Attachment C, which defined the language of a specific patent claim that would first need to be allowed by the Patent Office in order to trigger Microsoft's obligation to pay Intellivision the sum of $850,000, or approximately 45% of the full contract price for acquiring Intellivision's technology.  The terms of Attachment C were agreed to and reduced to a writing that was executed by Intellivision's principals and on January 16, 2001.

32.  Upon execution of Attachment C on January 16, 2001, Intellivision delivered signed copies of the body of the Agreement, the assignments (Attachment B) and Attachment C to Microsoft for execution by an officer.  An officer of Microsoft executed the parties' Agreement on January 19, 2001.

33.   Thus, different portions of the parties' Agreement were prepared and signed on different dates, as follows: (1) The "body" of the Agreement was signed by Intellivision's principals on January 11, 2001 and the original thereof was retained in the possession of Intellivision's principals until formal execution of the Agreement on January 16, 2001.  The parties expressly understood and agreed that the Agreement was neither complete nor enforceable until an agreement was reached as to the terms of Attachment C (mentioned at Paragraph 3(B) of the Agreement); (2) The Attachments to the Agreement were signed on different dates.  The patent application assignments (Attachment B) were signed by John Daniels on December 13, 2000, by Paul Hoffman on December 26, 2000, and by Bruce Adams on December 28, 2000; and (3) Attachment C to the Agreement was neither completed, agreed-upon by the parties, nor executed by Intellivision's principals until January 16, 2001.

34.   After execution of Attachment C by Intellivision's principals on January 16, 2001, the complete Agreement, as executed by Intellivision's members, was delivered by Intellivision to Microsoft for execution by an officer.  An officer of Microsoft executed the parties' Agreement on January 19, 2001.

35.   As specified in the first paragraph of the parties' Agreement, the Agreement was not effective until the "date of the last signature below' – which was January 19, 2001.

36.   On information and belief, parties' Agreement was neither complete nor enforceable prior to January 16, 2001.  Paragraph 1 of the Agreement provides that all Attachments are incorporated and part of the Agreement.  The first paragraph of the Agreement explicitly provides that it is not effective until the "date of the last signature below."  Attachment C, which specifies the requirements that must be met before Intellivision would be entitled to a payment of

$850,000, was neither finalized nor executed until January 16, 2001 and the Agreement was not executed by Microsoft until January 19, 2001.

37. Accordingly, the parties' Agreement was not a final Agreement until Intellivision executed Attachment C on January 16, 2001, and was not "effective" until January 19, 2001, when it was executed by Microsoft.

38. On January 15, 2001, one day before formal execution by Intellivision of Attachment C, Mr. Zink was asked to and did reaffirm his previous representations that Microsoft had not already developed, was not developing, and had no present intention of developing a product embodying Intellivision's core technologies. This was an important consideration to Intellivision and was the main factor that persuaded Intellivision to enter an Agreement with Microsoft that did not require royalty payments based on the sale of products incorporating Intellivision's technology. If Intellivision believed that Microsoft had developed such a product and was planning to introduce that product, it would not have executed the parties' Agreement.

39. Despite Microsoft's repeated representations to the contrary, and on information and belief, approximately one week after the parties' Agreement was fully executed, Microsoft launched a national advertising campaign for its "Ultimate TV" product. Ultimate TV was a television set-top box that incorporates the core technologies embodied in Intellivision's patent applications and described above. Also, on information and belief, at the same time Microsoft made repeated representations to the contrary, Microsoft was also developing and/or had already developed a software-based version of its Ultimate TV product designed for incorporation into Microsoft's Windows® Operating System.

40. Stated otherwise, on information and belief, approximately one week after Intellivision assigned to Microsoft all of its intellectual property rights covering, *inter alia,* the concept of a television set-top box that allows viewers to manipulate the viewing of live television and perform video editing, Microsoft introduced a product which allows viewers to manipulate the viewing of live television in precisely the manner described by Intellivision's patent applications; and was planning to introduce a version of its Windows® Operating System incorporating the same technology.

41. Thus, Microsoft misrepresented critical facts that were material to the parties' Agreement, as to its development activities and intentions, and thereby fraudulently induced Intellivision into signing the parties' Agreement under terms that were materially worse than terms that Intellivision would have agreed to had Microsoft truthfully represented the facts.

**D. Microsoft's Post-Agreement Acts of Misrepresentation and Concealment**

42. By the time principals of Intellivision discovered Microsoft's misrepresentations and confronted Microsoft in 2002, Microsoft had, on information and belief, already discontinued sales of its Ultimate TV® product.

43. Although Intellivision principals repeatedly complained to Microsoft about its misrepresentations concerning Ultimate TV® and insisted on rescission and/or reformation of the parties' Agreement to incorporate a royalty in 2002 and 2003, Microsoft assured Intellivision that it would be better off financially if it awaited allowance by the Patent Office of the patent claim set forth in Attachment C of the Agreement and collected the outstanding $850,000 payment by Microsoft required by the parties' Agreement upon allowance of such claim.

44. More specifically, although Microsoft made the first payment required by Paragraph 3(A) of the parties' Agreement in February 2001, Paragraph 3(B) set forth a second payment requirement of $850,000 (approximately 45% of the full contract price) that would be triggered upon allowance by the Patent Office of a claim having the language set forth in Attachment C.

45. For the purpose of convincing Intellivision to refrain from suing for rescission and/or damages based on Microsoft's fraudulent misrepresentations, Microsoft and its attorneys lulled Intellivision into inaction by pointing out that its Ultimate TV® set-top box had been discontinued and was a tremendous financial loss to Microsoft.

46. However, at the same time Microsoft and its attorneys made the foregoing representations to Intellivision, it also concealed from Intellivision the fact that it had already developed and/or was in the process of developing a software version of its Ultimate TV® product that would be incorporated into its Windows® Operating System. Microsoft knew that such a development was a material consideration to Intellivision and nonetheless concealed it from Intellivision.

47. Additionally, Microsoft's attorneys misrepresented facts concerning prosecution of the patent application containing the claim language set forth in Attachment C of the parties' Agreement. Microsoft and its attorneys repeatedly assured Intellivision that the Examiner in charge of the patent application indicated that he intended to allow the claim and simply required additional information in order to do so.

48. For instance, on one occasion, Microsoft advised Intellivision that the Examiner merely required a supplemental affidavit stating that the acts constituting Intellivision's reduction to practice of the claimed invention occurred in the United States. Since the Patent

-14-

Examiner was precluded from speaking directly to Intellivision concerning the patent applications it had assigned to Microsoft, Intellivision could not independently verify Microsoft's representations.

49.  In an effort to mitigate its damages, Intellivision refrained from earlier suing Microsoft for rescission and/or damages.  The decision to refrain from earlier filing this lawsuit was based exclusively on (a) Microsoft's reassurances that the Examiner indicated that the claim under Attachment C would be allowed, and (b) Microsoft's concealment of its software version of Intellivision's core inventions for incorporation into the Windows® Operating System.

50.  Microsoft's assurances were all false and were made for the purpose of convincing Intellivision not to sue Microsoft.  On information and belief, the Examiner did not indicate that he would allow the claim of Attachment C.

51.  Intellivision was misled by Microsoft's misrepresentations concerning allowance of the claim of Attachment C and by Microsoft's fraudulent concealment of its development efforts.  Thus, Intellivision did not earlier file a lawsuit against Microsoft seeking rescission and/or damages.

52.  As noted above, Paragraph 3(B) of the parties' Agreement required Microsoft to pay $850,000 to Intellivision upon allowance of a patent claim having the language set forth in Attachment C.  Thus, Microsoft and its attorneys, who were aware of and in possession of the parties' Agreement, owed Intellivision a fiduciary duty to diligently prosecute the assigned patent applications to obtain allowance of such claim and truthfully report the results of their prosecution efforts to Intellivision.  Furthermore, Paragraph 2.3 of the parties' Agreement

explicitly requires Microsoft to provide Intellivision with copies of all documents sent to and received from the Patent Office.

53. Rather than complying with their fiduciary duty and contractual duty to provide copies of Patent Office documents, Microsoft and its attorneys mishandled the prosecution of the assigned patent applications, misrepresented the nature of their communications with the Patent Office, and concealed material information concerning the prosecution of the assigned patent applications for the purpose of inducing Intellivision into inaction.

54. For example, despite repeatedly advising Intellivision that the aforesaid claim of Attachment C was being allowed and that such allowance was delayed because of the need for additional information, Intellivision learned in October 2006 that in July 2006 Microsoft lost a Patent Office appeal of the Examiner's rejection of a claim having the language set forth in Attachment C. At approximately the same time, Intellivision learned of the impending release of Microsoft's Windows Vista™ Operating System, which incorporates some of Intellivision's core inventions. Thus, Intellivision quickly obtained the undersigned counsel, who diligently filed suit three months later, on January 12, 2007.

