UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| INTELLIVISION, a Joint Venture, ) | |
| ) | ECF CASE |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | 07-CV-4079(JGK) |
| v. ) | |
| ) | |
| MICROSOFT CORPORATION, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## DECLARATION OF BRUCE D. KATZ, ESQ.

1.  I, Bruce D. Katz, Esq., am counsel for plaintiff Intellivision in the above-captioned matter. I submit this declaration in opposition to the motion filed by defendant Microsoft Corporation ("Microsoft") on August 17, 2007 to dismiss the Amended Complaint filed by Intellivision in the above-captioned action on July 27, 2007.

2.  In support of its motion to dismiss, Microsoft seeks to introduce as Exhibits 1-9 of the Landy Declaration various publications dated June 2000 through January 2001 in an effort to demonstrate that Microsoft did not conceal its "Ultimate TV" product from Intellivision. Based upon the existence of these publications (and a 1997 Microsoft press release), Microsoft argues that its Ultimate TV product was so widely publicized that, as a matter of law, Intellivision cannot demonstrate reasonable reliance on Microsoft's misrepresentations.

3.  Microsoft's argument fails for a number of reasons. First, Microsoft has neither authenticated nor laid a proper foundation for any of the publications it seks to introduce in the context of its motion. The Court should not consider any of these publications because Microsoft has failed to demonstrate that any of the publications were available online to Intellivision in 2000 or 2001 when they were allegedly published.

4.      Specifically, Microsoft's unsupported request for the Court to take judicial notice of these publications should be denied.  Microsoft has not met its burden of establishing that any of the alleged publications was available to Intellivision in 2000 or 2001, much less that they were so notoriously well known that judicial notice may be taken of the widespread publicity of Microsoft's Ultimate TV product.

5.      For instance, the Microsoft press releases attached as Exhibits 1-6 of the Landy Declaration were all obtained by Microsoft's counsel in August 2007 by downloading them from a website maintained by Microsoft.  Microsoft's counsel has not attempted to establish that any of these press releases were accessible to Intellivision through Microsoft's website or otherwise at any time throughout 2000 or January 2001.

6.      However, even if the press releases introduced as Exhibits 1-6 of the Landy Declaration were available for viewing on the Internet in 2000 and/or January 2001, it would have been extraordinarily difficult for Intellivision to have uncovered them in 2000 or January 2001.  In this regard, on July 18, 2007, I conducted a search of Microsoft's press release website (www.microsoft.com/presspass).  My search uncovered more than 427 press releases issued by Microsoft from June 2000 through January 2001 (among hundreds of millions of other online articles concerning Microsoft's products and activities).  Without studying all of these materials, there would have been no way aside from happenstance for Intellivision to have become aware of Microsoft's misrepresentations.

7.      Similarly, the extracts of trade publications and the like attached as Exhibits 7-9 to the Landy Declaration were downloaded by Microsoft's counsel in August 2001 from a database accessed through the LEXIS/NEXIS service.  However, Microsoft's counsel has not demonstrated that any such publications were accessible to Intellivision online in 2000 or January 2001.  It is

entirely plausible that these articles were posted to the Internet long after their alleged original publication dates.  In that case, they would not have been available to Intellivision.

8. Aside from mere happenstance, there was no practical way in 2000 or January 2001 for Intellivision to have uncovered any of the publications relied on by Microsoft.  During the preparation of this declaration on September 14, 2007, I conducted various online searches using the Yahoo search engine in an effort to uncover information concerning Microsoft's development activities.

9. Specifically, attached hereto as **Exhibit A** is a true and correct copy of Page 1 of my September 14, 2007 online search results for the term "Microsoft" (in quotes) conducted using the Yahoo search engine.  As can be seen, the search yielded some 808 *million* search results (each of which comprises and/or leads to one or more additional websites).  I have reviewed many of these search results and found the vast majority to be completely irrelevant to Microsoft's development activities in the field of interactive television.

10. Even a narrowly-tailored Yahoo search designed to yield results relating to Microsoft's endeavors into the pausing of live television ("Microsoft and pause") yields over six million search results.  Attached hereto as **Exhibit B** is a true and correct copy of page 1 of my online search results for the search terms "Microsoft and Pause" (in quotes).  As can be seen, the search yielded some 6,490,000 search results (each of which comprises and/or leads to one or more additional websites).  I have reviewed many of these search results.  Most are entirely irrelevant to any of Microsoft's development activities in the field of interactive television.

11. Although my searches were conducted in 2007, Microsoft was substantially as large a company in 2000 and 2001 as it is today and was the subject of equally as substantial press coverage.  Thus, it can be seen that there was no practical way in 2000 or January 2001 for Intellivision to have uncovered any of the publications relied on by Microsoft.  Microsoft's counsel was able to uncover

3

the articles it has introduced in connection with the instant motion to dismiss based upon hindsight. Absent knowledge of a particular product planned for release by Microsoft (i.e., "PVR" or "DVR") or the specific trademark under which Microsoft intended to release that product ("Ultimate TV"), Intellivision did not have the benefit of hindsight afforded to Microsoft's counsel and could not have conducted a targeted search as done by Microsoft's counsel.

12. Attached hereto as **Exhibit C** is a true and correct copy of U.S. Patent Appln. Ser. No. 10/131,661 ("the '661 application"), filed on April 24, 2002 and naming Pradhan S. Rao as a co-inventor. The subject matter of the '661 application concerns the prioritized recording of television programs and the like.

13. Attached hereto as **Exhibit D** is a true and correct copy of U.S. Patent Appln. Ser. No. 11/012,471 ("the '471 application"), filed on December 15, 2004 and naming Pradhan S. Rao as a co-inventor. The subject matter of the '471 application concerns the searching of an electronic programming guide used with a device capable of recording television programs and the like.

14. Attached hereto as **Exhibit E** is a copy of U.S. Patent Appln. Ser. No. 11/069,627 ("the '627 application"), filed on March 1, 2005 and naming Pradhan S. Rao as a co-inventor. The subject matter of the '627 application concerns the recording of television programs and the like based on an automatically-generated viewer profile.

15. It is my understanding that Pradhan S. Rao is a registered patent attorney employed by defendant Microsoft Corporation and charged with the responsibility of prosecuting the patent applications assigned to Microsoft by plaintiff Intellivision pursuant to the Agreement at issue in this litigation.

16. In its Amended Complaint, Intellivision has alleged that the parties' Agreement requires Microsoft to make an $850,000 payment upon allowance of a patent claim in any of the Intellivision patent applications having the language set forth in Attachment C of the parties'

Agreement. Intellivision's Amended Complaint further alleges that Microsoft has not diligently prosecuted the Intellivision patent applications assigned to Microsoft and has thereby prevented Intellivision from receiving the $850,000 payment. Intellivision further alleges that Microsoft has instead pursued its own patent applications, attached as Exhibits C-E hereto, to avoid payment to Intellivision under the parties' Agreement.

I declare that the foregoing is true and correct under penalty of perjury.

Dated: September 24, 2007
New York, New York

Bruce D. Katz, Esq.