UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
INTELLIVISION, a Joint Venture,  :
                                 :
              Plaintiff,         :
                                 :  Civil Action No. 07 CV 4079 (JGK)
        - against -              :  ECF Case
                                 :
MICROSOFT CORPORATION,           :
                                 :
              Defendant.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF MICROSOFT CORPORATION
IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

SULLIVAN & CROMWELL LLP
Steven L. Holley (SH2485)
Michael P. Geiser (MG1123)
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Microsoft Corporation*

October 9, 2007

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................2

I.     Intellivision's Fraudulent Inducement Claim Is Barred by the Statute of Limitations. ........................................................................................................................2

II.    Having Ratified the Agreement, Intellivision May Not Now Assert a Fraudulent Inducement Claim. ......................................................................................3

     A.    Intellivision Ratified the Agreement by Accepting Its Benefits .................. 3

     B.    Intellivision's "Estoppel" Argument Is Baseless. ........................................4

III.   Intellivision Could Not Reasonably Have Relied on Microsoft's Alleged Misrepresentations. ..........................................................................................................4

IV.   The Release and Waiver of Liability in the Agreement Preclude Intellivision's Fraudulent Inducement Claim. ......................................................................................7

V.    Intellivision Has Not Stated a Valid Mutual Mistake Claim. .................................7

VI.   Intellivision Has Not Asserted Valid Claims for Breach of Fiduciary Duty or Negligent Misrepresentation. ..........................................................................................8

     A.    Microsoft Owed No Fiduciary Duty to Intellivision. ..................................8

     B.    Intellivision's Negligent Misrepresentation Claim Similarly Fails. ............9

CONCLUSION ............................................................................................................................ 11

# **TABLE OF AUTHORITIES**

Page

**CASES**

*Ahern* v. *Scholz*,
    85 F.3d 774 (1st Cir. 1996)................................................................................................8

*Apple Records, Inc.* v. *Capitol Records, Inc.*,
    137 A.D.2d 50, 529 N.Y.S.2d 279 (1st Dep't 1988)..........................................................9

*Bank of Am. Corp.* v. *Lemgruber*,
    385 F. Supp. 2d 200 (S.D.N.Y. 2005) ............................................................................5, 8

*Danann Realty Corp.* v. *Harris*,
    5 N.Y.2d 317, 184 N.Y.S.2d 599 (1959).............................................................................7

*Dimon Inc.* v. *Folium, Inc.*,
    48 F. Supp. 2d 359 (S.D.N.Y. 1999) ..................................................................................5

*George W. Haxton & Son, Inc.* v. *Rich*,
    267 A.D. 492, 47 N.Y.S.2d 501 (3d Dep't 1944)................................................................2

*Glazer* v. *LoPreste*,
    278 A.D.2d 198, 717 N.Y.S.2d 256 (2d Dep't 2000).........................................................5

*GLM Corp.* v. *Klein*,
    665 F. Supp. 283 (S.D.N.Y. 1987) .....................................................................................8

*Gramercy Equities Corp.* v. *Dumont*,
    72 N.Y.2d 560, 534 N.Y.S.2d 908 (1988).........................................................................2

*Litton Industries, Inc.* v. *Lehman Bros. Kuhn Loeb Inc.*
    767 F. Supp. 1220 (S.D.N.Y. 1991) ...................................................................................9

*Mandelblatt* v. *Devon Stores, Inc.*,
    132 A.D.2d 162, 521 N.Y.S.2d 672 (1st Dep't 1987).......................................................8

*Manhattan Motorcars, Inc.* v. *Automobili Lamborghini*,
    2007 U.S. Dist. LEXIS 49641 (S.D.N.Y. July 9, 2007) ...................................................10

*McMahan & Co.* v. *Donaldson, Lufkin & Jenrette Securities Corp.*,
    727 F. Supp 833 (S.D.N.Y. 1989) ......................................................................................2

