UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

INTELLIVISION, a Joint Venture, BRUCE
ADAMS, JOHN DANIELS and PAUL HOFFMAN,

                 Plaintiffs,

        v.

MICROSOFT CORPORATION,

                 Defendant.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)

ECF CASE

CIVIL ACTION NO.

07-CV-4079(JGK)(MHD)


**MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION TO
INCLUDE ADDITIONAL EVIDENCE IN SUMMARY JUDGMENT RECORD**


SULLIVAN & CROMWELL LLP
Steven L. Holley (SH2485)
Nuri G. Frame (NF3456)
125 Broad Street
New York, New York  10004
(212) 558-4000

*Attorneys for Defendant
Microsoft Corporation*


February 7, 2011

## TABLE OF CONTENTS

**Page**

ARGUMENT ...............................................................................................................2

I.    INTELLIVISION'S BELATED REQUEST TO ADD DOCUMENTS TO
      THE RECORD SHOULD BE DENIED ..........................................................2

II.   THE DOCUMENTS INTELLIVISION SEEKS TO ADD TO THE RECORD
      DO NOT DEFEAT MICROSOFT'S MOTION FOR SUMMARY
      JUDGMENT ......................................................................................................6

      A.    Intellivision Itself, Not Intellivision's Principals Individually,
            Owned the Patent Applications Assigned to Microsoft ..........................................7

      B.    Intellivision's Principal Place of Business Was in Connecticut ...........................11

III.  MICROSOFT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE
      GRANTED EVEN IF INTELLIVISION IS ALLOWED TO SUPPLEMENT
      THE RECORD ................................................................................................12

CONCLUSION ........................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*A.B.C. Home Furnishings, Inc.* v. *Town of E. Hampton,*
  964 F. Supp. 697 (E.D.N.Y. 1997) ....................................................................2

*Beik* v. *Thorsen,*
  363 A.2d 1030 (Conn. 1975) ...........................................................................12

*Canale* v. *Manco Power Sports, LLC,*
  2010 WL 2771871 (S.D.N.Y July 10, 2010) ....................................................5

*Certain Underwriters at Lloyd's, London* v. *St. Joe Minerals Corp.,*
  90 F.3d 671 (2d Cir. 1996) ...............................................................................3

*Davidson* v. *Keenan,*
  740 F.2d 129 (2d Cir. 1984) .............................................................................3

*Davis* v. *Wakelee,*
  156 U.S. 680 (1895) ..........................................................................................8

*Duttweiler* v. *Upstate Bldg. Maint. Cos.,*
  2011 WL 263174 (2d Cir. Jan. 28, 2011) .........................................................2

*Gladstone Ford* v. *N.Y.C. Transit Auth.,*
  43 F. App'x 445 (2d Cir. 2002) ........................................................................3

*Harte Nissan, Inc.* v. *Mkt Scan Info.,*
  2003 WL 352948 (Conn. Super. Ct. Jan. 17, 2003) ........................................11

*Lattanzio* v. *Dep't of Higher Educ.,*
  190 F. App'x. 27 (2d Cir. 2006) .......................................................................4

*New Hampshire* v. *Maine,*
  532 U.S. 742 (2001) .......................................................................................8, 9

*Pegram* v. *Hendrich,*
  530 U.S. 211 (2000) ..........................................................................................9

*Perry* v. *Spano,*
  2009 WL 2030370 (2d Cir. July 10, 2009) ....................................................3, 4

*Pioneer Inv. Servs. Co.* v. *Brunswick Assoc. Ltd. P'ship,*
  507 U.S. 380 (1993) ..........................................................................................3

## TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

### CASES
*(continued)*

*Silivanch* v. *Celebrity Cruises, Inc.*,
    333 F.3d 355 (2d Cir. 2003) ...................................................................................3

*State St. Bank & Trust Co.* v. *Inversiones Errazuriz Limitada*,
    374 F.3d 158 (2d Cir. 2004) ...................................................................................5

