UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
INTELLIVISION, a Joint Venture,            )
BRUCE ADAMS, JOHN DANIELS, and             )         ECF CASE
PAUL HOFFMAN,                              )
                                           )
                    Plaintiffs,            )         Civil Action No.
                                           )         07-CV-4079(JGK)(MHD)
        v.                                 )
                                           )
MICROSOFT CORPORATION,                     )
                                           )
                                           )
                    Defendant.             )
_____)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION TO SUPPLEMENT SUMMARY JUDGMENT RECORD**

Plaintiffs submit this reply memorandum in further support of their motion pursuant to Fed.R.Civ.P 56(e) and 6(b) and the Court's inherent authority to include additional documents in the summary judgment record. Plaintiffs' motion is neither tardy nor demonstrates an absence of excusable neglect. Plaintiffs seek to include evidence omitted by Microsoft itself, and relied on by Microsoft to support erroneous arguments made by Microsoft in December 2010 - long after its summary judgment motion was fully briefed. Microsoft does not deny the relevance or authenticity of the evidence; does not deny plaintiffs' characterization of the evidence; and does not allege prejudice arising from its inclusion in the record. Microsoft has failed to articulate a single basis for its exclusion.

**I.      Plaintiffs' Letters To The Court Do Not Constitute An Impermissible Sur-Reply.**

Microsoft erroneously argues that the letters from plaintiffs' undersigned counsel to the Court dated December 7, 2010, January 4, 2011, January 10, 2011 and February 2, 2011 should

be stricken as unauthorized sur-replies.   However, none of these letters can reasonably be deemed to constitute a sur-reply.

The December 7, 2010 and February 2, 2011 letter seek a stay of further proceedings in view of progress made during prosecution of the assigned patent applications.  In the December 7 letter, it was made clear that plaintiffs had not pursued the subject matter long pursued unsuccessfully by Microsoft; and have instead pursued claims directed to the "DVR-enabling architecture" discussed in plaintiffs' opposition to Microsoft's summary judgment motion. Microsoft has not denied the patentability of this subject matter, nor has it denied its failure to pursue claims reciting it.  Yet, in opposing plaintiffs' request for a stay, Microsoft's counsel offered the misleading argument in his February 3, 2011 letter to the Court that a stay is not warranted because there is no reason to believe that Intellivision will succeed in its continued efforts to pursue a patent that would trigger the contingent payment obligation of the parties' Agreement.[1]

The January 4, 2011 and January 10, 2011 letters informally seek the relief formally requested herein.  These letters were promptly submitted to apprise the Court of the omitted two-page assignment upon discovery thereof by plaintiffs and receipt from the U.S. Patent and Trademark Office of a certified copy of the two-page assignment document omitted from the record by Microsoft.[2]

---

[1] As discussed in plaintiffs' opposition to Microsoft's summary judgment motion, the claims currently being pursued by plaintiffs at the Patent Office differ from and recite structure that is absent from the claim pursued by Microsoft that would presumably trigger Microsoft's contingent payment obligation.

[2] Microsoft's reliance on *A.B.C. Home Furnishings, Inc. v. Town of E. Hampton*, 964 F. Supp. 697, 703 (E.D.N.Y. 1997) is misplaced.  There, the Court rejected as an impermissible sur-reply an opposing affidavit filed without leave of court after the close of briefing.  The aforesaid letters address issues distinct from those raised in Microsoft's summary judgment motion.

II.     **Plaintiffs' Motion Was Not Unreasonably Delayed – It Seeks
        To Include Evidence Responsive to Arguments Made By Microsoft
        Long After Its Summary Judgment Motion Was Fully Briefed.**

Microsoft does not deny that it omitted a two-page assignment from the copy of the parties' Agreement included in its otherwise complete 1,045-page binder of exhibits. Microsoft's only objection to the inclusion of this omitted portion of the parties' Agreement is that it is fatal to its summary judgment motion.[3]

Having drafted the parties' Agreement and the Assignments contained in Attachment B thereto, Microsoft has known for over a decade that the patent applications at issue were jointly owned by Adams, Daniels and Hoffman in their individual capacities rather than the Intellivision joint venture.  In four of the Assignments contained in Attachment B to the parties' Agreement, John Daniels alone individually conveyed to Microsoft his "entire right, title and interest" to specific patent applications.  The remaining seven Assignments correctly reflect that plaintiffs Daniels, Adams and Hoffman "jointly own" the "entire right, title and interest" in and to the assigned patent applications and convey such ownership rights to Microsoft.  These seven assignments refer to as *Exhibit A* the two-page assignment omitted by Microsoft.

The omitted assignment is referred to as *Exhibit A* in seven of the assignments attached to the parties' Agreement and is identified as establishing "joint ownership" by Adams, Daniels and Hoffman of seven of the patent applications assigned to Microsoft.[4]

---

[3] Microsoft argues that the copy of the parties' Agreement is identical to the copy attached as Exhibit 1 to plaintiffs' Amended Complaint.  That the copy attached to the Amended Complaint also omitted the two-page assignment is meaningless.  The assignments contained in Attachment B to the parties' Agreement are replete with reference to the two-page *Exhibit A* assignment omitted by Microsoft from the summary judgment record.