55. Microsoft misrepresented critical facts that were material to the parties' Agreement, as to its development activities, and thereby fraudulently induced Intellivision into signing the parties' Agreement under terms that were materially worse than terms that Intellivision would have agreed to had Microsoft truthfully represented the facts. Microsoft then misrepresented the nature of the prosecution of the assigned patent applications and concealed the nature of its ongoing development efforts for the purpose of inducing Intellivision to delay filing this lawsuit.

## COUNT I
## <u>FRAUD IN THE INDUCEMENT</u>

56.  Intellivision repeats and realleges all of the statements set forth in Paragraphs 1-55 above as if more fully set forth herein.

57.  The specific acts of Microsoft alleged above, including Microsoft's misrepresentations of material facts in 2000 and up to and including January 15, 2001, that Microsoft had not developed, was not developing, and had no present intention of developing a product which incorporated Intellivision's core inventions, were fraudulent misrepresentations and/or acts of fraudulent concealment intended to induce Intellivision into signing the parties' Agreement and thereby assigning to Microsoft all of Intellivision's intellectual property under terms that were significantly less advantageous to Intellivision than they would have been had Microsoft not misrepresented material facts to Intellivision and/or concealed material facts from Intellivision.

58.  Intellivision reasonably relied upon the aforementioned misrepresentations made by Microsoft in 2000 and up to and including January 15, 2001, and was thereby induced to execute the parties' Agreement assigning all rights in its intellectual property to Microsoft under terms that were significantly less advantageous to Intellivision than the would have been had Microsoft not misrepresented the facts to Intellivision.

59.  By virtue of the aforementioned misrepresentations made by Microsoft in 2000 and up to and including January 15, 2001, Intellivision was fraudulently-induced to execute the parties' Agreement with a general merger clause, a disclaimer of liability, a general release, and a forum-selection clause, which Intellivision agreed to solely because it was fraudulently induced by Microsoft's misrepresentations to believe that once the parties' Agreement was

executed it would have no claims against Microsoft.  Since the parties' Agreement was a

purchase agreement whereby Microsoft was acquiring Intellivision's intellectual property rights

and creating no ongoing duties on the part of Microsoft, Intellivision believed that it had no

potential claims against Microsoft and was thereby fraudulently induced to execute the parties'

Agreement with the above-mentioned general merger clause, release, and disclaimer of liability,

based on Microsoft's misrepresentations.

60.  On information and belief, the aforementioned acts of misrepresentation and

concealment by Microsoft were done with knowledge of their falsity and for the purpose of

causing damage to Intellivision.

61.  Intellivision has been damaged by Microsoft's acts of misrepresentation and

concealment by a loss of revenue in the form of royalties, lost opportunities with third parties,

lost opportunity in expediting the examination of its patent applications and enforcing its patent

rights against others, and lost opportunity in exploiting its own developments.

62.  For instance, in reliance on the aforementioned misrepresentations made by

Microsoft, Intellivision executed the parties' Agreement assigning all of its intellectual property

rights to Microsoft and terminated its discussions with various third parties, including General

Instrument, Replay TV, Tivo, and Gemstar, all to Intellivision's financial detriment.

## COUNT II
## NEGLIGENT MISREPRESENTATION

63.  Intellivision repeats and realleges all of the statements set forth in Paragraphs 1-62

above as if more fully set forth herein.

64.  On information and belief, the aforementioned acts of misrepresentation and

concealment by Microsoft, if not done with knowledge of their falsity and for the purpose of

causing damage to Intellivision, were acts of negligent misrepresentation, which caused the aforesaid damage to Intellivision

## COUNT III
## <u>UNILATERAL MISTAKE</u>

65.  Intellivision repeats and realleges all of the statements set forth in Paragraphs 1-64 above as if more fully set forth herein.

66.  Before Intellivision executed the parties' Agreement, Microsoft represented to Intellivision that it had not already developed, was not in the process of developing, and had no present intention of developing or introducing a product which incorporated any of Intellivision's core inventions.  On information and belief, said representations were fraudulent.

67.  Intellivision executed the parties' Agreement under the mistaken belief that Microsoft had not already developed, was not in the process of developing, and had no present intention of developing or introducing a product which incorporated any of Intellivision's core inventions.  In reliance on these material facts, which were misrepresentations made to Intellivision by Microsoft in 2000 and up to and including January 15, 2001, Intellivision executed the parties' Agreement assigning all rights in its intellectual property to Microsoft.  The terms of such Agreement were significantly less advantageous to Intellivision than would have been had Microsoft not misrepresented the material facts.

68.  Accordingly, the parties' Agreement does not reflect a meeting of the minds and was the result of a unilateral mistake on the part of Intellivision resulting from the aforementioned acts of fraudulent misrepresentation and concealment on the part of Microsoft.

## COUNT III
## MUTUAL MISTAKE

69.  Intellivision repeats and realleges all of the statements set forth in Paragraphs 1-68 above as if more fully set forth herein.

70.  In the event that Microsoft's aforesaid acts of misrepresentation and concealment were done negligently and/or inadvertently by employees of Microsoft who were unaware of Microsoft's technological developments which incorporated Intellivision's core inventions, the parties' Agreement does not reflect a meeting of the minds, because both parties intended for Microsoft to pay a per-unit royalty on certain products within the scope of Intellivision's patent applications and the Agreement was the result of mutual mistake.

## COUNT IV
## BREACH OF FIDUCIARY DUTY

71.  Intellivision repeats and realleges all of the statements set forth in Paragraphs 1-70 above as if more fully set forth herein.

72.  A fiduciary relation existed between Microsoft and Intellivision because, *inter alia*, Microsoft was under a duty to diligently prosecute the patent applications assigned by Intellivision to Microsoft to obtain allowance of a claim having the language contained in Attachment C of the parties' Agreement and was under a further duty to provide Intellivision with accurate and correct information concerning the prosecution of the assigned applications.

73.  On information and belief, Microsoft and its attorneys have breached their fiduciary duty by:

> (1) Failing to diligently prosecute the assigned patent applications to obtain allowance of a claim having the language contained in Attachment C;

(2) The aforesaid acts of misrepresentation and concealment occurring throughout 2003 – 2006, after execution of the parties' agreements, including,

(a) misrepresentations made by Microsoft attorneys to Intellivision from 2002 through 2005 that a claim having the language contained in Attachment C would be allowed, and

(b) concealment of Patent Office communications revealing that the Examiner had no intention of allowing a claim having the language of Attachment C, including concealment of Microsoft's July 2006 loss of a Patent Office appeal as to such claim;

(3) Microsoft's concealment of its development of a software version of Intellivision's core technologies for incorporation into the Windows® Operating System; and

(4) Microsoft's preparation, filing and diligent prosecution of patent applications based on Intellivision technologies and falsely naming Microsoft employees as sole inventors, in lieu of diligent prosecution of the assigned Intellivision patent applications, for the purpose of destroying the value of the assigned Intellivision patent applications in the event such applications must be reassigned to Intellivision.

74. Intellivision has been damaged by the breach by Microsoft and its attorneys of their fiduciary duty owed to Intellivision in that Intellivision was misled into delaying the filing of a lawsuit seeking rescission and/or damages, and because the value of the assigned Intellivision patent applications has been greatly (and possibly irreparably) diminished.

75. On information and belief, Microsoft has also breached its fiduciary duty by: (1) intentionally and/or negligently prosecuting the assigned Intellivision patent applications in such a way as to avoid pursuing claims directed to valuable subject matter covering Microsoft's own products; (2) allowing one or more of the patent applications assigned to it by Intellivision to become irretrievably abandoned; (3)  pursuing claims covering Intellivision inventions in patent applications (including U.S. Patent Appln. Ser. Nos. 10/131,661, 11/012,471 and 11/069,627) that falsely name only Microsoft employees, rather than Intellivision principals,  as inventors,

while, at the same time, allowing the assigned Intellivision applications to languish such that the value of the assigned Intellivision patent applications has become been greatly and irreparably diminished while the value of the applications naming only Microsoft employees has been artificially inflated; so that if and when the assigned Intellivision patent applications are reassigned from Microsoft to Intellivision, their value will have been severely diminished.