*Patell Indus. Mach. Co.* v. *Toyoda Machinery U.S.A., Inc.*,
    880 F. Supp. 96 (N.D.N.Y. 1995)........................................................................................5

**TABLE OF AUTHORITIES**
(*Continued*)

Page

*PPI Enters. (U.S.)* v. *Del Monte Foods Co.*,
 2003 U.S. Dist. LEXIS 16006 (S.D.N.Y. Sept. 11, 2003)..............................................10

*Proforma Partners, LP* v. *Skadden Arps Slate Meagher & Flom LLP*,
 280 A.D.2d 303, 720 N.Y.2d 139 (1st Dep't 2001) .......................................................2

*Rogers* v. *Sterling Foster & Co.*,
 222 F. Supp. 2d 312 (S.D.N.Y. 2002) .............................................................................6

*Sabo* v. *Delman*,
 3 N.Y.2d 155, 164 N.Y.S.2d 714 (1957)........................................................................7

*Tahini Investments, Ltd.* v. *Bobrowsky*,
 99 A.D.2d 489, 470 N.Y.S.2d 431 (2d Dep't 1984).......................................................5

*Wholesale Service Supply Corp.* v. *State*,
 201 Misc. 56, 103 N.Y.S.2d 820 (Ct. Cl. 1951) .............................................................4

*Wiener* v. *Lazard Freres & Co.*,
 241 A.D.2d 114, 672 N.Y.S.2d 8 (1st Dep't 1998) ........................................................8

**STATUTES**

CPLR § 202 ................................................................................................................2, 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
INTELLIVISION, a Joint Venture,

                        Plaintiff,

          - against -                Civil Action No. 07 CV 4079 (JGK)
                                          ECF Case

MICROSOFT CORPORATION,

                       Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF MICROSOFT CORPORATION
IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

Microsoft Corporation ("Microsoft") respectfully submits this reply memorandum in support of it motion to dismiss the Amended Complaint ("Am. Comp.").

## PRELIMINARY STATEMENT

Despite having enjoyed the benefit of its bargain for more than six years, five of them after it allegedly learned of the facts that form the basis of its claims, Intellivision now seeks to walk away from that Agreement. Microsoft paid Intellivision $1,000,000 for its intellectual property rights relating to interactive television, a large sum given that Intellivision had no issued patents, only patent applications of questionable value.

The rights and obligations of Microsoft and Intellivision are carefully set forth in the Agreement, and Intellivision is not claiming that Microsoft breached the Agreement. Intellivision has apparently developed misgivings about the deal it made with Microsoft in January 2001, but regret is not a cognizable basis for abrogating the Agreement more than six years after it was executed. All of Intellivision's claims should be dismissed.

# ARGUMENT

I. **Intellivision's Fraudulent Inducement Claim Is Barred by the Statute of Limitations.**

Intellivision argues that because it allegedly maintains an office in New York in addition to its principal place of business in Connecticut, it is a resident of both New York and Connecticut for purposes of New York's borrowing statute, NY CPLR § 202. The cases on which Intellivision relies apply only to individuals, not to a joint venture suing in its own name, which can have only one legal residence.

New York courts treat a joint venture like a partnership. *See Gramercy Equities Corp.* v. *Dumont*, 72 N.Y.2d 560, 565, 534 N.Y.S.2d 908, 911 (1988) ("[A joint venture] is in a sense a partnership for a limited purpose, and it has long been recognized that the legal consequences of a joint venture are equivalent to those of a partnership."); *see also George W. Haxton & Son, Inc.* v. *Rich*, 267 A.D. 492, 495, 47 N.Y.S.2d 501, 503 (3d Dep't 1944). Under New York's borrowing statute, "[w]hen no individual partner is suing or being sued, a partnership's 'sole legal residence' under New York Law is where it maintains its principal place of business." *McMahan & Co.* v. *Donaldson, Lufkin & Jenrette Securities Corp.*, 727 F. Supp 833, 834 (S.D.N.Y. 1989); s*ee also Proforma Partners, LP* v. *Skadden Arps Slate Meagher & Flom LLP*, 280 A.D.2d 303, 303, 720 N.Y.2d 139, 140 (1st Dep't 2001).