*Triangle Underwriters Inc.* v. *Honeywell, Inc.*,
    604 F.2d 737 (2d Cir. 1979) .................................................................................11

### RULES

Fed. R. Civ. P. 6....................................................................................................3

Fed. R. Civ. P. 56...............................................................................................2, 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| INTELLIVISION, a Joint Venture, BRUCE ADAMS, JOHN DANIELS and PAUL HOFFMAN, | ) ) ) |
| Plaintiffs, | ) ECF CASE ) |
| v. | ) ) |
| MICROSOFT CORPORATION, | ) CIVIL ACTION NO. ) |
| Defendant. | ) 07-CV-4079(JGK)(MHD) ) |
| | ) ) ) |

_____

## MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION TO INCLUDE ADDITIONAL EVIDENCE IN SUMMARY JUDGMENT RECORD

Defendant Microsoft Corporation ("Microsoft") respectfully submits this opposition to Plaintiffs' tardy motion to add numerous documents to the record on Microsoft's motion for summary judgment. That motion for summary judgment was filed on April 22, 2010, was fully briefed on July 9, 2010, and was argued on December 8, 2010. It is far too late for Intellivision to be placing additional documents before the Court—especially when those documents have been in Intellivision's possession since before the original complaint was filed in this case in January 2007. There is no excuse for such neglect. Moreover, Intellivision's accusation that Microsoft "omitted" one of the documents from the copy of the assignment agreement that Microsoft submitted in support of its motion for summary judgment is baseless. That same version of the assignment agreement was attached to Intellivision's first amended complaint, and no other version of the assignment agreement has ever surfaced in this case. Finally, even if the Court decided to receive the documents Intellivision wants to add to the

record at this late date, those documents do not establish the existence of any genuine issue of material fact that defeats Microsoft's motion for summary judgment.

Accordingly, Intellivision's motion to supplement the record should be denied and Microsoft's motion for summary judgment should be granted.[1]

## ARGUMENT

## I.   INTELLIVISION'S BELATED REQUEST TO ADD DOCUMENTS TO THE RECORD SHOULD BE DENIED

In deciding Microsoft's motion for summary judgment, the Court need only consider materials that were made part of the record in a timely manner and that are referred to by the parties in their briefs.  Fed. R. Civ. P. 56(c)(3) ("court need consider only the cited materials").  It is incumbent on the parties to place in the record all materials they want the Court to consider in deciding a motion for summary judgment *before* briefing is completed.[2]  *See*, *e.g.*, *Duttweiler* v. *Upstate Bldg Maint. Cos.*, 2011 WL 263174, *1 (2d Cir. Jan. 28, 2011).  More than six months after Microsoft's motion for summary judgment was fully briefed and more than a month after oral argument on that motion, Intellivision seeks to supplement the record with documents that were in its possession more than four years ago when this case was filed.  That is completely improper.

---

[1]    In addition to the documents discussed in this response, Intellivision said it wanted to supplement the record with "[s]worn declarations attesting to the truth of the contents of plaintiffs' expert reports under penalty of perjury" and "[a]n executed copy of the Declaration of plaintiff Paul Hoffman."  (Intellivision Br. at 1.)  Incredibly, none of those documents are among the exhibits to the declaration Intellivision's counsel filed in support of the motion to supplement the record.

[2]    Intellivision, without prior permission, sent substantive letter briefs to the Court on December 7, 2010, January 4, 2011, January 10, 2011 and February 2, 2011.  These submissions were all unauthorized sur-replies and thus should be disregarded.  *See*, *e.g.*, *A.B.C. Home Furnishings, Inc.* v. *Town of E. Hampton*, 964 F. Supp. 697, 703 (E.D.N.Y. 1997) (papers filed after close of briefing "are in the nature of sur reply, and sur sur reply, which will not be considered because they were filed without leave of the Court").