[4] There is no logic to Microsoft's continued assertion that the shorthand reference in the parties' Agreement to "Intellivision" and "Adams, Daniels and/or Hoffman" individually *and* collectively as "ITV" unambiguously identifies only Intellivision as having owned the patent applications.  There is no greater logic to Microsoft's argument that execution of the Agreement by Adams, Daniels and Hoffman in their individual capacities and separately as principals of Intellivision somehow demonstrates that Intellivision owned the patent applications.

3

Microsoft has sought to rely on its omission of this two-page assignment from the record to support the false assertion, made for the first time in its December 14, 2010 and December 17, 2010 letters to the Court, that the doctrine of judicial estoppel should be applied to preclude plaintiffs from taking "truly inconsistent positions" as to ownership of the assigned patent applications.

Microsoft has long known that the patent applications it acquired were owned by Adams, Daniels and Hoffman in their individual capacities, as demonstrated by the assignment attached to the parties' Agreement and further established by the two-page *Exhibit A* assignment omitted by Microsoft. Despite this, Microsoft falsely argued, *inter alia,* that plaintiffs took inconsistent positions as to ownership of the patent applications.

Microsoft made this argument for the first time in its December 14 and 17, 2010 letters to the Court, long after its summary judgment motion was fully submitted; and despite knowing the contrary to be true. Microsoft itself omitted the two-page *Exhibit A* assignment from the copy of the parties' Agreement it filed with its summary judgment motion.

Instead, Microsoft merely argued on summary judgment that the individual plaintiffs lack standing simply because they purportedly executed the parties' Agreement solely in their representative capacities and, as a result, their claims are identical to and duplicative of those asserted by Intellivision.[5]

Even in the absence of the *Exhibit A* assignment from the summary judgment record, the assignments contained in Attachment B to the parties' Agreement were sufficient to preclude

---

[5] More specifically, at pgs. 9-11 of its memorandum, Microsoft argued that: "the second amended complaint is clear that it was Intellivision that negotiated the sale of the patent applications to Microsoft"; "it was Intellivision that entered into the assignment agreement with Microsoft and thus Intellivision that suffered any harm from Microsoft's allegedly wrongful conduct"; "it was in their capacity as "Intellivision's principals" that Messrs. Adams, Hoffman and Daniels executed the assignment agreement"; [i]ndividual members may not assert a claim that belongs to the partnership, and Intellivision concedes that the claims of the three individual plaintiffs "are identical to Intellivision's claims and are based on the identical facts [and as] such, the claims asserted by Intellivision's principals are duplicative of Intellivision's own claims and should be dismissed.

4

summary judgment.  The assignments contain an unambiguous statement of individual ownership by John Daniels of four of the patent applications; and "*joint ownership*" by the individual plaintiffs Daniels, Adams and Hoffman of the seven other patent applications acquired by Microsoft (consistent with 35 U.S.C. §262).  The assignments of record support plaintiffs' contention that the patent applications acquired by Microsoft were owned by Adams, Daniels and Hoffman in their individual capacities; and, at the very least, raise a disputed issue of material fact concerning the individual plaintiffs' claim of ownership sufficient to preclude summary dismissal of the individual plaintiffs' claims based on lack of standing.

     Nor did Microsoft in its reply memorandum deny that the assignments of Attachment B to the parties' Agreement reflect ownership of the patent applications by the Adams, Daniels and Hoffman in their individual capacities.  In reply, Microsoft simply argued that the language of the parties' Agreement itself and two items of correspondence received from Intellivision's principals long before execution of the parties' Agreement demonstrate ownership of the patent applications by Intellivision; and that references to "Intellivision" in the second amended complaint serve as admissions that the patent applications were owned by Intellivision.  Microsoft also falsely stated in its reply memorandum that "Intellivision never even suggested to the Court that the individual plaintiffs, as opposed to Intellivision, owned the patent applications assigned to Microsoft."  Microsoft made this assertion despite the explicit statements at page 3 of the memorandum of law in support of plaintiffs' motion to amend the complaint that "Intellivision's principals were the owners of the patent applications assigned to Microsoft under

the Agreement alleged in the amended complaint" and that, "[a]ccordingly, Intellivision's principals are necessary parties under Rule 19 of the Federal Rules of Civil Procedure."[6]

The two-page assignment Microsoft omitted from the record establishes that plaintiffs have not taken inconsistent factual positions as to ownership of the patent applications acquired by Microsoft.