**WHEREFORE**, Intellivision prays for an Order as follows:

1. Finding that Intellivision was fraudulently induced by Microsoft to execute the parties' confidential Agreement;

2. Finding that Intellivision was defrauded by Microsoft and was damaged by such fraud;

3. Rescinding the Agreement between Intellivision and Microsoft and eliminating or decreasing the amount of money that Intellivision must repay to Microsoft upon such rescission by the amount of damage sustained by Intellivision;

4. Finding that Intellivision has been damaged in excess of the amount of the consideration thus far paid by Microsoft;

5. Ordering Microsoft to assign all Intellivision patents and patent applications back to Intellivision;

6. Ordering that Microsoft has no rights in any of the developments of Intellivision;

7. Awarding Intellivision its damages, including an Order for all compensatory damages, consequential, incidental and punitive damages, together with interest, reasonable attorney's fees, costs and disbursements of this action as permitted by law; and

8.  Such other and further relief as to this Court seems just and proper.

Respectfully submitted,

Dated: July 19, 2006

                                        /s/
                                   By:  Bruce D. Katz, Esq.
                                        Bruce D. Katz & Associates
                                        225 Broadway – 37th Floor.
                                        New York, NY  10007
                                        (212)233-3434

                                        *Attorney for Plaintiff*
                                        *Intellivision, a Joint Venture*

# EXHIBIT 1

ORIGINAL

## AGREEMENT

This Agreement, effective on the date of the last signature below (the "Effective Date"), is between **Microsoft Corporation**, a corporation of the state of Washington having its principal place of business at One Microsoft Way, Redmond, Washington, 98052 (hereinafter, "**MICROSOFT**"), and **John J. Daniels**, an individual having a residence at 325 Roosevelt Drive, Seymour, Connecticut 06483, **Bruce L. Adams**, an individual having a residence at 18 Holmhill Lane, Roseland, NJ 07068, and **Paul R. Hoffman**, an individual having a residence at 345 South End Avenue, Apartment 4M, NY, NY 10280, the three (3) foregoing individuals doing business as **Intellivision** in a joint venture having its principal place of business at 156 Roosevelt Drive, Unit A, Seymour, Connecticut, 06483, (the parties John J. Daniels, Bruce L. Adams, Paul R. Hoffman, and their joint venture d.b.a. Intellivision, hereinafter, both individually and collectively, "**ITV**").

## RECITALS

WHEREAS ITV has developed novel technology enabling the manipulation of live television including real-time pausing, reviewing and cueing of live television, and for the caching of video streams for enabling video-on-demand programming, and ITV has further developed various enhancements to said technology including remote programming capabilities, networking capabilities and online capabilities enabling seamless switching between live television and online content, said technology being disclosed in numerous Patent Applications filed by ITV;

WHEREAS ITV represents that it is the owner of the Patent Applications; and

WHEREAS MICROSOFT is interested in acquiring an ownership interest in the aforesaid technology and the Patent Applications, in accordance with the terms and conditions set forth below:

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by the parties, the parties hereto agree as follows:

1. **Definitions.**

"Patent Applications" mean United States Patent and Trademark Office (USPTO) patent applications and PCT Application(s) identified in Attachment A, and all amendments thereto, and all reissue applications, all divisional applications, all continuation applications, all continuation-in-part applications, all corresponding foreign applications, and all inventions disclosed and discussed therein.

"Agreement" means this document and attachments thereto.

"Affiliates" means MICROSOFT and any other entity directly or indirectly Controlling, Controlled by, or under common Control of MICROSOFT.  "Control"

means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a legally recognizable entity, whether through the ownership of voting shares, by contract, or otherwise. Where such entity is a partnership, limited liability company, corporation, or similar entity and has partners, members, or shareholders with equal ownership interests or equal control interests, by contract or otherwise, then each such partner, member, or shareholder will be deemed to possess, directly or indirectly, the power to direct or cause the direction of the management and policies of that entity.

## 2. Ownership and Assignment.

2.1     Inventions: ITV hereby assigns to MICROSOFT all of its right, title and interest in and to the inventions described and disclosed in the Patent Applications, and in and to the Patent Applications and to any Letters Patents, both foreign and domestic, which may issue thereon, and all reissue, divisional and continuation applications. ITV agrees to execute the assignment documents attached as Attachment B for recordation in the United States Patent and Trademark Office.   ITV shall execute whatever further documents, give to MICROSOFT such other evidence, and take whatever further actions, to the satisfaction of MICROSOFT's counsel, as MICROSOFT may reasonably request to effect the transfer of rights in accordance with this Section 2.1 which is sufficient to establish the assignment by ITV to MICROSOFT of ITV's right, title and interest in the Patent Applications. MICROSOFT agrees that the assignment documents attached as Attachment B shall not be effective and shall not be recorded at the United States Patent Office until MICROSOFT pays to ITV the amount specified in Section 3(A) hereinbelow.

2.2     Other Inventions:  ITV hereby assigns to MICROSOFT all of its right, title and interest in inventions, technology, trade secrets, know-how, and ideas relating to the inventions identified in Section 2.1 above, not yet disclosed in the Patent Applications.  ITV agrees to execute promptly specific documentation and do anything else properly requested in writing by MICROSOFT to secure and assign such rights to MICROSOFT, including the performance of all acts and the signing of all documents, at MICROSOFT's expense, to perfect copyrights, patents and trademarks in name of MICROSOFT for any such inventions, technology, trade secrets, know-how, and ideas relating to the inventions identified in Section 2.1.  The obligations in this Section 2.2 shall be binding upon ITV's assigns, successors, executors, heirs, administrators and other legal representatives.  ITV expressly acknowledges and agrees that any failure by it/him/her to comply with the provisions of this Section 2.2 will constitute a material breach of this Agreement, will irreparably harm MICROSOFT, and that monetary damages by law would be an inadequate remedy for such a breach.  In addition to any other remedies of which MICROSOFT would be otherwise entitled, MICROSOFT shall have the right to obtain injunctive relief, without bond, for violations of the terms of this Section 2.2.

2.3     Duty to Assist: Following transfer of the Patent Applications pursuant to this Section 2, ITV covenants to provide its best efforts assisting and cooperating with

MICROSOFT, to the extent permitted by law, in any actions involving the Patent Applications, including without limitation prosecution, litigation, reissuance, and reexamination, and MICROSOFT covenants to provide to ITV in a timely manner copies of all papers sent to or by the Patent Office in the Patent Applications until MICROSOFT pays to ITV the amount specified in Section 3(B) hereinbelow.

3.    **Payment**:   MICROSOFT shall pay to ITV:

A.    One Million Dollars ($1,000,000.00 US) within thirty (30) calendar days of the effective execution of this Agreement by all parties hereto; and

B.    Eight Hundred Fifty Thousand Dollars ($850,000.00 US), either within thirty (30) calendar days of the issuance of any Letters Patent to MICROSOFT or MICROSOFT's assignees based upon any of the Patent Applications from the United States Patent and Trademark Office, or within one hundred twenty (120) calendar days of the date of mailing of a Notice of Allowance in any of the Patent Applications from the United States Patent and Trademark Office in the event MICROSOFT elects not to pay the issue fee in such Patent Applications, whichever occurs first, and having an enforceable patent claim consisting of the language as set forth in Attachment C hereto.

4.    **Non-Assertion Grant**: Subject to the terms and conditions of this Agreement, ITV perpetually covenants that it will not assert any patent, copyright, or trade secret claim relating to the subject matter of the Patent Applications against MICROSOFT or its Affiliates.

5.    **Release**: Upon payment of the sum set forth in Section 3(A), ITV (together with its heirs, assigns, predecessors, successors, agents, representatives, attorneys and any and all other persons or entities who have at any time acted, or purported to act on their behalf) absolutely and forever releases and discharges MICROSOFT and Affiliates (together with their assigns, predecessors, successors, agents, officers, directors, managers, supervisors, shareholders, representatives, attorneys and any and all other persons or entities who have at any time acted, or purported to act on their behalf) from any and all claims, rights, demands, covenants, agreements, contracts, obligations, responsibilities, representations, warranties, promises, liens, accounts, debts, liabilities, damages, expenses, attorney's fees, costs and causes of action which they may have as of the Effective Date of this Agreement, relating to the general subject matter described in the Patent Applications or to any other pause technology or system, whether known or unknown, anticipated or unanticipated, and whether at law or in equity, except for and provided that there is no release or discharge in connection with the parties' respective rights and obligations as provided in this Agreement.

3

**6.      Representations, Warranties, and Covenants:**

6.1.  ITV represents and warrants that it owns all right, title and interest in the Patent Applications, free of any claim, license, right, equity, or encumbrance (including marital) whatsoever.

6.2.  ITV represents and warrants that there has been and is no past or present license agreement of any kind in effect with any third party relating to the Patent Applications.

6.3.  ITV represents and warrants that it has the power, right, and authority to grant the rights and undertake the obligations detailed in this Agreement.

6.4.  ITV represents and warrants that it has no knowledge of any fact or claim (regardless of assessment of the claim's accuracy) that might cast doubt on the validity, enforceability, or ownership of the Patent Applications.

6.5.  ITV covenants that it will not make any agreement with a third party that would prejudice the rights granted to MICROSOFT under this Agreement, except as permitted under this Agreement.

6.6 NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY LOST PROFITS OR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY OR SPECIAL DAMAGES OF ANY KIND OR NATURE ARISING FROM THIS AGREEMENT, EVEN IF EITHER PARTY HAS WARNED OR BEEN WARNED OF THE POSSIBILITY OF SUCH LOSS OR DAMAGE.