The Agreement recites that Intellivision is a "joint venture having its principal place of business at 156 Roosevelt Drive, Unit A, Seymour Connecticut, 06483" (Am. Comp. Ex. 1 at 1), and the Amended Complaint does not contend otherwise. Indeed, Intellivision readily acknowledges "[t]hat Intellivision had its principal place of business in Connecticut." (Mem. in Opp. at 6.) Under NY CPLR § 202, that is the end of the matter.

Intellivision — a joint venture and the only plaintiff in this action — is not a New York resident for purposes of NY CPLR § 202. Its sole legal residence was and is Connecticut. Under New York's borrowing statute, Connecticut's three-year statute of limitations applies, barring Intellivision's fraudulent inducement claim.

### II. Having Ratified the Agreement, Intellivision May Not Now Assert a Fraudulent Inducement Claim.

#### A. Intellivision Ratified the Agreement by Accepting Its Benefits.

Intellivision admits that it became aware of Microsoft's UltimateTV product, and thereby learned of Microsoft's alleged misrepresentations, in 2002 at the latest. But Intellivision did not assert its fraudulent inducement claim until January 2007. During that time, Intellivision continued to treat the $1,000,000 it received from Microsoft as its own. It also continued to hope for an additional $850,000 to which it would have become entitled had the U.S. Patent and Trademark Office ("PTO") issued a patent to Microsoft containing the claim language set forth in Attachment C of the Agreement. In other words, despite being in possession of the very knowledge Intellivision claims would have led it to reject the Agreement *ab initio*, Intellivision decided it was better off under the Agreement than it would have been had the Agreement never been executed.

The assertion that Microsoft sought to persuade Intellivision it would be better off financially if it did not sue back in 2002 is unavailing. With knowledge that UltimateTV existed, Intellivision was in a position to judge the financial impact of a lump sum royalty as opposed to a per-unit royalty, just as Intellivision claims it would have been had it known of UltimateTV before executing the Agreement.

In seeking to avoid the Agreement five years after the fact, Intellivision is using a fraudulent inducement claim in an effort to convert the Agreement into some sort of

revocable option. This Court should not sanction such gamesmanship, which is the sort of "fast and loose" behavior forbidden under New York law. *See Wholesale Service Supply Corp.* v. *State*, 201 Misc. 56, 64, 103 N.Y.S.2d 820, 828 (Ct. Cl. 1951).

### B. Intellivision's "Estoppel" Argument Is Baseless.

Intellivision's argument that it was lulled into inaction by Microsoft's assurances that the PTO was likely to issue a patent that would trigger the $850,000 payment specified in Paragraph 3B of the Agreement is disingenuous. That argument contradicts the central claim in the Amended Complaint, namely, that had Intellivision known of Microsoft's UltimateTV product prior to execution of the Agreement, it never would have agreed to lump sum royalties but would have insisted on per-unit royalties.[1] Consequently, the prospect of receiving another lump sum royalty payment could not be what caused Intellivision to defer asserting its fraudulent inducement claim, and does not permit Intellivision to sidestep the fact that it ratified the Agreement.

### III. Intellivision Could Not Reasonably Have Relied on Microsoft's Alleged Misrepresentations.

As a matter of law, Intellivision could not justifiably have relied on Microsoft's alleged misstatements because Microsoft's activities in the field of interactive television

---

[1] It is, of course, Intellivision's prerogative to plead alternative theories, but where, as here, those theories are mutually contradictory, whichever theory the Court analyzes is fatal to Intellivision's fraudulent inducement claim. If Intellivision chose not to sue after learning about UltimateTV because of a prospect it would receive an additional $850,000 lump sum royalty payment, then Microsoft's alleged misrepresentations regarding UltimateTV cannot have been material to Intellivision's decision to enter into a contract that provided only for such lump sum royalties. If, on the other hand, Intellivision would never have accepted anything but per-unit royalties had it known about UltimateTV, then representations by Microsoft about the likelihood of an $850,000 lump sum royalty payment cannot be what motivated Intellivision's decision not to file suit back in 2002.