When a party fails to abide by the requirements of Rule 56 and seeks to rely on new evidence in opposing a motion for summary judgment after the record is closed, such a motion to supplement the record is governed by Rule 6(b)(1) of the Federal Rules of Civil Procedure.  *See, e.g., Gladstone Ford* v. *N.Y.C. Transit Auth.*, 43 F. App'x 445, 449 (2d Cir. 2002); *Davidson* v. *Keenan*, 740 F.2d 129, 132 (2d Cir. 1984).  That rule provides that "the court may, for good cause, extend the time . . . if the party failed to act because of excusable neglect." Although excusable neglect "is a somewhat 'elastic concept,'" the Supreme Court has held that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect."  *Pioneer Inv. Servs. Co.* v. *Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 391 (1993).  In determining whether neglect is excusable, the Supreme Court has identified the following four factors:  "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395.

In applying the *Pioneer* test, the Second Circuit has "focused on the third factor: 'the reason for the delay, including whether it was within the reasonable control of the movant.'" *Silivanch* v. *Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) (quoting *Pioneer*, 507 U.S. at 395).  The critical inquiry is thus whether the party seeking to supplement the record could "have provided the information at an earlier stage."  *Certain Underwriters at Lloyd's, London* v. *St. Joe Minerals Corp.*, 90 F.3d 671, 675 (2d Cir. 1996); *see also Perry* v. *Spano*, 2009 WL 2030370, *1 (2d Cir. July 10, 2009).  On facts very similar to those presented here, the Second Circuit recently affirmed the denial of a motion to supplement the record made long after briefing on a motion for summary judgment was completed.

- 3 -

> [T]he district court acted well within its discretion in denying [plaintiff's]
> motion to supplement the record.  The court's finding that [plaintiff's]
> neglect was not excusable was well founded given that [plaintiff] failed to
> mention the supplemental information, available to him when he filed his
> lawsuit, in his complaint, or even in his declaration in opposition to the
> [defendant's] motion for summary judgment, and delayed an entire year
> after the [defendant] moved for summary judgment to seek to supplement
> the record.  We see no reason to disturb the court's conclusion that
> [plaintiff] did not establish good faith nor a reasonable basis for
> noncompliance, and that the [defendant] would suffer prejudice if the
> record were supplemented at this point in the litigation.

*Perry*, 2009 WL 2030370, *1 (citations omitted).[3]  The same result should obtain here.

Intellivision does not—and cannot—offer any legitimate excuse for failing to include the documents at issue in the record previously.  Intellivision concedes that "copies were produced by plaintiffs during discovery in this litigation" (Intellivision Br. at 10), and it is apparent from the dates on the documents that they have been in Intellivision's possession from the outset of this case.  Intellivision was thus able to place the documents before the Court at an appropriate time and failed to do so.[4]

The best excuse Intellivision can muster is that, although it received Microsoft's motion for summary judgment and the accompanying exhibits on April 22, 2010, those exhibits were not reviewed with any care until after oral argument on December 8, 2010.  (Declaration of

---

[3]     Intellivision relies on *Lattanzio* v. *Dep't of Higher Educ.*, 190 F. App'x. 27 (2d Cir. 2006), as support for the proposition that Rule 56 "permits supplementation or correction of a summary judgment record."  (Intellivision Br. at 8.)  *Lattanzio* is inapposite.  That case involved a failure by the moving party "to include proper citations" in its motion for summary judgment, which the Second Circuit described as an "unintentional oversight" that was "promptly corrected."  190 F. App'x. at 28-29.

[4]     Intellivision's failure to include the documents at issue in the record before briefing was completed is particularly difficult to justify because Intellivision took 63 days (*i.e.*, three times the 21-day period specified in the then-extant version of Rule 56) to file its opposition to Microsoft's motion for summary judgment.  Nine weeks was more than ample time for Intellivision to review the 24 exhibits submitted with Microsoft's motion for summary judgment and to decide what evidence should be submitted in response.