### III. Judicial Estoppel Does Not Preclude Introduction Of The Two-Page Assignment.

The initial failure to name Adams, Daniels and Hoffman as plaintiffs was an inadvertent error cured by unopposed amendment over two years ago. However, the ownership rights of the individual plaintiffs in the patent applications acquired by Microsoft was correctly reflected in the assignments attached to the parties' Agreement reflecting transfer of the individual plaintiffs' joint-ownership rights to Microsoft. The assignments clarify that those rights were not owned by the joint venture entity Intellivision.

Plaintiffs did not take inconsistent positions; most certainly not in an effort to gain any advantage in this case. At page 1 of the February 1, 2008 letter to the Court (copy attached), plaintiffs' undersigned counsel argued that factual issues must be resolved prior to determining the appropriate choice of law in the context of Microsoft's motion to dismiss. Similar arguments were made in the March 28, 2008 from plaintiffs' undersigned counsel (copy attached). The March 28 letter provides a detailed discussion of the location of Intellivision's principal place of business from 1999 through after execution of the parties' Agreement in 2001. Both letters urge against the application of Connecticut substantive law in the absence of more detailed fact finding.

---

[6] Despite the explicit language contained in plaintiffs' motion to amend, Microsoft incredulously asserts at pg. 9 of its opposition brief herein that "[n]owhere in Intellivision's motion to amend did Intellivision state – or even intimate – that Intellivision was not the owner of the patent applications assigned to Microsoft."

At the time, however, Microsoft urged that Intellivision is a "New York" joint venture and sought the application of New York substantive law because it felt that New York substantive law provided it with the greatest likelihood of success on its motion to dismiss. Only now has Microsoft shifted its position and argued that Intellivision is a Connecticut Joint Venture.

Microsoft, and not plaintiffs, have "played fast and loose with the court" by taking truly inconsistent positions to suit its current interests. Microsoft's game should now be brought to an end.

## IV. Documents Relating To The Location of Intellivision's Office.

Similarly, there is no basis to exclude from the summary judgment record documents previously produced in this litigation demonstrating the existence of Intellivision's New York office and the early-2001 closure of its Seymour, Connecticut office. Plaintiffs seek inclusion of these documents in response to arguments made by Microsoft in December 2010, long after its summary judgment motion was fully briefed.

Microsoft falsely argued for the first time at page 3 of its counsel's December 17, 2010 letter that there is "no evidence" that Intellivision *ever* had an office outside Connecticut. Furthermore, even if Microsoft had not made such argument long after its motion was fully briefed, it changed its position during the briefing of its motion as to the date of accrual of a cause of action for fraudulent inducement; providing sufficient basis for leave to file sur-reply papers.[7]

The parties have disputed the location of Intellivision's principal place of business before, during and after execution of the parties' Agreement. Microsoft's efforts to establish that

---

[7] In its initial memorandum, Microsoft argued that plaintiffs' fraudulent inducement claim accrued when plaintiffs learned they had been damaged. In its reply memorandum, Microsoft argued that the claim accrued when the parties' Agreement was executed.

7

Intellivision *never* had an office outside Connecticut and its denial that Intellivision closed its Seymour, Connecticut office, made long after briefing of its summary judgment motion, justify inclusion of these documents in the summary judgment record.

Microsoft's reliance on *Harte Nissan, Inc. v. Market Scan Information,* 2003 WL 352948, *1 (Conn. Super. Ct. Jan. 17, 2003 is misplaced.  Although a claim of fraudulent inducement accrues on the date of execution of a contract, when a party fraudulently conceals the cause of action, such cause of action shall be deemed to accrue at the time the person entitled to sue thereon first discovers its existence.  *Gibbons v. NER Holdings, Inc.*, 983 F. Supp. 310, 315-16 (D. Conn. 1997) (citing §52-595 of the Connecticut General Statutes).  It cannot be legitimately disputed that plaintiffs have adequately plead fraudulent concealment at least until such time as they became aware of Microsoft's fraud.

**V.     The Caselaw Relied On By Microsoft Does Not Address The Inclusion Of Evidence Omitted By A Party Seeking Summary Judgment.**

Microsoft contends that plaintiffs' motion must be denied because plaintiffs have failed to demonstrate "excusable neglect" under Fed.R.Civ.P. 6(b)(1).  Microsoft's argument ignores the Court's broad discretion under Fed.R.Civ.P. 56(e) to permit supplementation of summary judgment materials.  *Lattanzio v. Dep't of Higher Educ.*, 190 Fed. Appx. 27, 29 (2d Cir. 2006).

Neither *Gladstone Ford v. N.Y.C. Transit Auth.*, 43 F. Appx' 445, 449 (2d Cir. 2002) nor *Davidson v. Keenan*, 740 F.2d 129, 132 (2d Cir. 1984) dictate a contrary result.  In *Gladstone*, the Second Circuit merely held that the District Court had not abused its discretion by declining to grant the plaintiff leave under Fed.R.Civ.P. 6 to belatedly file sur-reply papers after it had already filed opposition papers more than two weeks beyond a second and final extension.  Similarly, in *Davidson*, the Court held that the District Court did not abuse its discretion for declining to accept belatedly-filed opposition papers.