**7.      Termination:**  If either MICROSOFT or ITV breaches or defaults in the performance or observance of any of the material provisions of this Agreement, and such breach or default is not cured within sixty (60) days after the giving of written notice by the nondefaulting party specifying such breach or default, the nondefaulting party shall have the right to terminate this Agreement by written notice, effective upon the receipt of such notice by the defaulting party.

**8.      Confidentiality:**  ITV agrees to keep this Agreement confidential and will not reveal any of its terms without the express written authorization of Microsoft. ITV acknowledges that unless and until the Patent Applications mature, or otherwise are published, and Letters Patent are issued to the assignee MICROSOFT, the Patent Applications constitute MICROSOFT Confidential Information and ITV shall not disclose such information to any third party without the express written consent of MICROSOFT. MICROSOFT Confidential Information shall not include any information that (a) is now or later becomes available to the public through means not involving the breach of a duty or obligation owed to MICROSOFT by ITV; or (b) is disclosed to the

4

public by MICROSOFT or its authorized representatives; or (c) deemed not to be confidential by prior written consent of MICROSOFT.

9.     **Miscellaneous:**

9.1.     Survival: The following provisions will survive this Agreement: Section 1 (Definitions), Section 2 (Ownership and Assignment), 4 (Non-Assertion Grant), 5 (Release), 6 (Representations, Warranties, and Covenants), 8 (Confidentiality).

9.2.     Governing Law: This Agreement will be governed by and interpreted in accordance with the laws of the State of Washington, exclusive of its choice-of-law provisions. Any dispute regarding any alleged breach of this Agreement shall be resolved in the federal or state courts of the State of Washington, and ITV agrees that it will not contest the jurisdiction of such courts.

9.3.     Rights Cumulative: Each and all of the various rights, powers and remedies of the parties will be considered to be cumulative with and in addition to any other rights, powers and remedies which such parties may have at law or in equity in the event of breach of any of the terms of this Agreement. The exercise or partial exercise of any right, power or remedy will neither constitute the exclusive election thereof nor the waiver of any other right, power or remedy available to such Party.

9.4.     Notices: Any written notice under this Agreement shall be sent by Certified Mail, return receipt requested, or by recognized courier service. Facsimile transmission and e-mail may be used in addition to, but not in lieu of, the foregoing. The notice shall be deemed effective as of the date of delivery, as evidenced by a delivery receipt. The addresses of the parties, as set forth below, shall be used for any such notice unless either party hereafter designates a substitute address in writing.

Any notice to MICROSOFT shall be sent to:

Microsoft Corporation
One Microsoft Way
Redmond, WA 98052
Attention: Deputy General Counsel, Patents

<u>and</u>

Any notice to ITV shall be sent to:

Intellivision
156 Roosevelt Drive, Unit A, Seymour
Connecticut, 06483
Attention: John Daniels

5

With copies to Bruce L. Adams and Paul R. Hoffman at their respective addresses as specified at page 1 of this Agreement, and with a copy to:

Adams & Wilks
50 Broadway – 31st Floor
New York, NY 10004

9.5. Severability: If any provision of this Agreement is held to be void or unenforceable, the parties agree that such determination will not result in the nullity or unenforceability of the remaining portions of this Agreement. The parties further agree to replace such void or unenforceable provisions of this Agreement with valid and enforceable provisions that will achieve, to the extent legally permissible, the economic, business and other purposes of the void or unenforceable provisions.

9.6. Counterparts: This Agreement may be executed in separate counterparts, and by facsimile, each of which will be deemed an original, and when executed, separately or together, will constitute a single original instrument, effective in the same manner as if the parties had executed one and the same instrument.

9.7. Entire Agreement: This Agreement, including the Attachments A-C, which are incorporated by references herein, is intended by the parties to be the final expression of their agreement and constitutes and embodies the entire agreement and understanding between the parties hereto and constitutes a complete and exclusive statement of the terms and conditions thereof, and will supersede any and all prior correspondence, conversations, negotiations, agreements or understandings relating to the same subject matter.

9.8. Amendments: No change in, modification of or addition to the terms and conditions contained herein will be valid as between the parties unless set forth in a writing which is signed by authorized representatives of both the parties and which specifically states that it constitutes an amendment to this Agreement.

9.9. Waiver: No waiver of any term, provision, or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, will be deemed to be, or be construed as, a further or continuing waiver of that term, provision or condition or any other term, provision or condition of this Agreement.

9.10. Assignment: MICROSOFT may assign its rights and obligations under this Agreement to any other entity. ITV may not assign its obligations under this Agreement.

9.11. Binding on Heirs, Successors and Assigns: This Agreement and all of its terms, conditions and covenants are intended to be fully effective and binding, to the extent permitted by law, on the heirs, successors and permitted assigns of the parties hereto.

9.12. Captions: Captions are provided in this Agreement for convenience only. They form no part of and are not to serve as a basis for interpretation or construction of this Agreement, nor as evidence of the intention of the parties hereto.

9.13. Disclaimer of Agency: Nothing contained in this Agreement is intended or will be construed so as to constitute the parties to this Agreement as partners or joint venturers or as agents of each other. Neither party will have any express or implied right or authority to assume or create any obligations on behalf of or in the name of the other party or to bind the other party in any contract, agreement or undertaking with any third party.

9.15. Ambiguities: Each party and its counsel have participated fully in the review and revision of this Agreement. Any rule or construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in interpreting this Agreement.

9.16. Force Majeure: In the event that either party is prevented from the performance of its obligations hereunder due to events beyond its control (such as, without limitation, strikes, fire, war, rebellion, accident, acts of God, embargoes, governmental orders or other such restrictions), this Agreement shall be suspended during such interruption.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

MICROSOFT Corporation
One Microsoft Way
Redmond, WA 98052

By: _____
Title: _1/19/2001_
Date: _Sr. Vice President_

Bruce L. Adams, a single individual
18 Holmhill Lane
Roseland, NJ 07068

By: _____
Date: _1/11/2001_

Intellivision, a joint venture
156 Roosevelt Drive, Unit A
Seymour, CT 06483

By: _____
      John J. Daniels
Date: _1/11/2001_

By: _____
      Paul R. Hoffman
Date: _1/11/2001_

John J. Daniels, a married individual
325 Roosevelt Drive
Seymour, CT 06483

By: _____
Date: _1/11/2001_

Paul R. Hoffman, a single individual
345 South End Avenue
Apartment 4M
NY, NY 10280

By: _____
Date: _1/11/2001_

By: _____
      Bruce L. Adams
Date: _1/11/2001_

8

**ATTACHMENT A: Patent Applications**

1.      US Patent Application Serial No. 08/038,240, filed on March 23, 1993, titled Time Shifting Event Recorder;

2.      US Patent Application Serial No. 08/306,642, filed on September 15, 1994, titled Recording System for Displaying an Event in a Time Shifted Manner;

3.      US Provisional Patent Application Serial No. 60/014,959, filed on April 1, 1996, titled Method of Restricting the Reception of Data from a Computer Network;

4.      US Patent Application Serial No. 08/641,517, filed on May 1, 1996, titled Method and Apparatus for Pausing the Display of a Received Time Sequential Signal;

5.      US Patent Application Serial No. 08/848, 895, filed on May 1, 1997, titled Method and Apparatus for Pausing the Display of a Received Time Sequential Signal;

6.      PCT Application Serial No. PCT/US97/18372, filed on October 1, 1997, titled Time-Shifting Apparatus and Auto-Edit System;

7.      Australia Patent Application Serial No. 48995/97, filed on December 30, 1998, titled Time-Shifting Apparatus and Auto-Edit System;

8.      Canada Patent Application Serial No. 2259225, filed on December 21, 1998, titled Time-Shifting Apparatus and Auto-Edit System;

9.      Japan Patent Application Serial No. 10-548026, filed on December 28, 1998, titled Time-Shifting Apparatus and Auto-Edit System;

10.     US Patent Application Serial No. 08/900,417, filed on July 25, 1997, titled Multi-Featured Multi-Media Appliance;

11.     US Provisional Patent Application Serial No. 60/114,668, filed on January 4, 1999, titled Method and Apparatus for Multimedia Systems;

12.     US Patent Application Serial No. 09/477,629, filed on January 4, 2000, titled Methods and Apparatus for Multimedia Systems.

# **ATTACHMENT B**

**-- Assignment Documents --**

PATENT APPLICATION

A S S I G N M E N T

WHEREAS, I, John J. Daniels, (hereinafter referred to as ASSIGNOR), having a post office address of 325 Roosevelt Drive, Seymour, Connecticut 06483, am the single inventor of an invention entitled **"Time Shifting Event Recorder,"** as described and claimed in the specification forming part of an application for United States letters patent filed in the United States Patent and Trademark Office as Serial No. **08/038,240** on **March 23, 1993**.