were widely-known, as any reasonable inquiry would have revealed.  (*See* Landy 8/17/07 Decl. Exs. 1-9.)  Intellivision argues that Microsoft's development and marketing of UltimateTV was "peculiarly within" Microsoft's knowledge, but the cases on which it relies involve dramatically different circumstances than those presented in this case.

In *Tahini Investments, Ltd*. v. *Bobrowsky,* 99 A.D.2d 489, 490, 470 N.Y.S.2d 431, 432 (2d Dep't 1984), for example, the information at issue was the existence of drums containing hazardous materials buried on property purchased from the defendant.  In *Dimon Inc.* v. *Folium, Inc.,* 48 F. Supp. 2d 359, 362, 372 (S.D.N.Y. 1999), the information at issue was a complicated accounting scheme that even the defendant's auditors had failed to detect.  *See also Bank of Am. Corp*. v. *Lemgruber*, 385 F. Supp. 2d 200, 231 (S.D.N.Y. 2005) (defendants were alleged to have executed "a series of 'sham covering transactions' . . . [that] could not have been discovered by simply conducting a due diligence review" of defendants' business records).

Intellivision's reliance on *Patell Indus. Mach. Co*. v. *Toyoda Machinery U.S.A., Inc*., 880 F. Supp. 96, 98 (N.D.N.Y. 1995) is particularly misplaced.  The court in *Patell*, in finding a question of fact as to whether information was peculiarly within the knowledge of defendant, noted that there was not "any public information that would inform the true nature of the representations."  In sharp contrast, the information at issue here was published in literally hundreds of magazine and newspaper articles.  That makes this case indistinguishable from *Glazer* v. *LoPreste*, 278 A.D.2d 198, 199, 717 N.Y.S.2d 256, 258 (2d Dep't 2000), in which the court held that "the information that was allegedly withheld was 'not peculiarly within the knowledge of the seller or unlikely to be discovered by a prudent purchaser exercising due care with respect to the subject transaction'" because "local

newspapers, including the newspaper serving the community in which the plaintiffs lived before the purchase, had been publishing articles regarding [the information] for at least two years prior to the sale in question."

Intellivision seeks to prevent the court from taking judicial notice of widespread publicity surrounding UltimateTV by arguing that articles addressing that subject were not attached to or incorporated by reference in the Amended Complaint. (Mem. in Opp. at 18.) However, courts have taken judicial notice of extensive publicity in similar situations. For example, in *Rogers* v. *Sterling Foster & Co.*, 222 F. Supp. 2d 312, 321 (S.D.N.Y. 2002), the defendants in a securities fraud case sought dismissal of the action on the grounds that it was barred by the statute of limitations. In analyzing whether plaintiffs were on "inquiry notice" for purposes of the statute of limitations, the court took judicial notice of dozens of articles "to show the widespread media attention [the defendant's] alleged conduct received." *Id*. Responding to the argument that the articles were inadmissible hearsay, the court stated:

> The Court takes judicial notice only of the fact that these articles were published, not of the truth of their contents. Moreover, the fact that these articles were published is "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." Fed.R.Evid. 201(b)(2). Indeed, one need only look at the issues of these various publications to confirm that the articles were, in fact, published.

*Id*. at 321 (internal citation omitted).

As in *Sterling*, the Court should take judicial notice of the many articles published about UltimateTV and Microsoft's other activities in the field of interactive television. (Landy 8/17/07 Decl. Exs. 8, 9.) Intellivision could not reasonably have relied on misrepresentations allegedly made by Microsoft that were diametrically opposed to information contained in these articles.