Bruce D. Katz, Esq. in Support of Plaintiffs' Motion to Include Additional Evidence in Summary Judgment Record, sworn to January 21, 2011 ("Katz Declaration") at ¶ 7.)  Failing to look at the exhibits supporting a motion for summary judgment for almost eight months is the antithesis of excusable neglect.  "Where a party fails to act with diligence, he will be unable to demonstrate that his conduct constituted 'excusable neglect.'"  *Canale* v. *Manco Power Sports, LLC*, 2010 WL 2771871, *3 (S.D.N.Y July 13, 2010) (quoting *State St. Bank & Trust Co.* v. *Inversiones Errazuriz Limitada*, 374 F.3d 158, 177 (2d Cir. 2004)).

        In an effort to shift responsibility for its inexcusable neglect to Microsoft, Intellivision asserts that a two-page assignment (one of several documents Intellivision seeks to add to the record) is not "new evidence" but is instead the "omitted portion of existing evidence relied on by Microsoft in its own motion."  (Intellivision Br. at 11; *see also* Katz Declaration ¶¶ 6, 10.)  The assertion that Microsoft intentionally omitted a portion of the assignment agreement is false.  As Intellivision is well aware, the assignment agreement that Microsoft submitted in support of its motion for summary judgment is *identical* in all respects to the assignment agreement that Intellivision (i) appended to its first amended complaint, (ii) produced to Microsoft in discovery, and (iii) used as an exhibit during depositions of Microsoft personnel.  Indeed, Intellivision candidly concedes that it does not "contend that a different version of the parties' Agreement exists."  (Intellivision Br. at 11.)  If there is no version of the assignment agreement that includes the two-page assignment which Intellivision claims Microsoft omitted, it was sanctionable for Intellivision to accuse Microsoft of altering evidence.

        Intellivision also attempts to blame Microsoft for Intellivision's tardy submission of documents concerning Intellivision's principal place of business, but that attempt is equally unjustified.  Intellivision contends that Microsoft "made entirely new arguments" about

- 5 -

Intellivision's principal place of business in a December 17, 2010 letter to the Court. (Intellivision Br. at 15.)  That contention cannot be squared with the fact that Intellivision devoted two pages of its brief opposing Microsoft's motion for summary judgment to the question of Intellivision's principal place of business.  (Intellivision's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 27-28.)

The truth is that Intellivision failed to submit evidence in opposition to Microsoft's motion for summary judgment in a timely fashion, despite the fact that the evidence it now seeks to submit has been in Intellivision's possession since this case began.  Nothing in Intellivision's motion comes close to justifying that failure.

## II.   THE DOCUMENTS INTELLIVISION SEEKS TO ADD TO THE RECORD DO NOT DEFEAT MICROSOFT'S MOTION FOR SUMMARY JUDGMENT

Even if Intellivision is allowed to supplement the record, the documents that Intellivision seeks to add do not defeat Microsoft's motion for summary judgment.  All of the documents relate to Intellivision's assault on the Court's prior ruling that "New York's choice of law rules require the application of Connecticut law to the plaintiff's claims for fraudulent inducement and negligent misrepresentation."  (Memorandum Opinion and Order, dated August 20, 2008, at 14, attached as Ex. 18 to the Affidavit of Nuri G. Frame, sworn to April 22, 2010 ("Frame Aff.").)  When it became apparent that application of Connecticut's statutes of limitations was fatal to its claims, Intellivision manufactured two new arguments:  (i) that Intellivision's principals, and not Intellivision itself, owned the patent applications assigned to Microsoft, and (ii) that Intellivision's principal place of business was not in Connecticut at the time the fraudulent inducement and negligent misrepresentation claims accrued.  These

arguments are not only foreclosed by positions previously taken by Intellivision in this case, they are meritless.