Microsoft's reliance on *Perry v. Spano*, 2009 WL 2030370, *1 (2d Cir. July 10, 2009) is seriously misplaced. There, plaintiff's opposition papers were filed several months after they were due, and, in fact over a month after a Court-Order requiring them to be filed by a specific date or the motion would be deemed submitted without opposition. Plaintiff sought to avoid summary dismissal of an employment discrimination claim by establishing a hostile work environment based on allegations contained solely in plaintiff's brief that he had been subjected to comments referring to him as "Kunta Kinte." The record was silent as to any proof of such allegations. The Court denied plaintiff's request for leave to include a supplemental affidavit based on the absence of excusable neglect, prejudice to the moving party, and bad faith of plaintiff's counsel.[8]

In *Duttweiller v. Upstate Bldg. Maint. Cos.*, 2011 WL 263174, *1 (2d Cir. Jan. 29, 2011), the Second Circuit did not specify any basis for supplementation. It merely noted that the District Court denied, *without prejudice*, the plaintiff's request to supplement a summary judgment record to include an additional affidavit and letter from a treating physician because the plaintiff failed to show any cause why the affidavit in question was not included in her original opposition papers. *Canale v. Manco Power Sports, LLC*, 2010 WL 2771871, *3 (S.D.N.Y July 13, 2010) addressed the "excusable neglect" standard of Fed.R.Civ.P. 60(b) for vacating a judgment of dismissal entered after an extensive pattern of delay and non-compliance.

Nor does *Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.*, 90 F.3d 671, 675 (2d Cir. 1996) stand for the proposition for which it is cited by Microsoft. There, the Court noted the well established principal that the "new evidence" contemplated by a motion for

---

[8] Attached hereto is a copy of an Order outlining the unexplained pattern of delay by plaintiff's counsel associated with the defendant's summary judgment motion, obtained from the Court's Pacer website in the District Court docket.

9

reconsideration under Fed.R.Civ.P. 59(b) and 60(b) is evidence that could not have been provided at an earlier stage.

Finally, plaintiffs note that the sworn declarations inadvertently omitted due to an error in electronic uploading, were filed on February 11, 2011.

## **CONCLUSION**

There is no support for the granting of summary judgment based upon purportedly uncontroverted facts that are flatly contradicted by pages omitted from an exhibit relied upon by the moving party. For the reasons stated above and in plaintiffs' initial moving papers, plaintiffs respectfully request that the additional evidence identified herein should be included in the summary judgment record.

Respectfully submitted,

Dated: February 15, 2011

By:   Bruce D. Katz, Esq.
      Bruce D. Katz & Associates
      160 Broadway –Suite 908
      New York, NY 10038
      (212)233-3434

      *Attorney for Plaintiffs*
      *Intellivision, a Joint Venture, Bruce Adams*
      *John Daniels and Paul Hoffman*

LAW OFFICES
# Bruce D. Katz & Associates
Attorneys and Counselors at Law
The Transportation Building
225 Broadway, 37th Floor
New York, New York, 10007
(212) 233-3434
(212) 208-3060 Fax

February 1, 2008

**BY FACSIMILE** (212)805-7912
Hon. John G. Koeltl
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1030
New York, New York 10007

Re:   Intellivision v. Microsoft Corp.
      Civil Action No. 07-CV-4079(JGK)

Dear Judge Koeltl:

  I am counsel for plaintiff, Intellivision, in the above-captioned action. I am writing in response to your Order of January 15, 2008 requesting the parties' positions as to the applicability of Washington law to the claims raised by Intellivision's Amended Complaint, the defenses asserted by Microsoft, and Microsoft's pending motion to dismiss.

  This response was originally due on or before January 22. At my request, that deadline was extended until January 28. I hereby request that the deadline be extended until today and that this letter be considered by the Court in reaching its decision. The issues raised by Your Honor's January 15 Order required a great deal more analysis then I originally anticipated.

  Microsoft's counsel argues that Washington law is inapplicable to the issues raised in this lawsuit because Intellivision's tort claims are not contemplated by the narrow choice-of-law provision set forth in Paragraph 9.2 of the parties' agreement. Microsoft's counsel further suggests that New York law should be applied to the contract issues as well. The rationale offered for this assertion is that the parties have not disputed the meaning of the provisions of the contract; namely the release of Paragraph 5 and the limitation of liability contained in Paragraph 6.6.

  Microsoft's analysis does not end the inquiry. It merely reveals that there are factual issues that cannot be resolved in the context of a motion to dismiss.