WHEREAS, Microsoft Corporation (hereinafter referred to as ASSIGNEE), a corporation of the State of Washington having a place of business at One Microsoft Way, Redmond, WA 98052, is desirous of acquiring the entire right, title, and interest in and to the invention and in and to any letters patent that may be granted therefor in the United States and in any and all foreign countries;

NOW, THEREFORE, in exchange for good and valuable consideration, the receipt of which is hereby acknowledged, ASSIGNOR hereby sells, assigns, and transfers unto said ASSIGNEE, the entire right, title, and interest in and to said invention, said application and any and all letters patent which may be granted for said invention in the United States of America and its territorial possessions and in any and all foreign countries, and in any and all divisions, reissues, and continuations thereof, including the right to file foreign applications directly in the name of ASSIGNEE and to claim priority rights deriving from said United States application to which said foreign applications are entitled by virtue of international convention, treaty, or otherwise, said invention, application, and all letters patent on said invention to be held and enjoyed by ASSIGNEE and its successors and assigns for their use and benefit and of their successors and assigns as fully and entirely as the same would have been held and enjoyed by ASSIGNOR had this assignment, transfer, and sale not been made. ASSIGNOR hereby authorizes and requests the Commissioner of Patents and Trademarks to issue all letters patent on said invention to ASSIGNEE. ASSIGNOR agrees to execute all instruments and documents required for the making and prosecution of applications for United States and foreign letters patent on said invention, for litigation regarding said letters patent, or for the purpose of protecting title to said invention or letters patent therefore.

Dated this *13th* day of *December*, 2000

John J. Daniels
U.S. Citizen

STATE OF ~~NEW YORK~~ *Connecticut* )
: ss.
COUNTY OF NEW ~~YORK~~ *Haven* )

On *December 13*, 2000, before me personally appeared John J. Daniels, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

SUSAN DeBARBER
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JULY 31, 2005

PATENT APPLICATION

# A S S I G N M E N T

WHEREAS, we, John J. Daniels, Bruce L. Adams, and Paul R. Hoffman, (hereinafter referred to as ASSIGNORS), having post office addresses of 325 Roosevelt Drive, Seymour, Connecticut 06483, 18 Holmhill Lane, Roseland, NJ 07068, 345 South End Avenue, Apartment 4M, NY, NY 10280, respectively, jointly own, by the Assignment document attached hereto as Exhibit A, the entire right, title, and interest in and to an invention entitled **"Recording System for Displaying an Event in a Time Shifted Manner,"** as described and claimed in the specification forming part of an application for United States letters patent filed in the United States Patent and Trademark Office as Serial No. **08/306,642** on **September 15, 1994.**

WHEREAS, Microsoft Corporation (hereinafter referred to as ASSIGNEE), a corporation of the State of Washington having a place of business at One Microsoft Way, Redmond, WA 98052, is desirous of acquiring the entire right, title, and interest in and to the invention and in and to any letters patent that may be granted therefor in the United States and in any and all foreign countries;

NOW, THEREFORE, in exchange for good and valuable consideration, the receipt of which is hereby acknowledged, ASSIGNORS hereby sell, assign, and transfer unto said ASSIGNEE, the entire right, title, and interest in and to said invention, said application and any and all letters patent which may be granted for said invention in the United States of America and its territorial possessions and in any and all foreign countries, and in any and all divisions, reissues, and continuations thereof, including the right to file foreign applications directly in the name of ASSIGNEE and to claim priority rights deriving from said United States application to which said foreign applications are entitled by virtue of international convention, treaty, or otherwise, said invention, application, and all letters patent on said invention to be held and enjoyed by ASSIGNEE and its successors and assigns for their use and benefit and of their successors and assigns as fully and entirely as the same would have been held and enjoyed by ASSIGNORS had this assignment, transfer, and sale not been made. ASSIGNORS hereby authorize and request the Commissioner of Patents and Trademarks to issue all letters patent on said invention to ASSIGNEE. ASSIGNORS agree to execute all instruments and documents required for the making and prosecution of applications for United States and foreign letters patent on said invention, for litigation regarding said letters patent, or for the purpose of protecting title to said invention or letters patent therefore.

1

Dated this _13TH_ day of _December_ , 2000.

_____
John J. Daniels
U.S. Citizen

STATE OF ~~NEW YORK~~ _Connecticut_    )
                                           _Haven_ : ss.
COUNTY OF NEW ~~YORK~~    )

On _December  13_ , 2000, before me personally appeared John J. Daniels, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

SUSAN DeBARBER
NOTARY PUBLIC
MY COMMISSION EXPIRES JULY 31, 2005

_____
Bruce L. Adams
U.S. Citizen

STATE OF NEW YORK    )
                          : ss.
COUNTY OF NEW YORK    )

On _28th  DEC_ , 2000, before me personally appeared Bruce L. Adams, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

ANIL M. MUKHATIYAR
NOTARY PUBLIC, State of New York
No. 41-4965497
Qualified in Queens County
Commission Expires Aug. 19, 20 _01_

2

Paul R. Hoffman
U.S. Citizen

STATE OF NEW YORK     )
                     : ss.
COUNTY OF NEW YORK   )

On 26th DEC - _____, 2000, before me personally appeared Paul R. Hoffman, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

ANIL M. MUKHATIYAR
NOTARY PUBLIC, State of New York
No. 41-4985497
Qualified in Queens County
Commission Expires Aug. 19, 20 01

3

PATENT APPLICATION

# ASSIGNMENT

WHEREAS, I, John J. Daniels (hereinafter referred to as ASSIGNOR), having a post office address of 325 Roosevelt Drive, Seymour, Connecticut 06483, am the sole inventor of an invention entitled **"Method of Restricting the Reception of Data from a Computer Network,"** as described and claimed in the specification forming part of a United States provisional patent application filed in the U.S. Patent and Trademark Office as Serial No. **60/014,959** on **April 1, 1996**.

WHEREAS, Microsoft Corporation (hereinafter referred to as ASSIGNEE), a corporation of the State of Washington having a place of business at One Microsoft Way, Redmond, WA 98052, is desirous of acquiring the entire right, title, and interest in and to the invention and in and to any letters patent that may be granted therefor in the United States and in any and all foreign countries;

NOW, THEREFORE, in exchange for good and valuable consideration, the receipt of which is hereby acknowledged, ASSIGNOR hereby sells, assigns, and transfers unto said ASSIGNEE, the entire right, title, and interest in and to said invention, said application and any and all letters patent which may be granted for said invention in the United States of America and its territorial possessions and in any and all foreign countries, and in any and all divisions, reissues, and continuations thereof, including the right to file foreign applications directly in the name of ASSIGNEE and to claim priority rights deriving from said United States application to which said foreign applications are entitled by virtue of international convention, treaty, or otherwise, said invention, application, and all letters patent on said invention to be held and enjoyed by ASSIGNEE and its successors and assigns for their use and benefit and of their successors and assigns as fully and entirely as the same would have been held and enjoyed by ASSIGNOR had this assignment, transfer, and sale not been made.  ASSIGNOR hereby authorizes and requests the Commissioner of Patents and Trademarks to issue all letters patent on said invention to ASSIGNEE.  ASSIGNOR agrees to execute all instruments and documents required for the making and prosecution of applications for United States and foreign letters patent on said invention, for litigation regarding said letters patent, or for the purpose of protecting title to said invention or letters patent therefore.

Dated this _13TH_ day of _December_ , 2000.

_____
John J. Daniels
U.S. Citizen

STATE OF ~~NEW YORK~~ *Connecticut*                )
                                                                            : ss.
COUNTY OF   NEW ~~YORK~~ *Haven*                  )

On _December 13_ , 2000, before me personally appeared John J. Daniels, known  to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_Susan DeBarber_
_____
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

**SUSAN DeBARBER**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JULY 31, 2005

PATENT APPLICATION

ASSIGNMENT

WHEREAS, we, John J. Daniels, Bruce L. Adams, and Paul R. Hoffman, (hereinafter referred to as ASSIGNORS), having post office addresses of 325 Roosevelt Drive, Seymour, Connecticut 06483, 18 Holmhill Lane, Roseland, NJ 07068, 345 South End Avenue, Apartment 4M, NY, NY 10280, respectively, jointly own, by the Assignment document attached hereto as Exhibit A, the entire right, title, and interest in and to an invention entitled "**Method and Apparatus for Pausing the Display of a Received Time Sequential Signal,**" as described and claimed in the specification forming part of an application for United States letters patent filed in the United States Patent and Trademark Office as Serial No. **08/641,517** on **May 1, 1996.**

WHEREAS, Microsoft Corporation (hereinafter referred to as ASSIGNEE), a corporation of the State of Washington having a place of business at One Microsoft Way, Redmond, WA 98052, is desirous of acquiring the entire right, title, and interest in and to the invention and in and to any letters patent that may be granted therefor in the United States and in any and all foreign countries;

NOW, THEREFORE, in exchange for good and valuable consideration, the receipt of which is hereby acknowledged, ASSIGNORS hereby sell, assign, and transfer unto said ASSIGNEE, the entire right, title, and interest in and to said invention, said application and any and all letters patent which may be granted for said invention in the United States of America and its territorial possessions and in any and all foreign countries, and in any and all divisions, reissues, and continuations thereof, including the right to file foreign applications directly in the name of ASSIGNEE and to claim priority rights deriving from said United States application to which said foreign applications are entitled by virtue of international convention, treaty, or otherwise, said invention, application, and all letters patent on said invention to be held and enjoyed by ASSIGNEE and its successors and assigns for their use and benefit and of their successors and assigns as fully and entirely as the same would have been held and enjoyed by ASSIGNORS had this assignment, transfer, and sale not been made. ASSIGNORS hereby authorize and request the Commissioner of Patents and Trademarks to issue all letters patent on said invention to ASSIGNEE. ASSIGNORS agree to execute all instruments and documents required for the making and prosecution of applications for United States and foreign letters patent on said invention, for litigation regarding said letters patent, or for the purpose of protecting title to said invention or letters patent therefore.