### IV. The Release and Waiver of Liability in the Agreement Preclude Intellivision's Fraudulent Inducement Claim.

In arguing that the explicit release and waiver of liability in the Agreement do not bar its fraudulent inducement claim (Mem. in Opp. at 25), Intellivision improperly relies on *Sabo* v. *Delman*, 3 N.Y.2d 155, 161, 164 N.Y.S.2d 714, 718 (1957). In *Danann Realty Corp.* v. *Harris*, 5 N.Y.2d 317, 320-21, 184 N.Y.S.2d 599, 601-602 (1959), the Court of Appeals noted that the rule in *Sabo* applies only to a general merger clause, and held that a specific disclaimer of reliance on oral representations destroys a plaintiff's ability to rely on such representations. This Court should be guided by *Danann* rather than *Sabo*.

As Intellivision notes, Microsoft is not relying on the general merger clause in the Agreement. (Mem. in Opp. at 24 n.8.) Rather, Microsoft is relying on the broad release in Paragraph 5 of the Agreement, which expressly states that Intellivision "absolutely and forever releases and discharges Microsoft . . . from any and all . . . representations . . . relating to the general subject matter described in the Patent Applications." (Am. Comp. Ex. 1 at 3.) Microsoft is also relying on the disclaimer of liability in Paragraph 6.6 of the Agreement, which states that neither party shall be liable to the other for damages of any kind whatsoever, even if a party has been warned of the possibility of such damages. Together, these bargained-for provisions demonstrate a shared intention to preclude precisely the sort of fraudulent inducement claim that Intellivision is asserting in this case.

### V. Intellivision Has Not Stated a Valid Mutual Mistake Claim.

Intellivision's claim for rescission based on mutual mistake rests on the strange notion that Microsoft actually intended to pay Intellivision per-unit royalties even though Microsoft consistently refused to do so. With the exception of Intellivision's conclusory allegation in Paragraph 70 of the Amended Complaint, there is no factual basis for the

contention that Microsoft had any intention to pay Intellivision something other than the lump sum royalties provided for in the Agreement.

To the contrary, Paragraph 22 of the Amended Complaint alleges that Microsoft refused to pay Intellivision a per-unit royalty because of the difficulty in valuing its intellectual property rights. According to the Amended Complaint, Microsoft gave at least two reasons. One reason was that Microsoft had not developed any products incorporating what Intellivision refers to as its "core technology." The other reason was that none of Intellivision's patent applications had yet matured into issued patents. Even if Microsoft were mistaken as to the first reason, there is no allegation that it was mistaken as to the second, which was an independent basis for refusing to pay Intellivision per-unit royalties.

## VI. Intellivision Has Not Asserted Valid Claims for Breach of Fiduciary Duty or Negligent Misrepresentation.

### A. Microsoft Owed No Fiduciary Duty to Intellivision.

Intellivision's argument that an arm's-length assignment of its intellectual property rights to Microsoft created an ongoing fiduciary relationship is groundless. Intellivision cites a number of cases discussing the nature of fiduciary relationships, but none of them involves a situation analogous to the transaction between Microsoft and Intellivision. *Bank of Am. Corp.* v. *Lemgruber*, 385 F. Supp. 2d 200, 224 (S.D.N.Y. 2005) and *GLM Corp.* v. *Klein,* 665 F. Supp. 283, 286 (S.D.N.Y. 1987) both concern the duty owed to a corporation by its officers and directors. *Mandelblatt* v. *Devon Stores, Inc.*, 132 A.D.2d 162, 168, 521 N.Y.S.2d 672, 676 (1st Dep't 1987) concerns the duty owed by a consultant to the company employing him to act for its benefit. *Wiener* v. *Lazard Freres & Co.*, 241 A.D.2d 114, 122, 672 N.Y.S.2d 8, 14 (1st Dep't 1998) concerns a borrower and a lender who entered into a "collective effort" in which the lender acted as the borrower's agent in negotiations. *Ahern*

-8-

v. *Scholz*, 85 F.3d 774, 794 (1st Cir. 1996) and *Apple Records, Inc.* v. *Capitol Records, Inc.*, 137 A.D.2d 50, 57, 529 N.Y.S.2d 279, 283 (1st Dep't 1988) both involved parties in long-term relationships, not parties to a one-off sale transaction.