      **A.**      **Intellivision Itself, Not Intellivision's Principals Individually, Owned the Patent Applications Assigned to Microsoft**

      The two-page assignment about which Intellivision spills so much ink does not establish that the patent applications were assigned to Microsoft by Intellivision's principals in their individual capacities as opposed to by Intellivision the joint venture.  As Microsoft has explained, the evidentiary record demonstrates that Intellivision owned the patent applications. (Microsoft's Reply Memorandum in Further Support of its Motion for Summary Judgment at 2-4.)  The assignment agreement between Intellivision and Microsoft plainly states that the patent applications are being assigned to Microsoft by Intellivision's principals "doing business as Intellivision in a joint venture."  (Agreement at 1, attached as Ex. 11 to the Frame Aff.)  The assignment agreement also defines the term "ITV" to include Intellivision and its principals "both individually and collectively" and contains the following recital:  "WHEREAS ITV represents that it is the owner of the Patent Applications."  (*Id.*)  In addition, the assignment agreement contains the following representation and warranty:  "ITV represents and warrants that it owns all right, title and interest in the Patent Applications, free of any claim, license, right, equity, or encumbrance (including marital) whatsoever."  (Agreement at 4.)  Moreover, each of Intellivision's principals executed the assignment agreement on behalf of "Intellivision, a joint venture."  (Agreement at 8.)

      Other documentary evidence in the record confirms that Intellivision's principals represented to Microsoft that Intellivision the joint venture owned the patent applications being assigned to Microsoft.  For example, the first sentence of Paul Hoffman's first solicitation email

to Microsoft states:  "My company, Intellivision, is the owner of extensive intellectual property

rights in the Personal Video Recorder ('PVR')."  (Email from Paul Hoffman to John Columbo,

dated February 7, 2000, at 1, attached as Ex. 9 to the Frame Aff.)  In a similar vein, Bruce

Adams informed Microsoft that "the revised agreement has been executed by the parties to the

Intellivision joint venture."  (Letter from Bruce Adams to Janice Francisco, dated December 21,

2000, at 1, attached as Ex. 1 to the Supplemental Affidavit of Nuri G. Frame, sworn to on July 9,

2010.)  The two-page assignment that Intellivision now seeks to place before the Court cannot

contradict what the assignment agreement plainly says, which is fully consistent with what

Intellivision's principals told Microsoft before the assignment agreement was executed.[5]

        In any event, as Microsoft argued in its letters of December 14, 2010 and

December 17, 2010, Intellivision is barred by the doctrine of judicial estoppel from arguing that

it did not own the patent applications assigned to Microsoft.  "Where a party assumes a certain

position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter,

simply because his interests have changed, assume a contrary position, especially if it be to the

prejudice of the party who has acquiesced in the position formerly taken by him."  *New

Hampshire* v. *Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis* v. *Wakelee*, 156 U.S. 680, 689

(1895)).  The doctrine of judicial estoppel "prevents a party from prevailing in one phase of a

case on an argument and then relying on a contradictory argument to prevail in another phase."

---

[5]     Intellivision argues that because the two-page assignment grants an interest in the patent
applications to Messrs. Adams, Daniels and Hoffman "with full right of succession," that
somehow demonstrates that the patent applications could not have been owned by Intellivision.
(Intellivision Br. at 5-6.)  Intellivision later concedes, however, that joint ventures such as
Intellivision are "common law partnerships" and "title to partnership property was deemed held
by partners in common and passed to the heirs of a deceased partner absent a contrary stated
intent."  (Intellivision Br. at 6-7.)  Given that concession, the earlier argument makes no sense.

*New Hampshire*, 532 U.S. at 749 (quoting *Pegram* v. *Hendrich*, 530 U.S. 211, 227 n.8 (2000)).
Judicial estoppel protects the integrity of the judicial process and precludes parties from
"deliberately changing positions according to the exigencies of the moment."  *New Hampshire*,
532 U.S. at 749-50 (collecting cases).  Although Intellivision blithely asserts that its reversal of
position as to the ownership of the patent applications is "of no moment" (Intellivision Br. at 4),
nothing could be further from the truth.  Intellivision staved off an earlier motion to dismiss by
avoiding the application of New York substantive law on the grounds that Intellivision was a
Connecticut entity.  (*See* August 20, 2008 Opinion and Order at 13-14.)  Having obtained that
benefit, it is not open to Intellivision to reverse course now to avoid having summary judgment
entered against it.