Hon. John G. Koeltl
February 1, 2008
Page 2


       Specifically, Microsoft's counsel is correct in asserting that the choice-of-law provision of the parties' agreement does not necessitate the application of Washington law to Intellivision's tort claims (fraudulent inducement, negligent misrepresentation and possibly breach of fiduciary duty). Several reported decisions in this Circuit have recognized the general proposition that contractual choice-of-law provisions do not govern tort claims arising from the contract. *See, e.g., Finance One Public Co., Ltd. v. Lehman Brothers Special Financing, Inc.*, 414 F.3d 325, 335 (2d Cir. 2005) and cases cited therein. *See also Dessert Beauty, Inc. v. Platinum Funding Corp.*, 519 F. Supp.2d 410, 419 (S.D.N.Y.2007). Although the parties to a contract may draft a choice-of-law clause that is sufficiently broad to encompass tort claims, the provision at issue herein is narrow and does not contemplate tort claims. *Finance One, id.*

       However, this does not end the choice of law inquiry. In a diversity action, a determination of which state's law to apply to tort claims requires an "interest analysis." *Finance One*, 414 F.3d at 336-37. "New York courts have not directly ruled on which state's substantive law is to be applied to a fraud claim." *Dessert Beauty*, 519 F. Supp.2d at 419 (citing *Krock v. Lipsay*, 97 F.3d 640, 646 (2d Cir. 1996)). However, "[t]he local law of the state which has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort." *Id*. (citing *Babcock v. Jackson*, 12 N.Y.2d 473, 482, 191 N.E.2d 279, 240 N.Y.S.2d 743 (1963)).

       Interest analysis is a "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Finance One*, 414 F.3d at 337 (citing *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 612 N.E.2d 277, 595 N.Y.S.2d 919, 922 (1993)). The contacts of the parties and occurrences with each jurisdiction are thus factors to be considered in applying interest analysis, together with the policies underlying each jurisdiction's rules, the strength of the governmental interests embodied in these policies, and the extent to which these interests are implicated by the contacts. *Id*. (citing *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 85, 87 (2d Cir. 2002).

       Microsoft's motion seeks to alternately invoke New York and Connecticut law, where favorable to its desired outcome. Microsoft has simply failed to demonstrate that New York law governs the issues in this case. The record is devoid of the type of evidence needed to enable the Court to perform the "interest analysis" required by the caselaw. Intellivision's Amended Complaint identifies contacts with New York, New Jersey, Connecticut, California and Washington. Although the most substantial and repeated contacts are with New York, I suggest that Microsoft selected New York law for its legal arguments after conducting its own multi-state analysis because it felt that New York substantive law provided it with the greatest likelihood of success on its motion.

       However, the record has not been sufficiently developed to enable the Court to embark on an interest analysis. The amended complaint merely alleges that Intellivision met with Microsoft personnel in New York and California, negotiated the parties' agreement in New York, relied in New York and California on misrepresentations made by Microsoft, executed the

Hon. John G. Koeltl
February 1, 2008
Page 3

agreement in New York and Connecticut and maintained offices at various times in New York and Connecticut (although it has only maintained a presence in New York since 2001).  The number and significance of the events is only set forth in the form of "notice pleading" in the amended complaint.

There would be no occasion to embark on a choice-of-law analysis in the absence of an "actual conflict" between the applicable rules of the relevant jurisdictions.  *Finance One*, 414 F.3d at 331.  However, Microsoft has not demonstrated the absence of an "actual conflict" between the laws of these states.  In fact, its motion seeks to rely on the law of different states where that law is best suited to Microsoft's goal of dismissal.

Although New York has the greatest connection to this controversy based on Intellivision's contract negotiation, residence and reliance, there are insufficient facts contained in the record from which ant interest analysis can be performed.

Furthermore, the choice-of-law provision of the parties' agreement appears to apply to Intellivision's claims of unilateral and mutual mistake and Microsoft's defenses that implicate various provisions of the parties' agreement.  Washington law governs those provisions as well as Intellivision's claims of mistake.  Whether or not Washington law governs Intellivision's claim of breach of fiduciary duty appears to be a question of first impression.

Furthermore, Intellivision alleges that it was fraudulently induced to enter into the parties' agreement.  Had Intellivision known the truth behind Microsoft's development efforts and impending release of a product embodying one of Intellivision's core inventions, it most certainly would not have agreed to the application of Washington law.  Thus, Intellivision intends to challenge the validity of the agreement's choice-of-law provision as the result of fraudulent inducement independent from that of the payment term of the agreement.

A federal court sitting in a diversity case applies the choice of law rules of the forum state.  *Dessert Beauty, Inc. v. Platinum Funding Corp.*, 519 F. Supp.2d 410, 419 (S.D.N.Y.2007) (citing *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006)). "The validity of a contractual choice-of-law clause is a threshold question that must be decided not under the law specified in the clause, but under the relevant forum's choice-of-law rules governing the effectiveness of such clauses." *Id.* (citing *Finance One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 332 (2d Cir. 2005)).  "When such a provision exists and the jurisdiction chosen by the parties has a substantial relationship to the parties or their performance, New York law requires the court to honor the parties' choice." *Id.* (citing *Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir. 1987) and *A.S. Rampell, Inc. v. Hyster Co.*, 3 N.Y.2d 269, 381, 144 N.E.2d 371, 165 N.Y.S.2d 475 (1957)).  "[O]nce a court finds that a contractual choice-of-law clause is valid, the law selected in the clause dictates how the contract's provisions should be interpreted." *Id*.  Thus, New York law governs issues of validity of the choice-of-law provision of the agreement.  However, validity of the choice-of-law provision is a threshold question that must be addressed even before Washington law is applied to Intellivision's claims of unilateral and mutual mistake, and Microsoft's defenses that invoke provisions of the agreement.