1

Dated this *13TH* day of *December*, 2000.

*John J. Daniels*

John J. Daniels
U.S. Citizen

STATE OF ~~NEW YORK~~ *Connecticut* )
                                     : ss.
COUNTY OF ~~NEW YORK~~ *Haven* )

On *December 13*, 2000, before me personally appeared John J. Daniels, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

*Susan DeBarber*
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

SUSAN DeBARBER
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JULY 31, 2005

Bruce L. Adams
U.S. Citizen

STATE OF NEW YORK )
                  : ss.
COUNTY OF NEW YORK )

On *28th DEC*, 2000, before me personally appeared Bruce L. Adams, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

ANIL M. MUKHATIYAR
NOTARY PUBLIC, State of New York
No. 41-4985497
Qualified in Queens County
Commission Expires Aug. 19, 20 01

2

_(signature)_

Paul R. Hoffman
U.S. Citizen

STATE OF NEW YORK      )
                       :  ss.
COUNTY OF NEW YORK     )

    On _26th DEC_____, 2000, before me personally appeared Paul R. Hoffman, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he/she has read the same and know the contents thereof and that he/she executed the same as his/her free act and deed and for the purposes set forth therein.

_(signature)_

NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

ANIL M. MUKHATIYAR
NOTARY PUBLIC, State of New York
No. 41-4965497
Qualified in Queens County
Commission Expires Aug. 19, 20 _01_

3

PATENT APPLICATION

## A S S I G N M E N T

WHEREAS, we, John J. Daniels, Bruce L. Adams, and Paul R. Hoffman, (hereinafter referred to as ASSIGNORS), having post office addresses of 325 Roosevelt Drive, Seymour, Connecticut 06483, 18 Holmhill Lane, Roseland, NJ 07068, 345 South End Avenue, Apartment 4M, NY, NY 10280, respectively, jointly own, by the Assignment document attached hereto as Exhibit A, the entire right, title, and interest in and to an invention entitled **"Method and Apparatus for Pausing the Display of a Received Time Sequential Signal,"** as described and claimed in the specification forming part of an application for United States letters patent filed in the United States Patent and Trademark Office as Serial No. **08/848,895** on **May 1, 1997.**

WHEREAS, Microsoft Corporation (hereinafter referred to as ASSIGNEE), a corporation of the State of Washington having a place of business at One Microsoft Way, Redmond, WA 98052, is desirous of acquiring the entire right, title, and interest in and to the invention and in and to any letters patent that may be granted therefor in the United States and in any and all foreign countries;

NOW, THEREFORE, in exchange for good and valuable consideration, the receipt of which is hereby acknowledged, ASSIGNORS hereby sell, assign, and transfer unto said ASSIGNEE, the entire right, title, and interest in and to said invention, said application and any and all letters patent which may be granted for said invention in the United States of America and its territorial possessions and in any and all foreign countries, and in any and all divisions, reissues, and continuations thereof, including the right to file foreign applications directly in the name of ASSIGNEE and to claim priority rights deriving from said United States application to which said foreign applications are entitled by virtue of international convention, treaty, or otherwise, said invention, application, and all letters patent on said invention to be held and enjoyed by ASSIGNEE and its successors and assigns for their use and benefit and of their successors and assigns as fully and entirely as the same would have been held and enjoyed by ASSIGNORS had this assignment, transfer, and sale not been made. ASSIGNORS hereby authorize and request the Commissioner of Patents and Trademarks to issue all letters patent on said invention to ASSIGNEE. ASSIGNORS agree to execute all instruments and documents required for the making and prosecution of applications for United States and foreign letters patent on said invention, for litigation regarding said letters patent, or for the purpose of protecting title to said invention or letters patent therefore.

1

Dated this *13th* day of *December*_____, 2000.

_____
John J. Daniels
U.S. Citizen

STATE OF ~~NEW YORK~~ *Connecticut*  )
*Haven* : ss.
COUNTY OF NEW ~~YORK~~  )

On *December 13*_____, 2000, before me personally appeared John J. Daniels, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

SUSAN DeBARBER
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JULY 31, 2005

_____
Bruce L. Adams
U.S. Citizen

STATE OF NEW YORK    )
: ss.
COUNTY OF NEW YORK   )

On *28th . DEC*_____, 2000, before me personally appeared Bruce L. Adams, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

ANIL M. MUKHATIYAR
NOTARY PUBLIC, State of New York
No. 41-4985497
Qualified in Queens County
Commission Expires Aug. 19, 20 01

2

_____
Paul R. Hoffman
U.S. Citizen

STATE OF NEW YORK    )
                     : ss.
COUNTY OF NEW YORK  )

On _26th - DEC._ , 2000, before me personally appeared Paul R. Hoffman, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

ANIL M. MUKHATIYAR
NOTARY PUBLIC, State of New York
No. 41-4985497
Qualified in Queens County
Commission Expires Aug. 19, 20 _01_

PATENT APPLICATION

ASSIGNMENT

WHEREAS, we, John J. Daniels, Bruce L. Adams, and Paul R. Hoffman, (hereinafter referred to as ASSIGNORS), having post office addresses of 325 Roosevelt Drive, Seymour, Connecticut 06483, 18 Holmhill Lane, Roseland, NJ 07068, 345 South End Avenue, Apartment 4M, NY, NY 10280, respectively, jointly own, by the Assignment document attached hereto as Exhibit A, the entire right, title, and interest in and to an invention entitled **"Multi-Featured Multi-Media Appliance,"** as described and claimed in the specification forming part of an application for United States letters patent filed in the United States Patent and Trademark Office as Serial No. **08/900,417** on **July 25, 1997**.

WHEREAS, Microsoft Corporation (hereinafter referred to as ASSIGNEE), a corporation of the State of Washington having a place of business at One Microsoft Way, Redmond, WA 98052, is desirous of acquiring the entire right, title, and interest in and to the invention and in and to any letters patent that may be granted therefor in the United States and in any and all foreign countries;

NOW, THEREFORE, in exchange for good and valuable consideration, the receipt of which is hereby acknowledged, ASSIGNORS hereby sell, assign, and transfer unto said ASSIGNEE, the entire right, title, and interest in and to said invention, said application and any and all letters patent which may be granted for said invention in the United States of America and its territorial possessions and in any and all foreign countries, and in any and all divisions, reissues, and continuations thereof, including the right to file foreign applications directly in the name of ASSIGNEE and to claim priority rights deriving from said United States application to which said foreign applications are entitled by virtue of international convention, treaty, or otherwise, said invention, application, and all letters patent on said invention to be held and enjoyed by ASSIGNEE and its successors and assigns for their use and benefit and of their successors and assigns as fully and entirely as the same would have been held and enjoyed by ASSIGNORS had this assignment, transfer, and sale not been made. ASSIGNORS hereby authorize and request the Commissioner of Patents and Trademarks to issue all letters patent on said invention to ASSIGNEE. ASSIGNORS agree to execute all instruments and documents required for the making and prosecution of applications for United States and foreign letters patent on said invention, for litigation regarding said letters patent, or for the purpose of protecting title to said invention or letters patent therefore.