*Litton Industries, Inc.* v. *Lehman Bros. Kuhn Loeb Inc*. 767 F. Supp. 1220, 1231-32 (S.D.N.Y. 1991), which involved a company that provided confidential information to an investment bank in the context of seeking advice, contradicts the proposition advanced by Intellivision that a fiduciary relationship can be created merely by one party placing trust in another.  As the court held, "[t]he mere unilateral investment of confidence by one party in the other ordinarily will not suffice to saddle the parties with the obligations and duties of a confidential relationship."  *Id.* (internal citations omitted).

Where Microsoft and Intellivision intended to impose obligations on one another, those obligations are clearly set forth in the Agreement.  For example, Paragraph 2.3 of the Agreement imposes a duty on Intellivision to assist Microsoft in prosecuting the assigned patent application and a duty on Microsoft to provide Intellivision with copies of papers sent to or received from the PTO.  There is nothing in the Agreement that imposes a fiduciary duty on Microsoft to act in Intellivision's interests.  In such circumstances, Intellivision's breach of fiduciary duty claim cannot stand.

**B.     Intellivision's Negligent Misrepresentation Claim Similarly Fails.**

Intellivision's negligent misrepresentation claim combines the fatal flaws of its fraudulent inducement claim and its breach of fiduciary claim.  Given the open and notorious nature of Microsoft's activities in the field of interactive television, Intellivision could not reasonably have relied on Microsoft's alleged misrepresentations, whether those representations were fraudulently or negligently made.  Similarly, the single arm's-length

transaction between Microsoft and Intellivision does not rise to the fiduciary duty required for a negligent misrepresentation claim.

*Manhattan Motorcars, Inc.* v. *Automobili Lamborghini*, 2007 U.S. Dist. LEXIS 49641, *19 (S.D.N.Y. July 9, 2007), on which Intellivision heavily relies, does not support the proposition that a single arms-length transaction can give rise to a fiduciary duty. That case involved a long-term relationship between an automobile manufacturer and a dealer that gave the manufacturer extraordinary power over the dealer's business. *Id*. at *32-33. Absent such exceptional circumstances — not present here — Intellivision cannot escape the rule that "a simple contractual relationship . . . does not constitute the kind of special relationship necessary for a negligent misrepresentation claim." *Id*. at *20.[2]

---

[2]   Intellivision's reliance on *Manhattan Motorcars* is odd given that the case provides yet another basis for dismissing the negligent misrepresentation claim, *i.e.*, New York's "economic loss rule." 2007 U.S. Dist. LEXIS 49641 at *34-35. Unless Intellivision suffered injury to its person or property, which is not alleged in the Amended Complaint, it cannot recover for economic loss of the type remediable in a breach of contract action. *See PPI Enters. (U.S.)* v. *Del Monte Foods Co.,* 2003 U.S. Dist. LEXIS 16006, *27 (S.D.N.Y. Sept. 11, 2003) (dismissing negligent misrepresentation claim where plaintiff alleged only economic loss).

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Microsoft's opening memorandum, the Amended Complaint should be dismissed in its entirety with prejudice.

Dated: New York, New York
October 9, 2007

Respectfully submitted,

_____
SULLIVAN & CROMWELL LLP
Steven L. Holley (SH2485)
Michael P. Geiser (MG1123)
125 Broad Street
New York, New York  10004
(212) 558-4000

*Attorneys for Microsoft Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2007, I caused to be served by hand a true copy of Microsoft Corporation's Reply Memorandum in Support of Its Motion to Dismiss Intellivision's Amended Complaint, on plaintiff's counsel Bruce D. Katz, Esq., 225 Broadway, 37th Floor, New York, New York 10007.


Michael P. Geiser