In its recent letters to the Court and in its brief in support of this motion,
Intellivision claims that in its "motion to amend the complaint, filed over two years ago,
plaintiffs stated that the patent applications were owned by Messrs. Daniels, Adams and
Hoffman and not Intellivision."  (Letter from Bruce J. Katz to the Court, dated January 4, 2011,
at 2.)  This is simply wrong.

Nowhere in Intellivision's motion to amend did Intellivision state—or even
intimate—that Intellivision was not the owner of the patent applications assigned to Microsoft.
To the contrary, that motion to amend was premised on the notion that the claims asserted by
Intellivision and its principals were the same.  Intellivision argued that "[e]ven if Intellivision's
principals are not necessary parties, joining them as plaintiffs is proper under Rule 20 since their
claims against Microsoft are identical to Intellivision's claims."  (Memorandum in Support of
Plaintiff's Motion to Amend Its Complaint, filed December 29, 2008, at 3.)  That statement
could not be true if Intellivision did not own the patent applications, but it could be true if

Messrs. Adams, Daniels and Hoffman were suing in their capacity as Intellivision's principals. Furthermore, there is no way that Intellivision's principals could not be necessary parties, as Intellivision suggested in its motion to amend, if they were the true owners of the patent applications assigned to Microsoft.

On its face, the motion to amend makes clear that Intellivision owned the patent applications. For example, the justification for adding a claim for anticipatory repudiation (later dismissed by the Court) was "Microsoft's unilateral decisions to abandon its efforts to obtain allowance of a patent application claim . . . and Microsoft's unilateral decision that it would not pay *Intellivision* upon allowance of such claim." (*Id.* (emphasis added).) Continued references to Intellivision as the owner of the patent applications in the motion to amend contradict the notion that plaintiffs were asserting that those patent applications were owned by Intellivision's principals solely in their individual capacities. And then there is the inconvenient fact that the second amended complaint itself contains more than 30 references to "the Intellivision patent applications," "Intellivision's patent applications," "Intellivision's intellectual property," "Intellivision's core inventions," "Intellivision's core technology" and "the patent applications assigned by Intellivision to Microsoft." (*See*, *e.g.*, 2d Am. Compl. ¶¶ 12, 13, 17-24, 26-28, 38-40, 48-49, 54-56, 61-63, 66, 70-71, 75, 78-81, 83.)

The argument that Intellivision did not own the patent applications assigned to Microsoft was concocted when Intellivision realized that its fraudulent inducement and negligent misrepresentation claims were subject to dismissal under Connecticut's statutes of limitations. Such cynical changes of factual position to obtain a tactical litigation advantage should not be tolerated.

**B.     Intellivision's Principal Place of Business Was in Connecticut**

Intellivision also seeks to supplement the record with various documents that purportedly "evidenc[e] the existence of Intellivision's New York City office" (Intellivision Br. at 15) and further "evidenc[e] that Intellivision closed its Seymour, Connecticut office in early 2001" (Intellivision Br. at 17).  As an initial matter, documents that are unrelated to the assignment agreement between Intellivision and Microsoft and that predate the assignment agreement by almost two years are not probative of anything.  More importantly, Intellivision is inexcusably late in submitting this evidence, and even if the evidence were accepted by the Court at this late stage, it is irrelevant to resolving Microsoft's motion for summary judgment.