Hon. John G. Koeltl
February 1, 2008
Page 4


      The record in this case consists solely of Intellivision's original and amended complaints and Microsoft's motion to dismiss. The record is simply devoid of sufficient evidence sufficient to enable the Court to address the validity of the choice-of-law provision contained in Paragraph 9.2 of the parties' agreement. Intellivision contends that it was fraudulently induced to enter into the agreement. Intellivision also contends that its consent to the application of Washington law for contract interpretation and Washington state courts as the exclusive forum to address issues of breach was the result of fraudulent inducement. Microsoft's explicit performance obligations under the agreement were limited to its payment obligation to Intellivision. The contingent payment provision of Paragraph 3(B) of the agreement created an independent duty and fiduciary obligation on the part of Microsoft to prosecute the Intellivision patent applications. However, believing that Intellivision would be permitted to control prosecution of the assigned patent applications, Intellivision was misled into accepting Microsoft's preferred choice-of-law. Stated otherwise, Intellivision would not have agreed to a choice-of-law provision calling for the application of Washington law and/or courts had it reason to believe that Microsoft would remove Intellivision from its ability to engage in the continued prosecution of the assigned applications.

      Thus, even as to the choice-of-law provision, there are disputes that cannot be resolved in the context of Microsoft's motion to dismiss.

      Finally, in the January 18 letter from Microsoft's counsel, Mr. Holley again urges application of New York's borrowing statute. In its reply brief, Microsoft argues that Intellivision is a resident only of Connecticut because, as a joint venture, its "sole residence" is the location of its principle place of business. This argument is entirely misleading. Intellivision is not a resident of Connecticut and was not a Connecticut resident when this action was filed. As set forth at ¶1 of Intellivision's amended complaint, since 2001 Intellivision has maintained residence solely in New York.

      In view of the foregoing issues of fact, I respectfully request that Microsoft's motion be denied.

                                  Respectfully submitted,

                                  Bruce D. Katz

BDK/mm
cc: Steven L. Holley, Esq. (by email)

LAW OFFICES
# Bruce D. Katz & Associates
Attorneys and Counselors at Law
The Transportation Building
225 Broadway, 37th Floor
New York, New York, 10007
(212) 233-3434
(212) 208-3060 Fax

March 28, 2008

**BY FACSIMILE**  (212)805-7912
Hon. John G. Koeltl
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1030
New York, New York 10007

Re:   Intellivision v. Microsoft Corp.
      Civil Action No. 07-CV-4079(JGK)

Dear Judge Koeltl:

    I am counsel for plaintiff, Intellivision, in the above-captioned action and I am writing to address the questions presented to the parties during the March 21, 2008 oral argument on Microsoft's motion to dismiss Intellivision's amended complaint.  The Court requested Microsoft's counsel to address the following issue: whether there is a conflict between the laws of the various states as to each cause of action asserted by Intellivision.  The Court also requested the parties to address the following two issues: (1) whether New York courts have addressed the treatment of joint ventures under New York choice of law rules; and (2) whether the release contained in Section 5 of the parties' Agreement should be construed as a specific merger clause barring Intellivision's claim of fraudulent inducement.

1.   **Joint Venture.**

    I have been unable to locate any reported decisions in which New York courts have addressed how a joint venture should be treated with regard to choice of law rules.  However, Microsoft's argument that N.Y.'s borrowing statute necessitates application of the three-year Connecticut statute of limitations is almost certainly incorrect.  In the absence of a factual record, this might be difficult, at first, to see.

    Intellivision was formed as a joint venture for the purpose of creating, developing, patenting, commercializing and licensing interactive television and related technologies and

Hon. John G. Koeltl
March 28, 2008
Page 2

developments. *See* Amended Complaint, ¶6. In addition to developing technology, Intellivision was engaged in the commercial exploitation of certain "core inventions" relating to pioneering advancements in interactive television and television set-top-box technology. *Id*., ¶7.

From its inception in 1999 until it agreed to sell its intellectual property to Microsoft in late 2000, Intellivision's business activities were conducted almost exclusively in New York City. However, when Intellivision agreed to sell its intellectual property to Microsoft, it was required to cease all activities in connection with the development and commercialization of those technologies. This is because Microsoft, not Intellivision, would be the owner of all of Intellivision's intellectual property and related technology. Thus, Intellivision was required to cease most of its activities. Again, those activities were conducted almost entirely from New York City.