1

Dated this *13ᵗʰ* day of *December*_____, 2000

_____
John J. Daniels
U.S. Citizen

STATE OF ~~NEW YORK~~   )
         *Connecticut*
         *Haven*        : ss.
COUNTY OF NEW ~~YORK~~  )

On *December 13*_____, 2000, before me personally appeared John J. Daniels, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

SUSAN DeBARBER
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JULY 31, 2005

_____
Bruce L. Adams
U.S. Citizen

STATE OF NEW YORK      )
                       : ss.
COUNTY OF NEW YORK     )

On *28ᵗʰ. DEC*_____, 2000, before me personally appeared Bruce L. Adams, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

ANIE M. MUKHATIYAR
NOTARY PUBLIC, State of New York
No. 41-4985497
Qualified in Queens County
Commission Expires Aug. 19, 20 *01*

2

_____
Paul R. Hoffman
U.S. Citizen

STATE OF NEW YORK      )
                       : ss.
COUNTY OF NEW YORK  )

     On _____26th. DEC_____, 2000, before me personally appeared Paul R. Hoffman, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

                      ANIL M. MUKHATIYAR
            NOTARY PUBLIC, State of New York
                  No. 41-4985497
             Qualified in Queens County
        Commission Expires Aug. 19, 20 01

PATENT APPLICATION

A S S I G N M E N T

WHEREAS, we, John J. Daniels, Bruce L. Adams, and Paul R. Hoffman, (hereinafter referred to as ASSIGNORS), having post office addresses of 325 Roosevelt Drive, Seymour, Connecticut 06483, 18 Holmhill Lane, Roseland, NJ 07068, 345 South End Avenue, Apartment 4M, NY, NY 10280, respectively, jointly own, by the Assignment document attached hereto as Exhibit A, the entire right, title, and interest in and to an invention entitled "**Methods and Apparatus for Multimedia Systems**," as described and claimed in the specification forming part of a United States provisional patent application filed in the United States Patent and Trademark Office as Serial No. **60/114,668** on **January 4, 1999**.

WHEREAS, Microsoft Corporation (hereinafter referred to as ASSIGNEE), a corporation of the State of Washington having a place of business at One Microsoft Way, Redmond, WA 98052, is desirous of acquiring the entire right, title, and interest in and to the invention and in and to any letters patent that may be granted therefor in the United States and in any and all foreign countries;

NOW, THEREFORE, in exchange for good and valuable consideration, the receipt of which is hereby acknowledged, ASSIGNORS hereby sell, assign, and transfer unto said ASSIGNEE, the entire right, title, and interest in and to said invention, said application and any and all letters patent which may be granted for said invention in the United States of America and its territorial possessions and in any and all foreign countries, and in any and all divisions, reissues, and continuations thereof, including the right to file foreign applications directly in the name of ASSIGNEE and to claim priority rights deriving from said United States application to which said foreign applications are entitled by virtue of international convention, treaty, or otherwise, said invention, application, and all letters patent on said invention to be held and enjoyed by ASSIGNEE and its successors and assigns for their use and benefit and of their successors and assigns as fully and entirely as the same would have been held and enjoyed by ASSIGNORS had this assignment, transfer, and sale not been made. ASSIGNORS hereby authorize and request the Commissioner of Patents and Trademarks to issue all letters patent on said invention to ASSIGNEE. ASSIGNORS agree to execute all instruments and documents required for the making and prosecution of applications for United States and foreign letters patent on said invention, for litigation regarding said letters patent, or for the purpose of protecting title to said invention or letters patent therefore.

1

Dated this *13ʳᵈ* day of *December*, 2000.

_____

John J. Daniels

U.S. Citizen

STATE OF NEW YORK    )

Connecticut

COUNTY OF NEW YORK    )    : ss.

Haven

On *December 13*, 2000, before me personally appeared John J. Daniels, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____

NOTARY PUBLIC

Residing at New York, New York

My Commission Expires:_____

SUSAN DeBARBER
NOTARY PUBLIC
MY COMMISSION EXPIRES JULY 31, 2005

_____

Bruce L. Adams

U.S. Citizen

STATE OF NEW YORK    )

COUNTY OF NEW YORK    )    : ss.

On *25th - DEC*, 2000, before me personally appeared Bruce L. Adams, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____

NOTARY PUBLIC

Residing at New York, New York

My Commission Expires:_____

ANIL M. MUKHATIYAR
NOTARY PUBLIC, State of New York
No 41-4985487
Qualified in Queens County
Commission Expires Aug. 19, 20__

2

_____

Paul R. Hoffman
U.S. Citizen

STATE OF NEW YORK      )
                       : ss.
COUNTY OF NEW YORK  )

On _____20th- DEC_____, 2000, before me personally appeared Paul R. Hoffman, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

ANIL M. MUKhATIYAR
NOTARY PUBLIC, State of New York
No. 41-4985497
Qualified in Queens County
Commission Expires Aug. 19, 20 _01_

3

PATENT APPLICATION

# A S S I G N M E N T

WHEREAS, I, John J. Daniels (hereinafter referred to as ASSIGNOR), having a post office address of 325 Roosevelt Drive, Seymour, Connecticut 06483, am the sole inventor of an invention entitled "**Methods and Apparatus for Multimedia Systems,**" as described and claimed in the specification forming part of a United States provisional patent application filed in the United States Patent and Trademark Office as Serial No. **60/114,668** on **January 4, 1999**.

WHEREAS, Microsoft Corporation (hereinafter referred to as ASSIGNEE), a corporation of the State of Washington having a place of business at One Microsoft Way, Redmond, WA 98052, is desirous of acquiring the entire right, title, and interest in and to the invention and in and to any letters patent that may be granted therefor in the United States and in any and all foreign countries;

NOW, THEREFORE, in exchange for good and valuable consideration, the receipt of which is hereby acknowledged, ASSIGNOR hereby sells, assigns, and transfers unto said ASSIGNEE, the entire right, title, and interest in and to said invention, said application and any and all letters patent which may be granted for said invention in the United States of America and its territorial possessions and in any and all foreign countries, and in any and all divisions, reissues, and continuations thereof, including the right to file foreign applications directly in the name of ASSIGNEE and to claim priority rights deriving from said United States application to which said foreign applications are entitled by virtue of international convention, treaty, or otherwise, said invention, application, and all letters patent on said invention to be held and enjoyed by ASSIGNEE and its successors and assigns for their use and benefit and of their successors and assigns as fully and entirely as the same would have been held and enjoyed by ASSIGNOR had this assignment, transfer, and sale not been made. ASSIGNOR hereby authorizes and requests the Commissioner of Patents and Trademarks to issue all letters patent on said invention to ASSIGNEE. ASSIGNOR agrees to execute all instruments and documents required for the making and prosecution of applications for United States and foreign letters patent on said invention, for litigation regarding said letters patent, or for the purpose of protecting title to said invention or letters patent therefore.

Dated this *13ᵗʰ* day of *December*  2000.

_____

John J. Daniels
U.S. Citizen

*Connecticut*

STATE OF ~~NEW YORK~~        )

*Haven*            : ss.

COUNTY OF   NEW ~~YORK~~        )

On *December 13* , 2000, before me personally appeared John J. Daniels, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his her free act and deed and for the purposes set forth therein.

_____

NOTARY PUBLIC

Residing at New York, New York

My Commission Expires:_____

SUSAN DeBARBER
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JULY 31, 2005

1

PATENT APPLICATION

# A S S I G N M E N T

WHEREAS, we, John J. Daniels, Bruce L. Adams, and Paul R. Hoffman, (hereinafter referred to as ASSIGNORS), having post office addresses of 325 Roosevelt Drive, Seymour, Connecticut 06483, 18 Holmhill Lane, Roseland, NJ 07068, 345 South End Avenue, Apartment 4M, NY, NY 10280, respectively, jointly own, by the Assignment document attached hereto as Exhibit A, said Assignment document assigning to us the US Provisional Patent Application Serial No. 60/114,668 which was converted into the present non-provisional application, the entire right, title, and interest in and to an invention entitled "**Methods and Apparatus for Multimedia Systems**," as described and claimed in the specification forming part of an application for United States letters patent filed in the United States Patent and Trademark Office as Serial No. **09/477,629** on **January 4, 2000**.

WHEREAS, Microsoft Corporation (hereinafter referred to as ASSIGNEE), a corporation of the State of Washington having a place of business at One Microsoft Way, Redmond, WA 98052, is desirous of acquiring the entire right, title, and interest in and to the invention and in and to any letters patent that may be granted therefor in the United States and in any and all foreign countries;

NOW, THEREFORE, in exchange for good and valuable consideration, the receipt of which is hereby acknowledged, ASSIGNORS hereby sell, assign, and transfer unto said ASSIGNEE, the entire right, title, and interest in and to said invention, said application and any and all letters patent which may be granted for said invention in the United States of America and its territorial possessions and in any and all foreign countries, and in any and all divisions, reissues, and continuations thereof, including the right to file foreign applications directly in the name of ASSIGNEE and to claim priority rights deriving from said United States application to which said foreign applications are entitled by virtue of international convention, treaty, or otherwise, said invention, application, and all letters patent on said invention to be held and enjoyed by ASSIGNEE and its successors and assigns for their use and benefit and of their successors and assigns as fully and entirely as the same would have been held and enjoyed by ASSIGNORS had this assignment, transfer, and sale not been made. ASSIGNORS hereby authorize and request the Commissioner of Patents and Trademarks to issue all letters patent on said invention to ASSIGNEE. ASSIGNORS agree to execute all instruments and documents required for the making and prosecution of applications for United States and foreign letters patent on said invention, for litigation regarding said letters patent, or for the purpose of protecting title to said invention or letters patent therefore.

Dated this *13* day of *December*, 2000.