As explained in Microsoft's December 14, 2010 letter to the Court, a claim for fraudulent inducement accrues when the plaintiff enters into the contract.  For purposes of determining when a fraud claim accrues, the date by which "[i]t has been alleged that false representations were knowingly made by [defendant], and based on these representations [plaintiff] was induced to enter into a new contract, and did in fact enter into a new contract . . . is the latest possible date on which the act or occurrence complained of could have taken place." *Harte Nissan, Inc.* v. *Market Scan Information*, 2003 WL 352948, *1 (Conn. Super. Ct. Jan. 17, 2003) (internal quotations omitted); *see also Triangle Underwriters Inc.* v. *Honeywell, Inc.*, 604 F.2d 737, 748 (2d Cir. 1979) (a claim for fraudulent inducement under New York law accrues "when the document is executed and when the party alleging fraud has given consideration and thus suffered damage").

The record evidence is clear that, at the time the assignment agreement was executed (and thus the time when the fraudulent inducement and negligent misrepresentation claims accrued), Intellivision was a Connecticut entity.  The assignment agreement plainly refers

- 11 -

to "the three (3) foregoing individuals [*i.e.*, Messrs. Adams, Daniels and Hoffman] doing

business as **Intellivision** in a joint venture having its principal place of business at 156 Roosevelt

Drive, Unit A, Seymour, Connecticut, 06483."  (Agreement at 1, attached as Ex. 11 to the Frame

Aff. (bold type in original).)  Moreover, Mr. Adams testified under oath at his deposition that

Intellivision's office has "always been in Connecticut."  (Adams Dep. at 33.)  Thus, the Court

was correct when it held that "for the purposes of the choice of law analysis, the alleged fraud

and negligent misrepresentation occurred in Connecticut."  (August 20, 2008 Opinion and Order

at 13-14.)

III.   **MICROSOFT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE
       GRANTED EVEN IF INTELLIVISION IS ALLOWED TO SUPPLEMENT THE
       RECORD**

Connecticut's statutes of limitations are not the only basis for dismissing

Intellivision's claims.  The fact that Intellivision suffered no damage at the time it entered into

the assignment agreement with Microsoft in January 2001 is also fatal to the fraudulent

inducement and negligent misrepresentation claims.  (*See* Microsoft's Memorandum in Support

of Its Motion for Summary Judgment at 15-18; Microsoft's Reply Memorandum in Further

Support of its Motion for Summary Judgment at 7-8.)  It is black letter law that "fraud without

damage ordinarily gives no cause of action either at law or in equity.  Where the evidence failed

to show that the plaintiff suffered any damage *at the time of the transaction*, under the applicable

rules of law as to the measure of damages for fraud, it is held that he cannot recover in an action

for deceit."  *Beik* v. *Thorsen*, 363 A.2d 1030, 1031 (Conn. 1975) (emphasis added).

During oral argument on Microsoft's motion for summary judgment, Intellivision

conceded that it suffered no damages at the time it entered into the assignment agreement with

Microsoft in January 2001.  When asked by the Court "[w]ere you damaged in January 2001 or

not?  Were your clients damaged in January 2001 or not?" Intellivision's counsel responded that "it was some time after that."  (Tr. at 48:16 – 48:18.)  When the Court asked again whether "[t]hey were not damaged at the time they entered into this agreement based on allegedly false representations?  Is that your position?"  Intellivision's counsel repeated that "[a]t that time the damages were *de minimis*."  (Tr. at 48:22 – 48:25.)  That should be the end of the matter.  If Intellivision suffered no damages at the time it entered into the assignment agreement with Microsoft, then Intellivision has no cognizable claim for fraudulent inducement or negligent misrepresentation under either Connecticut or New York law.

**CONCLUSION**

For the foregoing reasons, Intellivision's motion to supplement the record on Microsoft's motion for summary judgment should be denied.

Dated:   New York, New York
         February 7, 2011

Respectfully submitted,

SULLIVAN & CROMWELL LLP
Steven L. Holley (SH2485)
Nuri G. Frame (NF3456)
125 Broad Street
New York, New York  10004
(212) 558-4000

*Attorneys for Microsoft Corporation*