Upon negotiation and execution of the parties' agreement, the only ongoing activities of Intellivision that were to occur in New York City related to the performance of its contract with Microsoft. However, Intellivision's founder, John Daniels, intended to maintain an ongoing working relationship with Microsoft. For solely that reason, the principles of Intellivision decided to designate Intellivision's Connecticut address as Intellivision's principal place of business in the text of the parties' agreement.

For the foregoing reasons, it would be unfair and inequitable to ignore the foregoing facts and apply N.Y.'s borrowing statute, as urged by Microsoft, to reach the conclusion that Connecticut's statute of limitations governs Intellivision's claims. Although Intellivision's patent applications were prepared in Connecticut in the 1990's, virtually all of Intellivision's activities were conducted in New York and the parties' agreement was negotiated by Intellivision in New York. That Intellivision designated Connecticut as its principal place of business for the purposes of and as a result of the parties' agreement does not alter the fact that Intellivision was theretofore a New York entity that conducted its principal activities in New York – including its communications with Microsoft. The activities giving rise to Intellivision's claims occurred in communications between Microsoft and Intellivision in New York, and the harm felt by these activities was most certainly felt in New York. The caselaw relied on by Microsoft is simply not applicable.

Although the amended complaint alleges ongoing acts that effectively toll even Connecticut's statute of limitations, the borrowing statute should not apply in this case, where the facts that have not yet been developed dictate against it.

**2.    Release.**

Microsoft's attempt at oral argument to liken the release of Paragraph 5 to the facts of the *Dannan Realty* case are unavailing (5 N..2d 317, 154 N.Y.S.2d 599 (1959). *Dannan Realty* and its progeny relate to contractual provisions in which a party has expressly disclaimed reliance on representations as to matters within the scope of their allegations of fraudulent inducement. Caselaw applying the *Dannan Realty* case has also assessed the sophistication of the party alleging reliance on alleged misrepresentations.

Hon. John G. Koeltl
March 28, 2008
Page 3

      Courts have not applied the *Dannan Realty* decision in the context of a claim of fraudulent inducement of a release. *See* Intellivision's Memorandum of Law in Opposition to Microsoft's Motion to Dismiss, pgs. 24-28.

      *Dannan Realty* limited the ruling of *Savo v. Delman,* 3 N.Y.2d 155, 164 N.Y.S.2d 714 (1957) by distinguishing between a general merger clause and a specific merger clause. When a party has expressly disclaimed reliance upon a specific representation, it cannot later allege that it was fraudulently induced to enter into an agreement based on those specific representations.

      Unlike a merger clause, a contractual release does not disclaim reliance upon a specific representation. By its terms, a release encompasses all types of actions that a party may have against another. However, it is not a defense to claim of fraudulent inducement. It is "inapplicable in cases of fraud or where the releasee 'is silent after becoming aware that the releasor is acting upon a mistaken belief as to a material fact.'" *Dimon, Inc. v. Folium, Inc.*, 48 F. Supp.2d 359, 366 (S.D.N.Y. 1999)

3.    **<u>Conflicts of Laws.</u>**

      Although I was not requested to address the issue of whether there is a conflict in the substantive laws between the various states at issue herein, I have undertaken that analysis on a level more detailed than presented in Microsoft's letter of March 26, 2008. In view of the enormity of the task, I have been unable to complete this research. However, I have the following observations.

      The amended complaint, by itself, does not allege all of the locations where relevant activities occurred. However, these activities occurred in California, Connecticut, New York, Washington and Utah. Microsoft's offices are in Washington and California. At various times, Intellivision has maintained residences in New York and Connecticut. Specifically, Intellivision has maintained places of business in New York since 1999 and a place of business in Connecticut from 1999 through early 2001. Microsoft's representations were made by its employees in California and Washington and its attorneys in Utah. These representations were made by telephone to Intellivision's representatives in New York and during a visit of Intellivision's representations to Microsoft's campus in Mountain View, California.

      I am confident that Microsoft would urge the Court to apply the substantive law of the state that most favors its position. That cannot be the appropriate standard. Nor am I prepared to concede that the choice of law analysis must be made solely between New York and Connecticut. I agree that the choice of law provision of the parties' agreement does not necessitate application of Washington state law. However, this does not eliminate the interest analysis that should be applied in determining which state's substantive law should be applied.