_____
John J. Daniels
U.S. Citizen

STATE OF ~~NEW YORK~~ *Connecticut* )
                                      *Haven* : ss.
COUNTY OF NEW ~~YORK~~ )

On *December 13*, 2000, before me personally appeared John J. Daniels, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

*Susan DeBarber*
NOTARY PUBLIC                        SUSAN DeBARBER
Residing at New York, New York       NOTARY PUBLIC
My Commission Expires:_____  MY COMMISSION EXPIRES JULY 31, 2005

_____
Bruce L. Adams
U.S. Citizen

STATE OF NEW YORK )
                    : ss.
COUNTY OF NEW YORK )

On *28th - DEC*, 2000, before me personally appeared Bruce L. Adams, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____
                              ANIL M. MUKHATIYAR
                              NOTARY PUBLIC, State of New York
                              No. 41-4985497
                              Qualified in Queens County
                              Commission Expires Aug. 19, 20 *01*

2

_____
Paul R. Hoffman
U.S. Citizen

STATE OF NEW YORK     )
                      : ss.
COUNTY OF NEW YORK    )

On _____26th · DEc_____ , 2000, before me personally appeared Paul R. Hoffman, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

ANIL M. MUKHATIYAR
NOTARY PUBLIC, State of New York
No. 41-4985497
Qualified in Queens County
Commission Expires Aug. 19, 20 __

3

A S S I G N M E N T

WHEREAS, we, John J. Daniels, Bruce L. Adams, and Paul R. Hoffman, (hereinafter referred to as ASSIGNORS), having post office addresses of 325 Roosevelt Drive, Seymour, Connecticut 06483, 18 Holmhill Lane, Roseland, NJ 07068, 345 South End Avenue, Apartment 4M, NY, NY 10280, respectively, jointly own, by the Assignment document attached hereto as Exhibit A, the entire right, title, and interest in and to an invention entitled **"Time-Shifting Apparatus and Auto-Edit System,"** as described and claimed in the specification forming part of a PCT application as filed in the U.S. Receiving Office of the United States Patent and Trademark Office as PCT Application Serial No. **PCT/US97/18372** on **October 1, 1997**.

WHEREAS, Microsoft Corporation (hereinafter referred to as ASSIGNEE), a corporation of the State of Washington having a place of business at One Microsoft Way, Redmond, WA 98052, is desirous of acquiring the entire right, title, and interest in and to the invention and in and to any letters patent that may be granted therefor in the United States and in any and all foreign countries;

NOW, THEREFORE, in exchange for good and valuable consideration, the receipt of which is hereby acknowledged, ASSIGNORS hereby sell, assign, and transfer unto said ASSIGNEE, the entire right, title, and interest in and to said invention, said application and any and all letter patent which may be granted for said invention in the United States of America and its territorial possessions and in any and all foreign countries, and in any and all divisions, reissues, and continuations thereof, including the right to file foreign applications directly in the name of ASSIGNEE and to claim priority rights deriving from said United States application to which said foreign applications are entitled by virtue of international convention, treaty, or otherwise, said invention, application, and all letters patent on said invention to be held and enjoyed by ASSIGNEE and its successors and assigns for their use and benefit and of their successors and assigns as fully and entirely as the same would have been held and enjoyed by ASSIGNORS had this assignment, transfer, and sale not been made. ASSIGNORS hereby authorize and request the Commissioner of Patents and Trademarks to issue all letters patent on said invention to ASSIGNEE. ASSIGNORS agree to execute all instruments and documents required for the making and prosecution of applications for United States and foreign letters patent on said invention, for litigation regarding said letters patent, or for the purpose of protecting title to said invention or letters patent therefore.

Dated this 18th day of December , 2000.

_____
John J. Daniels
U.S. Citizen

STATE OF NEW YORK    )
            Connecticut
            : ss.
            Haven
COUNTY OF NEW YORK   )

On December 13 , 2000, before me personally appeared John J. Daniels, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

SUSAN DeBARBER
NOTARY PUBLIC
MY COMMISSION EXPIRES JULY 31, 2005

_____
Bruce L. Adams
U.S. Citizen

STATE OF NEW YORK    )
            : ss.
COUNTY OF NEW YORK   )

On 25th . DEC , 2000, before me personally appeared Bruce L. Adams, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

ANIL M. MUKHATIYAR
NOTARY PUBLIC, State of New York
No. 41-4965497
Qualified in Queens County
Commission Expires Aug. 19, 20 01

2

_____

Paul R. Hoffman
U.S. Citizen


STATE OF NEW YORK      )
                       : ss.
COUNTY OF NEW YORK  )

     On ____26ᵗʰ DEC.____, 2000, before me personally appeared Paul R. Hoffman, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.


_____
NOTARY PUBLIC
Residing at New York, New York
My Commission Expires:_____

ANIL M. MUKHATIYAR
NOTARY PUBLIC, State of New York
No. 41-4985497
Qualified in Queens County
Commission Expires Aug. 19, 20 01

PATENT APPLICATION

ASSIGNMENT

WHEREAS, I, John J. Daniels (hereinafter referred to as ASSIGNOR), having a post office address of 325 Roosevelt Drive, Seymour, Connecticut 06483, am the sole inventor of an invention entitled "**Methods and Apparatus for Multimedia Systems,**" as described and claimed in the specification forming part of an application for United States letters patent filed in the United States Patent and Trademark Office as Serial No. **09/477,629** on **January 4, 2000**.

WHEREAS, Microsoft Corporation (hereinafter referred to as ASSIGNEE), a corporation of the State of Washington having a place of business at One Microsoft Way, Redmond, WA 98052, is desirous of acquiring the entire right, title, and interest in and to the invention and in and to any letters patent that may be granted therefor in the United States and in any and all foreign countries;

NOW, THEREFORE, in exchange for good and valuable consideration, the receipt of which is hereby acknowledged, ASSIGNOR hereby sells, assigns, and transfers unto said ASSIGNEE, the entire right, title, and interest in and to said invention, said application and any and all letters patent which may be granted for said invention in the United States of America and its territorial possessions and in any and all foreign countries, and in any and all divisions, reissues, and continuations thereof, including the right to file foreign applications directly in the name of ASSIGNEE and to claim priority rights deriving from said United States application to which said foreign applications are entitled by virtue of international convention, treaty, or otherwise, said invention, application, and all letters patent on said invention to be held and enjoyed by ASSIGNEE and its successors and assigns for their use and benefit and of their successors and assigns as fully and entirely as the same would have been held and enjoyed by ASSIGNOR had this assignment, transfer, and sale not been made. ASSIGNOR hereby authorizes and requests the Commissioner of Patents and Trademarks to issue all letters patent on said invention to ASSIGNEE. ASSIGNOR agrees to execute all instruments and documents required for the making and prosecution of applications for United States and foreign letters patent on said invention, for litigation regarding said letters patent, or for the purpose of protecting title to said invention or letters patent therefore.

Dated this *13th* day of *December*, 2000.

_____
John J. Daniels
U.S. Citizen

STATE OF ~~NEW YORK~~ *Connecticut*    )
                                        : ss.
COUNTY OF NEW ~~YORK~~ *Haven*          )

On *December 13*, 2000, before me personally appeared John J. Daniels, known to me to be the person described and who signed the foregoing Assignment in my presence and acknowledged under oath before me that he has read the same and know the contents thereof and that he executed the same as his free act and deed and for the purposes set forth therein.

_____
NOTARY PUBLIC
Residing at New York, New York .
My Commission Expires:_____

SUSAN DeBARBER
**NOTARY PUBLIC**
MY COMMISSION EXPIRES JULY 31, 2005

1

## ATTACHMENT C

-- A method for pausing the display of a received signal containing a television program, comprising the steps of:

receiving the signal using a receiver connected to a television set;

recording the received signal using a recording apparatus connected to the television set, the recording apparatus having recording and playback capabilities for recording the signal and playing back the signal so that the television program may be viewed on the television set;

viewing the recorded television program on the television set as it is being recorded by the recording apparatus;

during the ongoing recording of the signal, delaying by a viewer-initiated time the playing back and viewing on the television set of a previously recorded portion of the television program while continuing to record the television program, so that viewing of the delayed portion of the television program and portions recorded subsequent thereto is delayed by the viewer-initiated time. --

For the purposes of this Agreement, a claim having substantially the same scope as the foregoing claim will be deemed by the parties hereto to satisfy the requirements of Section 3(B) of this Agreement. A claim will be considered to be of substantially the same scope as the foregoing claim only if a person would literally infringe such a claim whenever he literally infringes the foregoing claim. If issuance of a US patent containing the foregoing claim (or a claim having substantially the same scope) requires the acceptance by the US Patent & Trademark Office of an affidavit swearing behind a reference, the consideration set forth in Section 3(B) of this Agreement shall still be due and payable.

John J. Daniels _____    1/16/01
Date

Bruce L. Adams _____    1/16/01
Date

Paul R. Hoffman _____    1/16/01
Date