      Microsoft's March 26 letter addresses only the laws of the states of New York and Connecticut and does not discuss the relevant law in California, Utah, or Washington, where representations were made by Microsoft employees and counsel. Although Microsoft's letter

Hon. John G. Koeltl
March 28, 2008
Page 4

acknowledges a Connecticut decision that does conflict with the New York caselaw relied upon in Microsoft's motion,

     Nor does it address the many conflicts between New York and Connecticut decisional authority.  Microsoft has merely demonstrated that elements of the various torts alleged in the amended complaint are similar in New York and Connecticut.  Although this is fairly obvious, the caselaw of one state does not apply in the other state.  All of the caselaw relied on by Microsoft is New York caselaw.  Should the law of another state apply, none of that caselaw is applicable and an entirely different body of caselaw applies.  For instance, although Microsoft points out that the elements of fraudulent inducement are similar in New York and Connecticut, the entire line of decisional of *Dannan Realty* and its progeny are not applicable in Connecticut.  Thus, Microsoft's arguments evaporate entirely.  The same logic applies to all of Microsoft's arguments.

                                         Respectfully submitted,

                                         Bruce D. Katz

BDK/mm
cc: Steven L. Holley, Esq. (by email)

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TED PERRY,

                        Plaintiff,

   -v-

COUNTY OF WESTCHESTER,

                        Defendants.

Case No. 06-CV-3000 (KMK)

ORDER

KENNETH M. KARAS, District Judge:

    On April 19, 2006, Plaintiff filed this employment discrimination suit. Discovery was completed by January 3, 2007, and Defendant County of Westchester filed a Motion for Summary Judgment on February 26, 2007. Plaintiff did not file any opposition papers by the March 12, 2007 deadline set by Judge McMahon. On June 28, 2007, Judge McMahon, to whom this case was originally assigned, issued an order, stating: "Plaintiff's opposition was due 3/12/2007. The Court has not received any response. Plaintiff has 30 days to file a response to the motion. If no response has been filed, the motion will be deemed submitted and the court will decide it without benefit of any response." (Docket 27.)

    Plaintiff failed to file opposition papers within the thirty-day deadline set by Judge McMahon on June 28, 2007. On August 6, 2007, the case was reassigned to the undersigned. Plaintiff finally filed opposition papers on August 22, 2007 – without explanation as to the delay or permission from the Court to do so.

    In his opposition brief, Plaintiff asserted – as evidence that he was subjected to a hostile work environment – that he was subjected to comments about "Kunte Kinte." (*See* Mem. of Law in Opp'n to Def. County of Westchester's Mot. for Summ. J. Pursuant to Federal Rules of Civil Procedure Rule 56(b) 15-16 ("Pl.'s Mem.").) In support of this allegation, Plaintiff offered the Court an unhelpful citation – without page number – to Plaintiff's Exhibit 3, which is an approximately 50-page excerpt from Plaintiff's deposition testimony. Nothing Plaintiff provided in opposition to the Summary Judgment Motion contained any evidence that Plaintiff was subjected to such comments, notwithstanding the unexplained six-months it took Plaintiff to file opposition papers.

    The Court held oral argument on March 11, 2008. During argument, the Court asked Plaintiff's counsel, Pamela D. Hayes, Esq., what in the record supported the allegation that Plaintiff was subjected to "Kunte Kinte" comments. Plaintiff's counsel represented to the Court that Plaintiff testified during his deposition that he was referred to as "Kunte Kinte" by his

supervisor. Defendant's counsel, Stuart E. Kahan, Esq., indicated that he had a recollection of such testimony. Ms. Hayes further represented that she would send the relevant pages from Plaintiff's deposition transcript to the Court the following day. Ms. Hayes failed to do this.

Instead, on March 12, 2008, Mr. Kahan sent to the Court and to Ms. Hayes Plaintiff's entire deposition transcript and a letter, in which he represented: "I have found no reference to the 'Kunte Kinte' comment referenced by plaintiff's counsel. I was in error when I stated that such a comment was made by Mr. Perry at his deposition." (Letter from Stuart E. Kahan to the Court, dated Mar. 11, 2008.)

On March 14, 2008, the Court received from Ms. Hayes via overnight mail: (1) a letter in which she admits, "[t]here is no reference to [the "Kunte Kinte" comment] in the *deposition transcript[,]*" and (2) an application to supplement the record with a new affidavit from Plaintiff and what appears to be the minutes of a meeting held on November 9, 1999. (*See* Letter from Pamela D. Hayes, Esq. to the Court, dated Mar. 13, 2008.) This application comes to the Court one year and two months after discovery in this case was closed and without any explanation as to why these documents were not previously included in the record or why the Court should accept them now. In his supplemental affidavit, Plaintiff states that he was referred to as "Kunte Kinte" by a supervisor identified only as "Mike," without any details regarding when or where this allegedly occurred. Further, Ms. Hayes asks the Court to supplement the record with meeting minutes, without providing any information as to the authenticity or admissibility of this document.

Therefore, it is hereby ORDERED that Plaintiff submit to the Court a letter **NOT EXCEEDING THREE (3) PAGES, BY NO LATER THAN 5:00 P.M. ON MONDAY, MARCH 17, 2008**, explaining why the Court should supplement the record with Plaintiff's supplemental affidavit and the meeting minutes. Defendant will have until Friday, March 21, 2008 to respond. No extensions will be given.

SO ORDERED.

Dated:     March 14, 2008
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE